## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| JOSE MANUEL VEGA FRANQUI, et al., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No.  1:06-CV-00734-RBW |
| v. | ) | |
| | ) | |
| SYRIAN ARAB REPUBLIC, et al., | ) | |
| | ) | |
| Defendants. | ) | |

### LIBYA'S MOTION TO DISMISS THE COMPLAINT

Defendant, Great Socialist People's Libyan Arab Jamahiriya a/k/a Libya ("Libya"), by the undersigned counsel, hereby moves this Court pursuant to Rules 12(b)(1) and (6) of the Federal Rules for Civil Procedure to dismiss this action against Libya on the basis that this Court lacks subject matter jurisdiction and, in any event, the claims are time-barred.  Libya specifically contends that:  (1) the plaintiffs cannot establish that an exception to Libya's sovereign immunity applies and, consequently, this Court lacks subject matter jurisdiction; and (2) the plaintiffs' claims are barred by the applicable statute of limitations.

In support of this motion, Libya respectfully refers this Court to the attached Memorandum of Points and Authorities and proposed Order.

Respectfully, Submitted,

**ECKERT SEAMANS CHERIN
   & MELLOTT, LLC**

By:      _/s/ Mark A. Johnston_

Thomas J. Whalen, Esq. (Bar No. 208512)
Mark A. Johnston, Esq. (Bar No. 455764)
1747 Pennsylvania Ave., N.W.,
Twelfth Floor
Washington, D.C. 20006
(202) 659-6600


_Of Counsel:_

Wendy West Feinstein
ECKERT SEAMANS CHERIN & MELLOTT, LLC
U.S. Steel Tower, 44th Floor
600 Grant Street
Pittsburgh, PA 15219
(412) 566-6000

Attorneys for Great Socialist People's Libyan Arab
Jamahiriya a/k/a Libya

Dated:  October 15, 2007

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that copies of the foregoing **Motion to Dismiss, Memorandum of Points and Authorities and Proposed Order** were electronically filed and served, this 15th day of October, 2007, to:

> Joshua Ambush
> Terri Sneider
> The Law Offices of Joshua M. Ambush, LLC
> 1726 Reisterstown Road Suite 206
> Baltimore, MD 21208

> */s/ Mark A. Johnston*
> Mark A. Johnston

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| JOSE MANUEL VEGA FRANQUI, et al., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No.  1:06-CV-00734-RBW |
| v. | ) | |
| | ) | |
| SYRIAN ARAB REPUBLIC, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES**
**IN SUPPORT OF LIBYA'S MOTION TO DISMISS THE COMPLAINT**

Defendant, Great Socialist People's Libyan Arab Jamahiriya a/k/a Libya ("Libya")[1],

through the undersigned counsel, respectfully submits this Memorandum of Points and

Authorities in Support of its Motion to Dismiss the Complaint.

**I.    INTRODUCTION**

The Complaint seeks recovery for injuries sustained by the plaintiffs in May 1972, nearly

thirty-four (34) years before the Complaint was filed.  There are two fully dispositive reasons to

dismiss the Complaint:  (1) Libya is immune from suit under the Foreign Sovereign Immunities

Act ("FSIA"), 28 U.S.C.  § 1601, *et seq.*; and (2) the claims, all of which arose in 1972, are time-

barred.

**A.    Summary of Factual Allegations**

For purposes of this Motion to Dismiss only, and without conceding any of these facts or

waiving any defenses, Libya states the following facts as alleged by the plaintiffs and includes

reasonable inferences from those alleged facts.

---

[1] This Motion to Dismiss and Memorandum in Support is filed on behalf of Libya only because the plaintiffs have
not effectuated service upon Colonel Muammar Qadhafi or the Libyan External Security Organization.

On April 21, 2006, plaintiffs filed a 13-count Complaint, seeking recovery for injuries sustained from a terrorist attack that occurred nearly thirty-four (34) years earlier – on May 30, 1972 - at Lod Airport near Tel Aviv, Israel. (Complaint, ¶¶ 6-16). Plaintiffs allege that terrorists associated with the Japanese Red Army ("JRA") carried out the attack. Two terrorists died during the attack and one survived and was arrested. (Complaint, ¶ 48). The terrorist who survived was tried and convicted in Israel. According to the plaintiffs, the terrorist fully confessed to the attack. (Complaint, ¶ 53). The surviving terrorist allegedly "described the terrorist training in Syria and the material support the JRA received from all co-Defendants, all of which is part of his trial record." (Complaint, ¶ 53).

By plaintiffs' own allegations, they had significant information about the attack and the possible responsible parties as a result of the confession by the surviving terrorist. (Complaint ¶¶ 53, 54). Consequently, the plaintiffs could have and should have brought these claims long before April 21, 2006.

The plaintiffs allege that Libya and Syria are designated as state sponsors of terrorism since 1984. (Complaint, ¶ 17).[2] Allegedly, Libya, Syria and the other defendants provided material support and resources to organizations such as the JRA. According to the plaintiffs, Libya provided this support as part of its "sovereign policy of international terrorism." (Complaint, ¶ 17, 33.) Plaintiffs allege that Libya's acts proximately caused their personal injuries. (*Id.*) Libya and Syria also allegedly provided safe haven to the JRA among other groups. (Complaint, ¶ 35.)

Plaintiffs also generally allege that Libya illegally gained oil revenue to fund terrorism. (Complaint ¶ 34.) Other than this general conclusory allegation and the general conclusory allegation in paragraph 120 of the Complaint that oil prices in the United States are higher

---

[2] After the Complaint was filed, Libya was removed from the state sponsor of terrorism list.

because of terrorism, the plaintiffs do not make any allegations about an economic or commercial activity involving these plaintiffs or having an economic effect on these plaintiffs or on the United States.

The allegations in the Complaint also acknowledge that the acts complained of occurred in Israel, that the alleged training and coordination of the attacks occurred either in Syria, Lebanon, Libya and, potentially, Rome, Italy. (Complaint, ¶¶ 28-52). No tortious acts or other activity occurred in the United States.

In complete absence of allegations that establish that an exception to sovereign immunity applies and in the complete absence of allegations that demonstrate the reasons why the plaintiffs took nearly 34 years to file the Complaint, the Complaint must be dismissed in its entirety.

## II.    ARGUMENT

### A.    Summary of Argument.

The plaintiffs are seeking recovery for personal injuries sustained in Israel nearly thirty-four (34) years prior to the filing of the Complaint. The Complaint should be dismissed pursuant to Fed.R.Civ.P. 12(b)(1) because this Court lacks subject matter jurisdiction. Libya is immune from suit under the FSIA and the allegations of the Complaint demonstrate that none of the exceptions to sovereign immunity apply to the plaintiffs' claims.

Plaintiffs incorrectly allege that Libya is not immune based on three exceptions to immunity set forth in the FSIA: 28 U.S.C. § 1605(a)(2), (5) and (7), primarily relying on (a)(7). None of these exceptions apply to the claims against Libya. § 1605(a)(7) does not apply because Libya was not designated as a state sponsor of terrorism when the act occurred in 1972. § 1605(a)(2) does not apply because the plaintiffs' injuries are not based on a commercial activity outside of the United States that had a direct effect in the United States. Finally, § 1605(a)(5) does not apply because Libya did not engage in a tortious act in the United States

3

that caused the plaintiffs' injury.  Consequently, this Court does not have subject matter

jurisdiction over this matter.

The Complaint should also be dismissed pursuant to Fed.R.Civ.P. 12(b)(6) because the

nearly 34 year-old claims are time-barred because the statute of limitations has run and the

plaintiffs have not established that the application of equitable tolling permitted plaintiffs to wait

until April 21, 2006 to file the Complaint.

Both of these arguments are fully dispositive and the Court should dismiss the Complaint

against Libya in its entirety.[3]

**B.**     **The Complaint Should Be Dismissed Because This Court Lacks Subject Matter Jurisdiction.**

The Complaint should be dismissed, in its entirety, pursuant to Rule 12(b)(1), because

this Court does not have subject matter jurisdiction.

The Complaint contends that Libya is subject to suit in the United States District Court

pursuant to the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C.  § 1605(a)(2), (5)

and (7).  The plaintiffs admit that Libya is a foreign state, but allege that it is not immune from

suit because of these three exceptions to sovereign immunity.  Based on the allegations in the

Complaint and the nature of the claims, the plaintiffs primarily rely upon the exception to

immunity found in § 1605(a)(7) to establish jurisdiction.  However, the plaintiffs are not able to

establish that any of these exceptions, or any other exception to sovereign immunity, applies to

their claims against Libya.

The FSIA is the "sole basis for obtaining jurisdiction over a foreign state in federal

court."  *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 439 (1989).  The

---

[3] In the event that the Court does not agree with Libya's position that there are two fully dispositive bases to dismiss the Complaint, Libya expressly reserves the right to challenge the legal sufficiency of the plaintiffs' claims as permitted by the Federal Rules of Civil Procedure.

FSIA grants immunity to "foreign states" as that term is defined by the statute, 28 U.S.C. § 1604. Section 1604 states in relevant part, ". . . a foreign state shall be immune from the jurisdiction of the courts of the United States and of the States except as provided in sections 1605-1607 of this chapter."   28 U.S.C. § 1604.  The grant of immunity under the FSIA is subject only to the exceptions expressly provided in the FSIA.  *See*, *Doe v. Israel*, 400 F. Supp.2d 86, 104 (D.D.C. 2005); 28 U.S.C. § 1604.

"Under the FSIA, a foreign state is immune from the jurisdiction of both the federal and the state courts except as provided by . . . nine specifically enumerated exceptions, *see id.*, § 1605(a)(1) through (7), (b), (d), . . . s*ee, id.*, § 1607.  **If no exception applies, a foreign sovereign's immunity under the FSIA is complete:  The district court lacks subject matter jurisdiction over the plaintiff's case.**  *See, id.*, § 1330(a).  Thus, the sovereign has an immunity from trial and the attendant burdens of litigation, and not just a defense to liability on the merits." *Phoenix Consulting, Inc. v. Republic of Angola*, 216 F.3d 36, 39 (D.C. Cir. 2000) (emphasis added) (citing *Foremost-McKesson, Inc. v. Islamic Republic of Iran*, 905 F.2d 438 (D.C. Cir. 1990)).

The plaintiffs generally allege that this Court has jurisdiction over this matter pursuant to three exceptions to immunity found in the FSIA:  (i) the "State Sponsor of Terrorism Exception" found in § 1605(a)(7); (ii) the "Commercial Activity Exception" found in § 1605(a)(2); and (iii) the "Tortious Acts Exception" found in § 1605(a)(5).  The allegations in the Complaint do not fall within any of these exceptions to sovereign immunity and as a consequence, this Court does not have subject matter jurisdiction and the Complaint must be dismissed.

1.    **The Complaint Does Not Satisfy the Requirements of Section 1605(a)(7), the State Sponsor of Terrorism Exception.**

In 1996, the State Sponsor of Terrorism Exception to sovereign immunity was enacted. Set forth in Section 1605(a)(7), it provides a vehicle for nationals of the United States injured or killed by acts of terrorism to pursue a claim for money damages in the United States if certain criteria are met.  It states:

> (a)    A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case-- . . .
>
>> (7)    not otherwise covered by paragraph (2), in which money damages are sought against a foreign state for personal injury or death that was caused by an act of torture, extrajudicial killing, aircraft sabotage, hostage taking, or the provision of material support or resources . . . for such an act if such act or provision of material support is engaged by an official, employee, or agent of such foreign state while acting within the scope of his or her office, employment, or agency, **except that the court shall decline to hear a claim under this paragraph**-- . . .
>>
>>> (A)    **if the foreign state was not designated as a state sponsor of terrorism** under section 6(j) of the Export Administration Act of 1979 . . . or section 620A of the Foreign Assistance Act of 1961 . . . **at the time the act occurred unless later so designated as a result of such act** or the act is related to Case Number 1:00CV03110(EGS) in the United States District Court for the District of Columbia; and . . .

28 U.S.C. § 1605(a)(7) (emphasis added).

"This exception applies only if the defendant foreign state was designated as a state sponsor of terrorism at the time the alleged acts of torture occurred." *Acree v. Republic of Iraq*, 370 F.3d 41, 44(D.C. Cir. 2004) (*citing* 28 U.S.C. § 1605(a)(7)(A)).  The plaintiffs allege that Libya has been designated a state sponsor of terrorism within the meaning of 28 U.S.C. § 1605(a)(7) since 1984.  (Complaint, ¶ 17.)[4]

The plaintiffs cannot establish that the State Sponsor of Terrorism Exception to sovereign immunity applies to Libya in this case.  At the time of the incident, May 30, 1972, Libya was not on the State Sponsor of Terrorism list.  Moreover, the plaintiffs have not alleged that the attack at the Lod Airport, and Libya's alleged involvement in that attack, was the reason that Libya was put on the State Sponsor of Terrorism List seven years later.  Without such facts, the Complaint does not establish that the exception to immunity found in § 1605(a)(7) applies to Libya for these claims.

The Complaint alleges that "Defendants [Syria] and [Libya] are foreign states designated "state sponsors of terrorism" within the meaning of the Export Administration Act  . . . and the Foreign Assistance Act . . . **since January 19, 1984**, as the term "states sponsors of terrorism" is defined under 28 U.S.C. § 1605(a)(7) and 28 U.S.C. § 1605(a)(7), note . . ." (Complaint, ¶ 17) (emphasis added).  There are no allegations that Libya was placed on the list because of the attack at the Lod Airport.  Because they cannot make such a showing, § 1605(a)(7) does not apply and cannot be the basis for this Court to exercise subject matter jurisdiction over the plaintiffs' claims.  *See, Roeder v. Islamic Rep. of Iran*, 195 F. Supp.2d 140, 159-160 (D.D.C. 2002) (the court did not have jurisdiction over the plaintiffs claims against Iran relating to the 1979-1980 hostage taking because Iran was not on the state sponsor of terrorism list at that time).

---

[4] Libya was placed on the state sponsor of terrorism list on December 29, 1979 and removed from the list in 2006.

The language of the statute is clear, unequivocal and mandatory – the **court shall decline to exercise jurisdiction under 1605(a)(7) if the foreign sovereign was not on the list of state sponsors of terrorism at the time of the act** or if it was not added because of the attack.  Such is the case here.  Libya was not on the list in 1972 and plaintiffs have alleged no facts to support that Libya was placed on the list as a result of the attack at Lod Airport.  The plaintiffs allege simply that Libya was included on the State Sponsor of Terrorism List in 1984 and that Libya provided "material support and resources to international terrorist organizations."  (Complaint, ¶ 17)  These allegations are not sufficient to satisfy the mandate of Section 1605(a)(7).  *See, Roeder*, 195 F. Supp.2d at 161 (general allegations that a sovereign was later added to the state sponsor of terrorism list because of support for terrorism does not satisfy state sponsor of terrorism exception).

The FSIA codified the restrictive view of sovereign immunity and the exceptions to immunity are not to be casually applied.  *See generally, Republic of Argentina v. Weltover, Inc.*, 504 U.S. 607, 612 (1992).  On the contrary, the exceptions to immunity set forth in Section 1605 are to be carefully analyzed before being applied.  It is well settled that if the claims asserted in a particular complaint do not fall within an exception to immunity, then the sovereign enjoys immunity and the Court does not have jurisdiction.  *See, Phoenix Consulting*, 261 F.3d at 39.

The plaintiffs have not and cannot demonstrate that Libya was included on the State Sponsor of Terrorism List in 1972 or that it was later added because of the attack at the Lod Airport in May 1972.  Consequently, the plaintiffs cannot rely on this exception to sovereign immunity.

**2.    The Complaint Does Not Establish an Exception to Immunity Under 1605(a)(2), the Commercial Activity Exception.**

The plaintiffs have also alleged that this Court can exercise jurisdiction over Libya based on the Commercial Activity Exception to immunity found in § 1605(a)(2).  It is the plaintiffs who bear the burden to establish that the exception to sovereign immunity found in § 1605(a)(2) applies to Libya under the facts alleged in this case.

Section 1605(a)(2), known as the Commercial Activity Exception, states:

> (a)    [a] foreign state shall not be immune from the jurisdiction of the courts of the United States or of the states in any case --
>
> *        *        *
>
> (2)    in which the action is based upon a commercial activity carried on in the United States by the foreign state; or upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or upon an act outside of the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States; (emphasis added).

Under this section, there are three types of commercial activity that can except a sovereign from immunity:  (i) commercial activity carried on in the United States; (ii) an act performed in the United States in connection with commercial activity elsewhere; or (iii) an act outside of the United States, in connection with a commercial activity that causes a direct effect in the United States.

Commercial activity is defined in the FSIA in Section 1603(d) as: "either a regular course of commercial conduct or a particular commercial transaction or act.  The commercial character of an activity shall be determined by reference to the nature of the course of conduct of the particular transaction or act, rather than by reference to its purpose."

The Supreme Court addressed what constitutes a commercial activity under the FSIA in *Republic of Argentina v. Weltover, Inc.*, 504 U.S. 607 (1992). The Court noted that the FSIA "largely codifies the so-called 'restrictive' theory of foreign sovereign immunity first endorsed by the State Department in 1952. The meaning of 'commercial' is the meaning generally attached to that term under the restrictive theory at the time the statute was enacted. *See McDermott Int'l, Inc.* v. *Wilander*, 498 U.S. 337, 342, 112 L. Ed. 2d 866, 111 S. Ct. 807 (1991) ("We assume that when a statute uses [a term of art], Congress intended it to have its established meaning."). 504 U.S. at 612-613. The Court went on to state that "[a] foreign state engaging in 'commercial' activities 'do[es] not exercise powers peculiar to sovereigns'; rather, it 'exercise[s] only those powers that can also be exercised by private citizens.'" *Id.* at 614 (citing *Alfred Dunhill of London, Inc.* v. *Republic of Cuba*, 425 U.S. 682, 704 (1976).)

In the *Weltover* case, the government restructured debt by issuing bonds to various international investors. Several of the investors designated banks in New York for their payments, despite the fact that the investors were not U.S. citizens. The Supreme Court affirmed the determination that Argentina's activity in issuing debt instruments (in that case bonds) was commercial in nature and was the type of activity often engaged in by private businesses. It held that "because the [FSIA] provides that the commercial character of an act is to be determined by reference to its nature rather than its purpose, 28 U.S.C. § 1603(d), the question is not whether the foreign government is acting with a profit motive or instead with the aim of fulfilling uniquely sovereign objectives. Rather, the issue is whether the particular actions that the foreign state performs (whatever the motive behind them) are the *type* of actions by which a private party engages in trade and traffic or commerce." *Id.* at 614 (internal citations and quotations omitted.)

In 1993, the Supreme Court issued another opinion regarding the interpretation of Section 1605(a)(2), *Saudi Arabia v. Nelson*, 507 U.S. 349 (1993). In *Nelson*, the focus of the opinion was the term "based upon" as used in the statute. The Court determined that: "[a]lthough the [FSIA] contains no definition of the phrase 'based upon,' and the relatively sparse legislative history offers no assistance, guidance is hardly necessary. In denoting conduct that forms the 'basis,' or 'foundation,' for a claim, . . . the phrase is read most naturally to mean those elements of a claim that, if proven, would entitle a plaintiff to relief under his theory of the case." *Nelson*, 507 U.S. at 357.

The *Nelson* court was evaluating whether a court could exercise jurisdiction over a sovereign defendant for personal injuries sustained by a plaintiff, an employee of public hospital, when he was allegedly arrested and tortured for reporting safety defects at the hospital. The plaintiffs' claims were for personal injuries caused by those intentional wrongs and were not "based on" commercial activity. The Court determined that those torts did not constitute commercial activity and that the injuries and claims arising from the injuries were not based upon commercial activity between the foreign sovereign and the plaintiff. *See id.* at 358.

The *Weltover* and *Nelson* decisions provide the framework under which courts of appeals and district courts have decided claims based on the Commercial Activity Exception to sovereign immunity. *Weltover* instructs that, in evaluating whether an activity is commercial, the determinative factor is the nature of the activity, not just whether purpose of activity includes a profit motive. *Nelson* explains that, to be based upon a commercial activity, the commercial activity must be the foundation of the plaintiffs' claim. Applying the guidance of these decisions to the case at bar, it is apparent that the exception does not apply to the plaintiffs' claims.

As noted above, the Commercial Activity Exception provides for an exception to immunity for three different types of commercial activity involving a plaintiff and a foreign sovereign:  (1) commercial activity carried on in the United States; (2) an act performed in the United States in connection with commercial activity elsewhere; or (3) an act outside of the United States, in connection with a commercial activity that causes a direct effect in the United States.  From the face of the Complaint, it is apparent that the first two types of commercial activity, which require activity in the United States, are not applicable here.  The Complaint clearly states that all of the acts related to the attack at Lod Airport in Israel on May 30, 1972, took place outside of the United States.  Thus, to benefit from this exception to sovereign immunity, the plaintiffs must satisfy the third type of commercial activity.  The plaintiffs must demonstrate that their claims are (a) based on acts outside the United States; and (b) the acts were in connection with commercial activity; and (c) the acts caused a direct effect in the United States.  The plaintiffs cannot satisfy these requirements.

As a preliminary matter, it does not appear that the plaintiffs' claims are "based on" acts that were in connection with commercial activity by Libya.  The plaintiffs do not allege any specific acts that Libya performed.  They allege generally that Libya provided material support for terrorist organizations such as the JRA. (Complaint, ¶¶17, 33), that Libya falsified official documents, sold passports and visas, permitted terrorists groups to travel freely and engaged in other activity to fund terrorism worldwide (Complaint, ¶ 34, 35).  According to the plaintiffs, this material support of the JRA permitted the JRA to perform the attack which caused the plaintiffs' injuries.  Importantly, the plaintiffs' do not allege that Libya or any Libyan officials directly participated in the act.  *See generally*, Complaint.  Instead, the plaintiffs included conclusory language that the JRA terrorists were Libya's agents for purpose of this act.  There is no factual

evidence to support this conclusion.  The plaintiffs' injuries were "based on" the wrongful action

by the JRA not a commercial activity by Libya.  Indeed, the plaintiffs cannot demonstrate that

their injuries were "based on" any act by Libya outside of the United States.

Moreover, the plaintiffs cannot establish that Libya engaged in commercial activity with

respect to these plaintiffs.  The alleged connection between Libya and the JRA terrorists who

performed the attack is based solely on the general allegations, noted above, of Libya's alleged

support for terrorist organizations such as the JRA. (Complaint, ¶¶17, 33), that Libya falsified

official documents, sold passports and visas, permitted terrorists groups to travel freely and

engaged in other activity to fund terrorism worldwide (Complaint, ¶ 34, 35).  According to the

plaintiffs, this material support of the JRA permitted the JRA to perform the attack which caused

the plaintiffs' injuries.

Support of terrorism is not a commercial activity.  It is not the "*type* of actions by which a

private party engages in trade and traffic or commerce."  *See, Weltover*, 504 U.S. at 614.  The

Court of Appeals for the D.C. Circuit has previously rejected the argument that support of

terrorist organizations constitutes commercial activity.  In *Mwani v. bin Laden*, 417 F.3d 1 (D.C.

Cir. 2005), the Court observed that "The key inquiry in determining whether particular conduct

constitutes commercial activity is not to ask whether its purpose is to obtain money, but rather

whether it is the sort of action by which private parties can engage in commerce.  Granting

refuge to terrorist training camps is a uniquely sovereign act; it is not the sort of benefit that a

commercial landlord can bestow upon a commercial tenant."  417 F.3d at 17 (internal quotations

and citations omitted).   Similarly, in *Ciccipio v. Islamic Republic of Iran*, 30 F.3d 164, 168

(D.C. Cir. 1994), the Court determined that hostage taking for profit was not a commercial

activity.

Based on this binding authority, there is no question that the plaintiffs' allegations against Libya relating to support of terrorism do not constitute commercial activity for purposes of the FSIA exception to immunity.  The plaintiffs' claims against Libya are solely and exclusively based on Libya's alleged sponsorship and support of the JRA terrorists and terrorist organizations generally.  State sponsorship of terrorism is not commercial activity.

Even if the plaintiffs could establish that their claims are based on commercial activity outside of the United States, which they cannot, the plaintiffs cannot establish a direct effect in the United States as required by the statute.

An "effect is direct if it follows as an immediate consequence of the defendant's activity." *Weltover,* 504 U.S. at 618 (internal quotations omitted).  The *Weltover* Court concluded that the failure of Argentina to deposit money into the foreign investors' bank accounts in New York had a direct effect in the U.S. because New York was the place of payment as designated by the contracts and thus, the United States was the place of the ultimate performance of those contracts.  *Id.*  Here, there is no commercial connection, direct or otherwise, between any of the alleged acts of Libya and the United States.

Importantly, the plaintiffs have not alleged any effect in the United States, direct or otherwise, that resulted from the attack at Lod Airport, the act which is the subject of this Complaint.  Experiencing financial loss by a citizen of the United States as a result of personal injury in Israel does not constitute "direct effect" for purposes of the statute.  *See generally, Zedan v. Kingdom of Saudi Arabia*, 849 F.2d 1511 (D.C.Cir. 1988) (promise to forward money to a U.S. citizen not a direct effect on the United States); *Lempert v. Republic of Khazakstan*, 223 F. Supp.2d 200 (D.D.C. 2002) (refused to pay for services performed by U.S. citizen not a direct effect on U.S.); and *Millicon International Cellular, S.A. v. Republic of Costa Rica*,

995 F. Supp. 14, 21 (D.D.C. 1998) (need a close nexus, such as direct relationship between the United States and the foreign state's conduct to demonstrate direct effect).

The plaintiffs have not and cannot allege any facts to satisfy the provisions of Section 1605(a)(2) and therefore, cannot demonstrate that the Commercial Activity Exception to sovereign immunity applies to their claims against Libya.

### 3.    The Complaint Does Not Include Allegations Which Satisfy the Exception to Immunity Found in § 1605(a)(5).

The final provision on which the plaintiffs rely to establish jurisdiction is the Tortious Act Exception.  As with all other exceptions to sovereign immunity, it is the plaintiffs' burden to demonstrate that the exception found in Section 1605(a)(5) applies to Libya in this case.  The plaintiffs cannot meet their burden.  Indeed, the express language of the statute precludes its application because the plaintiffs do not allege that Libya engaged in tortious activity in the United States.

Section 1605(a)(5) provides:

(a)    [a] foreign state shall not be immune from the jurisdiction of the courts of the United States or of the states in any case --

*        *        *

(5)    Not otherwise encompassed in paragraph 2 above, **in which money damages are sought against a foreign state for personal injury or death**, or damage to or loss of property, **occurring in the United States** and caused by the tortious act or omission of that foreign state or of any official or employee of that foreign state while acting within the scope of his office or employment; except this paragraph shall not apply to --

(A)    any claim based upon the exercise or performance or the failure to exercise or perform a discretionary function regardless of whether the discretion be abused, or

(B)    any claim arising out of malicious
prosecution, abuse of process, libel, slander,
misrepresentation, deceit or interference
with contract rights; (emphasis added).

It is the law of this Circuit, and it is clear from the language of the statute, that tortious acts and injuries from tortious acts outside of the United States are not covered by this provision. The Tortious Act Exception "provides that a foreign state shall not be immune in any case 'in which money damages are sought against a foreign state for personal injury . . . occurring in the United States and caused by the tortious act or omission of that foreign state. . . .'  We have held that this **exception requires that both the tortious act as well as the injury occur in the United States**."  *Ciccipio*, 30 F.3d at 169 (emphasis added).

The plaintiffs' claims do not fall within this exception.  Indeed, the Complaint demonstrates that the plaintiffs cannot satisfy this provision.  The plaintiffs allege that all of the tortious acts occurred outside of the United States and that their injuries occurred outside the United States.  Therefore, the Tortious Activity Exception cannot apply.

The plaintiffs cannot demonstrate that any of the three exceptions to immunity advanced in their Complaint apply to the claims against Libya.  Consequently, Libya respectfully states that this Court does not have jurisdiction and the Complaint against Libya should be dismissed in its entirety pursuant to Fed.R.Civ.P. 12(b)(1).

**C.     The Complaint Should Be Dismissed Against Libya Because the Plaintiffs'
Claims Are Time-Barred.**

Even if the Court determines that it has subject matter jurisdiction, the plaintiffs' claims against Libya should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) because all of the claims are time-barred.  *See Nat'l R.R.  Passenger Corp.  v.  Lexington Ins.  Co.*, 357 F. Supp.2d 287,

292 (D.D.C. 2005) ("[a] defendant may raise the affirmative defense of a statute of limitations via a Rule 12(b)(6) motion when the facts giving rise to the defense are apparent on the face of the complaint.").

It is apparent from the face of the Complaint that all of the claims raised by the plaintiffs are time-barred. Plaintiffs filed the Complaint on April 21, 2006. The personal injuries for which plaintiffs seek recovery occurred on May 30, 1972, **nearly 34 years before the Complaint was filed**. Even under the most lengthy statute of limitations, the plaintiffs' claims are stale. In addition, the plaintiffs have not established that the doctrine of equitable tolling applies to the facts of this case or that they can allege facts which would warrant their delay of **nearly ten years** in filing suit after any impediment to filing suit was removed (*e.g.*, the enactment of Section 1605(a)(7) on April 24, 2006). Plaintiffs' claims are time-barred and the entire Complaint should be dismissed with prejudice.

The statute of limitation for FSIA claims brought pursuant to § 1605(a)(7) is set forth in § 1605(f). Section 1605(f) of the FSIA states:

> No action shall be maintained under subsection (a)(7) unless the action is commenced not later than 10 years after the date on which the cause of action arose. All principles of equitable tolling, including the period during which the foreign state was immune from suit, shall apply in calculating this limitation period.

28 U.S.C. § 1605(f).

There is no question that the Complaint in this case was filed more than ten years after the cause of action arose on May 30, 1972. Plaintiffs, therefore, presumably take either of two erroneous positions. Either: (1) they believe that the ten year statute of limitations found in 1605(f) begins to run on April 24, 1996 when the FSIA was amended to include §§ 1605(a)(7) and 1605(f), despite the clear language of the statute; or (2) they rely on the doctrine of equitable tolling in filing their nearly 34 year-old claims. Regardless of which position the plaintiffs

17

promote, both are incorrect and neither is supported by the statute or recent decisions interpreting it.

The 1996 amendment to the FSIA, on which the plaintiffs presumably rely, added Section 1605(a)(7) providing a waiver of immunity for state sponsors of terrorism in claims for money damages arising out of personal injury to or death of United States citizens as a result of a terrorist act. Congress provided for a lengthy 10-year statute of limitations for claims under Section 1605(a)(7) and expressly stated that equitable tolling principles apply. The language chosen by Congress is straightforward: "No action shall be maintained under subsection (a)(7) unless the action is commenced not later than 10 years after the date on which the cause of action arose. All principles of equitable tolling, including the period during which the foreign state was immune from suit, shall apply in calculating this limitation period." 28 U.S.C. § 1605(f).

Notably, Congress did not write the first sentence of Section 1605(f) to say what the plaintiffs would like the statute to provide. Congress could have easily written that the action must be commenced not later than "10 years after the cause of action arose or 10 years after the enactment of this statute, whichever is later." This proposition is nowhere in the statute or the legislative history of the statute. Also telling is that Congress did not start the running of the statute of limitations when the "cause of action accrued." Instead, Congress states simply that the 10-year statute of limitations period begins to run when the cause of action arose and that principles of equitable tolling shall apply. "Under the FSIA, the key question is when the claim 'arose,' that is, when the events in question occurred." *Buonocore v. Great Socialists People's Libyan Arab Jamahiriya*, 2007 U.S. Dist. LEXIS 49031, *6-7 (D.D.C. 2007).

The *Buonocore* case is strikingly similar to this case and was filed on the same date as this case – April 21, 2006.  In that case, Judge Kessler was faced with a motion to dismiss based on the statute of limitations, also filed on behalf of Libya.  The plaintiffs in *Buonocore* sought recovery for personal injuries sustained in December 1985.  Despite the fact that the cause of action arose in 1985, the plaintiffs waited until April 21, 2006 to file their complaint.  Following a well-reasoned decision from a sister court, *Vine v. Republic of Iraq*, 459 F. Supp.2d 10 (D.D.C. 2006), Judge Kessler rejected the plaintiffs' arguments that they had ten years from the April 1996 enactment of Section 1605(a)(7) or that equitable tolling provided them with ten years from that time.  Judge Kessler also followed the binding precedent in this Circuit, *Phillips v. Heine*, 984 F.2d 489 (D.C. Cir. 1993), in concluding that equitable tolling permits the plaintiffs to "commence suit with in a reasonable period of time after Congress enacted 28 U.S.C. § 1605(a)(7) in April 1996, which waived sovereign immunity for Libya.  Congress did not create an automatic extension of the statute of limitations by the length of the tolling period."  *Buonocore,* 2007 U.S. Dist. LEXIS 49031, *9-10 (*citing Phillips*, 984 F.2d at 492).

Judge Kessler concluded that to benefit from equitable tolling, the plaintiffs need to demonstrate that a time period is reasonable.  This conclusion is well supported by the case law analyzing and applying the doctrine of equitable tolling.

Equitable tolling is an equitable principle that extends the period within which a plaintiff may file a claim.  The burden is on the plaintiff to demonstrate that it is entitled to equitable tolling.  *Arce v. Garcia*, 434 F.3d 1254, 1261 (11th Cir.  2006).  The plaintiff bears this burden because equitable tolling is an exception to the rule of the statute of limitations, not the rule itself.  Equitable tolling is only appropriate in extraordinary circumstances.  *Id.* (*citing Sandvik v. United States*, 177 F.3d 1269, 1271 (11th Cir. 1999).  The D.C. Circuit has instructed that even

19

"where a plaintiff establishes circumstances justifying equitable tolling, the plaintiff is given extra time '*only* if he needs it.'" *Vine*, 459 F. Supp.2d at 22 (*quoting Phillips,* 984 F.2d at 492) (emphasis in original). Moreover, if the plaintiff does not need extra time, the D.C. Circuit has held that "there is no basis for depriving the defendant of the protection of the statute of limitations." *Phillips*, 984 F.2d at 492. Importantly, equitable tolling "does not bring about an automatic extension of the statute of limitations by the length of the tolling period." *Id.* The court should only "extend the time for filing by a reasonable period after the tolling circumstance [is] mended." *Id.*

The *Phillips* decision described how courts in this Circuit should apply principles of equitable tolling. "[T]olling does not bring about an automatic extension of the statute of limitations by the length of the tolling period. It gives the plaintiff extra time *only* if he needs it. If the plaintiff doesn't need it there is no basis for depriving the defendant of the protection of the statute of limitations, which after all exists to advance important interests in evidentiary accuracy and repose. **The purposes of the doctrine are fully achieved if the court extends the time for filing by a reasonable period after the tolling circumstance is mended.**" *Id.* at 492 (emphasis added, citations and internal quotations omitted).

In *Phillips* the D.C. Circuit determined that 10 months was too long to extend the statute of limitations. *Phillips*, 984 F.2d at 492. In that case, plaintiff's son was a passenger in a plane which disappeared off the coast of Italy. No remains of plaintiff's son were ever found and plaintiff petitioned various governmental entities for a report of death. Slightly less than three years after his son's plane disappeared, plaintiff received a California court declaration of death. Nearly ten months after receiving the declaration of death, plaintiff filed a suit against the pilot's conservator under the Death on the High Seas Act ("DOHSA"), 46 U.S.C. App. § 761 *et seq.*

The district court dismissed plaintiffs' claims as time-barred under DOHSA's three-year statute

of limitations. *Id.* at 490. Upholding the ruling of the district court, the D.C. Circuit rejected

plaintiff's argument that the principle of equitable tolling should be applied in that case.

Specifically, the Court noted:

> Here the justifications for delay, viewed in the light most favorable
> to plaintiff; ended no later than the California court's certificate of
> February 26, 1990. The statute, without any tolling, did not expire
> until March 21, 1990. As nothing had prevented plaintiff from
> gathering information in the preceding years, and more than three
> weeks remained, we question whether there was any need to
> extend the statute at all. But plaintiffs' reasonable needs surely did
> not require extending the time the full nine and one-half months
> that passed before he filed suit on December 12, 1990.

*Id.* at 492. *See also, Burnett v. New York Cent. R.R.*, 380 U.S. 424 (1965)(what constitutes a

reasonable period will depend on the facts of the case and the diligence of the plaintiff.).

   *Phillips* is binding on this Court. Equitable tolling does not operate to give plaintiffs a

period of 10 years from the date of the enactment of Section 1605(a)(7) to file a complaint.

There is no substantive support in any case or in the legislative history for the position that

plaintiffs have 10 years after the enactment of Section 1605(a)(7) to file their claims. This Court

should follow the reasoned analysis in *Buonocore* and *Vine*, both of which followed the binding

*Phillips* decision.

   In *Vine*, the Court analyzed whether the doctrine of equitable tolling saved the complaint.

Here, as in two of the three complaints in *Vine*, equitable tolling does not save the claim. In

rejecting the argument of the plaintiffs in two of the complaints, the *Vine* court followed *Phillips*,

held that the statute of limitations is not automatically extended and does not begin to run from

the date of enactment of Section 1605(a)(7).

The *Vine* court did not agree with the plaintiffs' argument that the statute of limitations was automatically extended, finding that the plaintiffs' arguments and authority were not persuasive:

> the [2 groups of plaintiffs] cite a number of cases that assertedly stand for the proposition that Congress specifically allowed for the bringing of suits, absent tolling, up to ten years from the date of the enactment of the state sponsored terrorism exception. rather than ten years from the date the cause of action arose. The court notes that the overwhelming majority of the cases cited involve default judgments, for which any statute of limitations argument was necessarily waived. In only three of those cases was the statute of limitations even mentioned, and those reference are dicta given the procedural posture of the case. In one of the two cases cited by plaintiffs that was not decided by default, the defendant failed to raise the statute of limitations defense and therefore waived it as well. Finally, in the sole disputed matter cited by plaintiffs in which the statute of limitations was raised, the court recognized that the statute of limitations began to run at the time the underlying acts occurred, but were tolled until immunity was waived.

459 F. Supp.2d at 21, n. 9 (internal citations omitted). The *Vine* court followed *Phillips* and held that "the holding in Phillips – that equitable tolling . . . merely ensures that the plaintiff is not, by dint of circumstances beyond his control, deprived of a reasonable time in which to file suit." 459 F. Supp.2d at 22 (internal quotations omitted).

As the *Vine* and *Buonocore* courts recognized, it is the law of this Circuit that equitable tolling will only extend the limitations period for a reasonable period of time. *See Phillips*. Had Congress intended a different result, it could have easily said so. The burden of demonstrating that a time period extended by equitable tolling is reasonable falls squarely on the shoulders of the party seeking the extension. *Irwin v. Department of Veterans Affairs*, 498 U.S. 89, 96 (1990). Plaintiffs cannot meet their burden.

The plaintiffs have not and cannot present facts that demonstrate that 10 years from the enactment of Section 1605(a)(7) is a reasonable time for them to file suit. In the Complaint the

plaintiffs admit that they had access to information and facts allegedly supporting their claims as early as the mid-1970s when the terrorist who participated in the attack was tried and convicted in Israel. *See* Complaint ¶¶ 53, 54. Consequently, even assuming that the plaintiffs could not file this case until after Section 1605(a)(7) was enacted, they could have done so shortly thereafter.

Plaintiffs allege no facts as to why they had to wait until April 21, 2006 – just 3 days before the 10 year anniversary of the enactment of Section 1605(a)(7) – to file their Complaint. There is absolutely no factual support presented by the plaintiffs that 10 years after the enactment of Section 1605(a)(7), and nearly 34 years after the cause of action arose, is a reasonable time to bring their claims.

In this Circuit, it is the plaintiffs' burden to show that equitable tolling applies and that the time period was reasonable. Plaintiffs have completely failed to meet their burden. Moreover, plaintiffs cannot meet their burden because there is no set of facts that would support the position that 10 years after the enactment of Section 1605(a)(7) is a reasonable time. Therefore, all of the plaintiffs' claims are time-barred and Libya's Motion to Dismiss should be granted.

## CONCLUSION

For the foregoing reasons, the Complaint should be dismissed with prejudice in its entirety.

Respectfully, Submitted,

**ECKERT SEAMANS CHERIN
& MELLOTT, LLC**

By: _____/s/ Mark A. Johnston_____
Thomas J. Whalen, Esq. (Bar No. 208512)
Mark A. Johnston, Esq. (Bar No. 455764)
1747 Pennsylvania Ave., N.W.,
Twelfth Floor
Washington, D.C. 20006
(202) 659-6600

*Of Counsel:*

Wendy West Feinstein
ECKERT SEAMANS CHERIN & MELLOTT, LLC
U.S. Steel Tower, 44th Floor
600 Grant Street
Pittsburgh, PA 15219
(412) 566-6000

Attorneys for Great Socialist People's Libyan Arab
Jamahiriya a/k/a Libya

Dated:  October 15, 2007