**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| JOSE MANUEL VEGA FRANQUI, et al., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No.  1:06-CV-00734-RBW |
| v. | ) | |
| | ) | |
| SYRIAN ARAB REPUBLIC, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**LIBYA'S REPLY TO PLAINTIFFS' OPPOSITION TO**
**DEFENDANT'S MOTION TO DISMISS THE COMPLAINT**

Libya's motion to dismiss demonstrates that no exception to sovereign immunity applies to plaintiffs' claims.  Therefore, Libya is immune from suit.  In their opposition to Libya's motion to dismiss, plaintiffs cite no authority supporting their contention that this Court has jurisdiction over this matter.  Moreover, plaintiffs' claims stemming from the 1972 incident are time-barred.  Consequently, on either or both of these bases, the Complaint must be dismissed in its entirety.

**I.     THIS COURT LACKS JURISDICTION**

Despite devoting nearly 30 pages of their opposition to the issue of jurisdiction, the plaintiffs point to no authority for their interpretation of the state sponsor of terrorism exception to foreign sovereign immunity.  The litany of reports and quotes regarding the tracking of terrorist activity do not establish that the state sponsor of terrorism exception, or any other exception, to sovereign immunity applies to the claims against Libya in this case.  Therefore, this Court does not have jurisdiction.

Libya, like all foreign sovereigns, is immune "from the jurisdiction of the courts of the United States and of the states except as provided in Section 1605-1607 of this Chapter."

28 U.S.C. § 1604. Indeed, the plaintiffs recognize that the FSIA[1] is the "sole basis for obtaining jurisdiction over a foreign state in federal court." *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 439 (1989). The plaintiffs cannot dispute that "[i]f no exception applies, a foreign sovereign's immunity under the FSIA is complete: The district court lacks subject matter jurisdiction over the plaintiff's case. [28 U.S.C.] § 1330(a). Thus, the sovereign has 'an immunity from trial and the attendant burdens of litigation, and not just a defense to liability on the merits.'" *Phoenix Consulting, Inc. v. Republic of Angola*, 216 F.3d 36, 39 (D.C. Cir. 2000) (citing *Foremost-McKesson, Inc. v. Islamic Republic of Iran*, 905 F.2d 438, 443 (D.C. Cir. 1990)). In other words, no matter what the nature of the act of a foreign sovereign may be, U.S. courts do not have jurisdiction unless one of the exceptions to sovereign immunity is satisfied. Because no exception applies to the plaintiffs' claims here, this Court lacks jurisdiction and the Complaint must be dismissed.

A.    **The Only Jurisdictional Issue is the Interpretation of § 1605(a)(7).**

Plaintiffs admit that: (1) they are seeking jurisdiction based solely on the state sponsor of terrorism exception to immunity set forth in § 1605(a)(7)[2]; (2) Libya was not designated as a state sponsor of terrorism when the attack at Lod Airport occurred in 1972; (3) the FSIA is the sole basis to obtain jurisdiction over a foreign sovereign; and (4) if an exception to immunity does not apply, then the Court does not have jurisdiction.

Boiling down the plaintiffs' lengthy opposition on jurisdiction, it is clear that only one issue related to Libya's sovereign immunity needs to be decided by the court: whether the

---

[1] The Foreign Sovereign Immunities Act, 28 U.S.C. § 1602, *et seq.*

[2] The plaintiffs' Complaint purported to establish jurisdiction under three exceptions set forth in the FSIA, § 1605(a)(2), (5) and (7). Libya's motion to dismiss demonstrated that each of these exceptions does not apply. In its Opposition, the plaintiffs only challenge Libya's arguments with respect to § 1605(a)(7). Consequently, the plaintiffs have conceded that there is no exception to immunity for their claims based on § 1605(a)(2) and (a)(5). *See e.g.*, Local Civil Rule 7(b).

allegations of Libya's later designation as a state sponsor of terrorism for alleged general support of terrorism satisfies the requirements of § 1605(a)(7). Libya respectfully submits that it does not, and that such a conclusion would conflict with the plain language of the statute.

Libya maintains that, for this Court to exercise jurisdiction pursuant to § 1605(a)(7) for injuries sustained during the 1972 Lod Airport attack, the plain and unambiguous language of the statute requires that the plaintiffs demonstrate that Libya was later designated as a the state sponsor of terrorism **as a result of the act** for which the plaintiffs seek recovery. Plaintiffs ignore the plain language of the statute and argue that Libya's later designation as a state sponsor of terrorism for its alleged general support of terrorism is sufficient to apply the exception to their claims.

This lone dispute with respect to jurisdiction should readily be decided in Libya's favor as a matter of law. The plaintiffs' pages and pages of conclusory argument regarding Libya's support of terrorism over the years do not point to a single source that states that Libya was added to the state sponsor of terrorism list **as a result of the attack at Lod Airport**. Faced with this reality, the plaintiffs argue that Libya's alleged general support of terrorism satisfies § 1605(a)(7), despite the clear language of the statute to the contrary.[3] The plain language of the

---

[3] The plaintiffs include arguments and documents that are not germane to the jurisdictional question posed by Libya's motion to dismiss that will not be addressed in detail in this Reply Brief. For example, the plaintiffs devote much of their argument to describing the general support of terrorism that prompted Libya's designation as a state sponsor of terrorism. For purposes of its Motion to Dismiss, Libya does not challenge the criteria for the designation of state sponsors of terrorism pursuant to the Export Administration Act (the "Export Act") or the statements regarding its historical support of terrorism. Even assuming that all of the information and argument by the plaintiffs is true, the Court does not have jurisdiction. This information from secondary sources provided by the plaintiffs does not evidence that the Lod Airport attack resulted in Libya's later designation as a state sponsor of terrorism. Moreover, mere inclusion on the state sponsor of terrorism list for the Export Act does not provide jurisdiction over sovereign states for claims like those asserted by plaintiffs. The reference to the Export Act in the FSIA is for purposes of jurisdiction under the FSIA. To obtain jurisdiction over a foreign sovereign pursuant to § 1605(a)(7) of the FSIA, plaintiffs must establish that their claims are (1) the type listed and (2) against states designated as a state sponsor of terrorism either (a) at the time of the act resulting in the claim or (b) later designated as a result of that act. The plaintiffs cannot satisfy these criteria. Plaintiffs also argue that jurisdiction is established due to alleged evidence regarding Libya's material support of the terrorist organizations involved in the Lod attack. Plaintiffs are incorrect. Even assuming that their allegations regarding material support are correct, they still must

statute does not permit broad application to provide jurisdiction for acts of terrorism that occurred during time periods when Libya was not designated as a state sponsor of terrorism.  On the contrary, **the language is clear, specific and limits jurisdiction to claims for acts of terrorism that occurred when the foreign sovereign was on the state sponsor of terrorism list or if the sovereign was later so designated as a result of the act of terrorism that is the subject of the plaintiffs' claims**.  *See* 28 U.S.C. § 1605(a)(7)(A).  Importantly, the statute mandates that a court decline to exercise jurisdiction if neither of those criteria is met.  Such is the case here.

        **B.**        <u>**The Statute Is Clear and Unambiguous.**</u>

The plaintiffs are asking this Court to rewrite, or ignore, the clear and unambiguous language written by Congress that relates to jurisdiction over foreign states in limited circumstances.  Enacted in 1996 as part of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996), the state sponsor of terrorism exception to sovereign immunity (codified at 28 U.S.C. § 1605(a)(7)) abrogates the sovereign immunity of foreign states that are on the terrorism list for certain actions.  The exception also abrogates immunity and permits jurisdiction if the foreign state was later designated as a state sponsor of terrorism as a result of the act that forms the basis of the suit.

The FSIA was enacted to provide a "set of legal standards governing claims of immunity in every civil action against a foreign state."  *Republic of Austria v. Altmann*, 541 U.S. 677, 691 (2004) (quoting *Verlinden B.V. v. Central Bank of Nigeria*, 461 U.S. 480, 488 (1983).  The FSIA "carves out certain exceptions to its general grant of immunity.  . . .  These exceptions are central to the [FSIA's] functioning:  At the threshold of every action in a district court against a foreign

---

demonstrate that they can satisfy the other elements to establish jurisdiction, namely that Libya was designated as a state sponsor of terrorism as a result of its support of the Lod Airport attack.

state, . . . the court must satisfy itself that one of the exceptions applies, as subject-matter jurisdiction in any such action depends on that application." *Altmann*, 541 U.S. at 691 (internal quotations and citations omitted).

When evaluating the FSIA, normal rules of statutory construction apply. "Absent a statutory text or structure that requires us to depart from normal rules of construction, we should not construe the statute in a manner that is strained and, at the same time, would render a statutory term superfluous." *Dole Food Co. v. Gerardo Dennis Patrickson*, 538 U.S. 468, 476-77 (2003). This is especially important when the issue is jurisdiction. It is settled "that the subject matter jurisdiction of the lower federal courts is determined by Congress in the exact degrees and character which to Congress may seem proper for the public good." *Amerada Hess*, 488 U.S. at 433 (internal quotations and citations omitted). Thus, the FSIA only has the jurisdictional reach provided by Congress.

"In interpreting the FSIA, we first look to the plain meaning of the language employed by Congress. When determining the plain meaning of language, we may consult dictionary definitions." *Af-Cap Inc. v. Chevron Overseas (Congo) Ltd.*, 475 F.3d 1080, 1087-88 (9th Cir. 2007) (internal quotations and citations omitted). Words in a statute should have their "ordinary, contemporary, common meaning, absent an indication Congress intended them to bear some different import." *Williams v. Taylor*, 529 U.S. 420, 431 (2000) (internal quotation and citation omitted).

The statute providing jurisdiction over state sponsors of terrorism is clear, unambiguous and plainly states:

(a)     A foreign state shall not be immune from the jurisdiction of courts
of the United States or of the States in any case-- . . .

(7)     not otherwise covered by paragraph (2), in which money
damages are sought against a foreign state for personal

injury or death that was caused by an act of torture, extrajudicial killing, aircraft sabotage, hostage taking, or the provision of material support or resources . . . for such an act if such act or provision of material support is engaged by an official, employee, or agent of such foreign state while acting within the scope of his or her office, employment, or agency, **except that the court shall decline to hear a claim under this paragraph**-- . . .

(A)     **if the foreign state was not designated as a state sponsor of terrorism** under section 6(j) of the Export Administration Act of 1979 . . . or section 620A of the Foreign Assistance Act of 1961 . . . **at the time the act occurred unless later so designated as a result of such act** or the act is related to Case Number 1:00CV03110(EGS) in the United States District Court for the District of Columbia; . . . .

28 U.S.C. § 1605(a)(7) (emphasis added). As emphasized above, the declination clause (court's mandatory decline of jurisdiction) of § 1605(a)(7) specifically prohibits the Court from exercising jurisdiction if a foreign state was not designated as a state sponsor of terrorism at the time the act occurred unless the state was later so designated as a result of such act.[4]

The plaintiffs argue that this Court should ignore the plain language of the statute, give no meaning to the declination clause, and determine that Libya is subject to this Court's jurisdiction because of Libya's alleged "pattern of supporting terrorism" from 1968 through its removal from the state sponsor of terrorism list in 2006. (*See generally*, plaintiffs' opposition.) The plaintiffs' interpretation of the statute ignores the plain language of the statute and case law applying the statute. The plaintiffs do not argue that the statute is ambiguous. Indeed, they cannot. Yet the plaintiffs request that this Court rewrite the statute or ignore certain terms contained in the statute. As the plaintiffs would have this Court apply § 1605(a)(7)(A), the

---

[4] As a point of clarification due to the possible confusion on page 20 of the plaintiffs' brief, the term "act" in § 1605(a)(7)'s declination clause refers to the act upon which the plaintiffs' claim is based, not the Export Act or any other law.

clause "as a result of such act" would be removed or ignored and the statute would read "if the foreign state was not designated as a state sponsor of terrorism . . . at the time the act occurred unless later so designated." This, however, is not what Congress wrote, is not a reasonable interpretation of the statute as written, and should be rejected by this Court. *See Dole Foods*, 538 U.S. at 476-77.

For this Court to exercise jurisdiction over Libya for these claims, the specific, clear and mandatory language in § 1605(a)(7) requires either Libya's inclusion on the state sponsor of terrorism list at the time of the act <u>or</u> designation at some later time as a result of the act. The plaintiffs completely disregard these critical terms in the statute and argue, wholly without authority, that allegations of general support of terrorism by a foreign state abrogate the state's sovereign immunity. If Congress had intended the result sought by the plaintiffs, Congress could have easily written the statute to say so, a principle consistently invoked over the years by the U.S. Supreme Court. *See Ali v. Fed. Bureau of Prisons*, 2008 U.S. LEXIS 1212, * 25 (U.S. Jan. 22, 2008). Congress did not do so, and consequently, this Court does not have jurisdiction over Libya for the plaintiffs' claims.

**C.     The *Roeder* Decisions Are Applicable.**

Support for Libya's reading of the statute can also be found in decisions from the D.C. Circuit and from this Court in the *Roeder v. Islamic Republic of Iran* case. The *Roeder* case addressed whether the court had jurisdiction based on § 1605(a)(7) and whether the plaintiffs failed to state claim based on the Algiers Accords. As discussed below, both the trial court and court of appeals determined that the district court does not have jurisdiction over a foreign sovereign under the state sponsor of terrorism exception if the foreign sovereign is not designated as a state sponsor of terrorism at the time the act occurred or later so designated as a

result of the act.  Indeed, the D.C. Circuit noted:

> The FSIA provides generally that a foreign state is immune from
> the jurisdiction of the United States courts unless one of the
> exceptions listed in 28 U.S.C. § 1605(a) applies.  At the time
> plaintiffs filed their complaint and up to entry of the default
> judgment of liability, none of the exceptions applied in this case.
> Section 1605(a)(7)(A), added as a part of the Antiterrorism and
> Effective Death Penalty Act of 1996, allowed an exception to the
> immunity bar if plaintiffs showed that the foreign state had been
> designated a state sponsor of terrorism **when the act occurred or
> as a result of the act**.  Iran had not been so designated.

*Roeder v. Islamic Republic of Iran*, 333 F.3d 228, 235 (D.C. Cir. 2003) (internal citations

omitted) (emphasis added).

The plaintiffs in *Roeder* were hostages held for 444 days in Iran during 1979-1981.  Iran

was designated as a state sponsor of terrorism in 1984.  As a part of the agreement to release the

hostages, the U.S. entered into the Algiers Accords that precluded claims against Iran arising

form the hostage situation.  After the plaintiffs in *Roeder* obtained a default judgment and on the

eve of the damages trial, the U.S. intervened in the case and filed a motion to vacate the default

judgment for lack of jurisdiction based on § 1605(a)(7) because Iran was not designated as a

state sponsor of terrorism at the time of the hostage-taking.  The U.S. also pursued a motion to

dismiss for failure to state a claim based on the Algiers Accords.

While the motion to vacate and to dismiss was pending, § 1605(a)(7) was amended to

include a reference to the case (1:00CV03110 (EGS)).  The trial court determined, and the court

of appeals agreed, that in the absence of the statutory amendment that added the specific

reference to the *Roeder* case, the court lacked subject matter jurisdiction because Iran was not

designated as a state sponsor of terrorism at the time of the act of hostage-taking and was not

later so designated as a result of the act of hostage-taking.  *See Roeder*, 195 F. Supp. 2d 140,

159-60 (D.D.C. 2002) and *Roeder*, 333 F.3d 228, 235 (D.C. Cir. 2003).  The court of appeals

noted that the legislation enacted during the pendency of the action was designed to dispose of the jurisdictional argument that the case should be dismissed because Iran had not been designated a state sponsor of terrorism at the time the hostages were captured and held and that Iran's later designation rested not on the hostage crisis, but on its support of terrorism outside its borders.  333 F.3d 228.  But for that intervening legislation, the trial court correctly concluded that it lacked subject matter jurisdiction over Iran pursuant to the state sponsor of terrorism exception to foreign sovereign immunity (§ 1605(a)(7)) because Iran was not listed on the state sponsor of terrorism at the time the act occurred or as a result of the act.  The case was ultimately dismissed because the Algiers Accords barred the claims.

The analysis in the *Roeder* decisions regarding the effect of the language of § 1605(a)(7) is directly applicable here and should be followed by this Court.  District courts do not have jurisdiction over claims brought pursuant to § 1605(a)(7) if the defendant was not designated as a state sponsor of terrorism at the time of the act giving rise to the claims or later so designated as a result of the act giving rise to the claims.

The plaintiffs do not dispute that Libya was not designated as a state sponsor of terrorism at the time of the Lod Airport attack in 1972 and cannot demonstrate that Libya was later so designated as a result of the act.  Consequently, this Court does not have jurisdiction over Libya and the Complaint should be dismissed.  In that event, the Court need not address the statute of limitations issue in this case.

## II.   PLAINTIFFS' CLAIMS ARE TIME-BARRED

Contrary to the express terms of § 1605(a)(7), as well as the established principles of equitable tolling, plaintiffs contend that their 34 year old claims are not time-barred.  Specifically, plaintiffs maintain that the statute of limitations for their claims was equitably tolled

for the period of time in which Libya was immune from suit.  In addition, plaintiffs argue that the statute of limitations was arrested or suspended during the period in which Libya was immune from suit and did not begin to run until plaintiffs' impediment to filing suit was removed, when the terrorism exception to immunity was enacted (*e.g.*, the enactment of § 1605(a)(7) of the FSIA on April 24, 1996).  Finally, plaintiffs contend that even if they are incorrect concerning the application of the doctrine of equitable tolling to their claims, the Complaint was filed within a reasonable time after Libya's sovereign immunity was lifted as a result of the enactment of § 1605(a)(7) of the FSIA.  Plaintiffs' contentions are incorrect.

As discussed in defendant's motion, the doctrine of equitable tolling does not suspend the running of the statute of limitations.  Rather, the doctrine of equitable tolling merely allows a plaintiff a reasonable time in which to file suit after the statute of limitations has run.  Plaintiffs simply cannot show that the Complaint was filed within the applicable statute of limitations under any interpretation of § 1605(a)(7) of the FSIA.  Accordingly, plaintiffs' claims should be dismissed with prejudice.

### A.    The Statute of Limitations Began to Run from the Date on which Plaintiffs' Claims Arose, May 30, 1972.

Congress did not start the running of the statute of limitations for claims brought under the terrorism exception to the FSIA when the "cause of action accrued" as plaintiffs contend. Instead, the 10-year statute of limitations period begins to run when the cause of action arose. "Under the FSIA, the key question is when the claim 'arose,' that is, when the events in question occurred." *Buonocore v. Great Socialists People's Libyan Arab Jamahiriya*, 2007 U.S. Dist. LEXIS 49031, *6-7 (D.D.C. 2007); *see also Vine v. Republic of Iraq*, 459 F. Supp. 2d 10, 21 (D.D.C. 2006) ("A claim 'arises' on the date that the action in question occurred, yet does not 'accrue' until a prior disability to suit is removed.").  Therefore, plaintiffs' claims in the case

before this Court arose on May 30, 1972, the date of the alleged attack, and the 10-year statute of limitations began to run on that date.

Well-settled principles of statutory construction require that a statute must be construed such that, "no clause, sentence, or word shall be superfluous, void, or insignificant." *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) (citation omitted); *see also Qi-Zhuo v. Meissner*, 70 F.3d 136, 139 (D.C. Cir. 1995) (No words in a statute should be rendered superfluous, consistent with the "endlessly reiterated principle of statutory construction . . . that all words in a statute are to be assigned meaning, and that nothing therein is to be construed as surplusage."); *National Insulation Transp. Committee v. I.C.C.*, 683 F.2d 533 (D.C. Cir. 1982) ("Moreover, a court must, if possible, give effect to every phrase of a statute so that no part is rendered superfluous."). Plaintiffs' contention that their cause of action did not arise until the passage of the terrorism exception to the FSIA is inconsistent with the plain text of statute. See Pl.'s Opp. at 58. Plaintiffs' interpretation of the statute of limitations and application of the principle of equitable tolling under the FSIA would render the second clause of § 1605 (a)(7) superfluous and without meaning.

The statute of limitation for FSIA claims brought pursuant to § 1605(a)(7) is set forth in § 1605(f). Section 1605(f) of the FSIA states:

> No action shall be maintained under subsection (a)(7) unless the action is commenced not later than 10 years after the date on which the cause of action arose. All principles of equitable tolling, including the period during which the foreign state was immune from suit, shall apply in calculating this limitation period.

28 U.S.C. § 1605(f). Plaintiffs argue that "this Court should conclude that Congress intended the ten-year statutory period for claims under the FSIA's terrorism exception to begin to run only upon the waiver of sovereign immunity." Pl.'s Opp. at 53. However, to do so would render the second clause of § 1605(f) superfluous and without meaning.

The text of § 1605(f) states that plaintiffs shall have *10 years from the date upon which the cause of action arose*.  If it was indeed Congress's intent for claims under the terrorism exception to the FSIA to arise on April 24, 1996, then there would have been no need for Congress to include an equitable tolling provision in the statute since the 10 year statute of limitations would not have begun to run until the passage of § 1605(a)(7).  The only reasonable interpretation of the *entire text* of § 1605(f) is that plaintiffs' cause of action arose on May 30, 1972 and that the ten year period ran, uninterrupted, from that date.

Plaintiffs correctly state in their opposition, "[t]o determine whether a statute of limitations has run, the Court must first examine when the cause of action asserted by the Plaintiffs arose."  Pl.'s Opp. at 58.  However, plaintiffs then equate when a cause of action "arose" with when a cause of action "accrues", and in doing so, would like the Court to rewrite the express provisions of § 1605(f).   Plaintiffs contend, "[b]ecause 28 U.S.C. § 1605(f) is a federal statute of limitations, the Court must apply federal rules on when causes of action accrue." *Id*.  Plaintiffs cite to the D.C. Circuit's decision in *Connors v. Hallmark & Son Coal Co.*, 935 F.2d 336, 341 (D.C. Cir. 1991) as support for their position that the statute of limitations begins to run when a cause of action accrues, and that a discovery rule is applied to determine when a cause of action accrues.  However, plaintiffs' reliance upon *Connors* is misplaced.  In *Connors*, none of the statutory provisions under which plaintiffs brought their claims contained a statute of limitations.  *Id*.  The court in *Connors* applied the discovery rule because there was no directive from Congress.  *Id*.  The D.C. Circuit cautioned that this approach should be taken only, "in the absence of a contrary directive from Congress."  *Id*. at 342 (quoting *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 450 (7th Cir. 1990)).

In the case before this Court, § 1605(a)(7) has a clear and plain statute of limitations which states that, "[n]o action shall be maintained under subsection (a)(7) unless the action is commenced not later than 10 years after the date on which the *cause of action arose*." 28 U.S.C. § 1605(f) (emphasis added). Congress has given an express directive contrary to the discovery rule. The statute of limitations for claims brought under the terrorism exception runs *from when the cause of action arose*, not when the cause of action accrued as plaintiffs contend. Therefore, the discovery rule described by the D.C. Circuit in *Connors* in inapplicable to § 1605(a)(7) of the FSIA.

Moreover, Congress expressed its intent in this regard in the 1996 amendment to the FSIA, by including a retroactivity provision which states that Sections 1605(a)(7) and 1605(f) "shall apply to any cause of action arising before, on, or after the date of enactment of this Act." Pub. L. No. 104-132, 110 Stat. 1214, 1243 (codified as amended at 28 U.S.C. § 1605(a)(7)). Clearly, Congress intended for the date of the occurrence to be the date on which the cause of action arose under § 1605(a)(7), even if the occurrence occurred before the passage of the terrorism exception to the FSIA. Plaintiffs' position that their cause of action arose on April 24, 1996 is therefore contrary to Congressional intent and must be rejected. *See Kaiser Aluminum & Chemical Corp. v. Bonjorno*, 494 U.S. 827, 837 (1990) ("The starting point for interpretation of a statute is the language of the statute itself. Absent a clearly expressed legislative intention to the contrary, that language must ordinarily be regarded as conclusive." (citation omitted)).

**B.     The Doctrine of Equitable Tolling Tolls the Statute of Limitations for a Reasonable Period after an Impediment to Suit is Removed.**

As shown above, plaintiffs' cause of action unquestionably arose on May 30, 1972. In an attempt to save their untimely claims, plaintiffs argue that the doctrine of equitable tolling suspended or arrested the running of the statute of limitations while Libya was immune from

suit, and that plaintiffs should be given the entire 10 years to file their suit from the date that the

state sponsor of terrorism exception was enacted, April 24, 1996.  However, under the law of the

D.C. Circuit, the doctrine of equitable tolling does not suspend the running of the statute of

limitations.  Rather, equitable tolling permits the plaintiffs to commence suit within a reasonable

period of time after Congress enacted the terrorism exception to the FSIA.  *See Phillips v. Heine*,

984 F.2d 489, 492 (D.C. Cir. 1993) ("[T]olling does not bring about an automatic extension of

the statute of limitations by the length of the tolling period."  Equitable tolling extends the time

for filing only for a reasonable period.).  Plaintiffs have failed to establish that this Court should

depart from the settled law of this Circuit that equitable tolling will only extend the limitations

period for a reasonable period of time.

　　　　Plaintiffs contend that the decision in *Phillips* is distinguishable from the facts of this

case because *Phillips* analyzed equitable tolling under the Death on the High Seas Act

("DOSHA"), not the FSIA.  Pl.'s Opp. at 49.  However, plaintiffs' narrow reading of *Phillips*

ignores the fact that the D.C. Circuit considered a number of cases which analyzed equitable

tolling in the context of various statutes in determining that equitable tolling only extends the

limitations for a reasonable period of time.[5]  As Judge Kessler noted in *Buonocore*:

> [N]othing in *Phillips* indicates that its treatment of equitable tolling
> was limited to the Death on the High Seas Act. Indeed, the *Phillips*
> court, in discussing the contours of the equitable tolling doctrine,
> cited a number of cases involving a wide variety of statutes. . .
> Given the wide variety of statutory schemes involved in these cases
> and the broad language used by the Court of Appeals, it is difficult
> to construe the *Phillips* court's discussion of equitable tolling as
> only limited to the Death on the High Seas Act.

---

[5] *See Phillips*, 984 F.2d at 491 (citing, *Burnett v. New York Cent. R.R. Co.*, 380 U.S. 424  (1965) (tolling of claims
pursuant to Federal Employers' Liability Act); *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446 (7th Cir. 1990)
(equitable tolling of claims under Age Discrimination in Employment Act); *Hill v. Texaco, Inc.*, 825 F.2d 333 (11th
Cir. 1987) (equitable tolling of statute of limitations for action pursuant to Petroleum Marketing Practices Act);
*Timoni v. United States*, 419 F.2d 294 (D.C. Cir. 1969) (tolling of limitations period for National Service Life
Insurance Act claims); *Esplin v. Hirschi*, 402 F.2d 94 (10th Cir. 1968) (equitable tolling of claims brought pursuant
to Securities and Exchange Act)).

*Buonocore*, 2007 U.S. Dist. LEXIS 49031 at *8-9 (citations omitted).  The scope of the decision in *Phillips* goes beyond DOSHA and applies to the doctrine of equitable tolling itself.  In fact, since deciding *Phillips*, the D.C. Circuit has reiterated that equitable tolling is to be allowed in extraordinary cases only, and that the doctrine does not suspend the statute of limitations.  *See Communications Vending Corp. of Ariz. v. F.C.C.*, 365 F.3d 1064, 1075 (D.C. Cir. 2004) ("We too have set a high hurdle for equitable tolling, allowing a statute to be tolled only in extraordinary and carefully circumscribed instances." (citation omitted)); *see also Chung v. Dep't of Justice*, 333 F.3d 273, 279 (D.C. Cir. 2003) (stating that equitable tolling "merely ensures that the plaintiff is not, by dint of circumstances beyond his control, deprived of a reasonable time in which to file suit." (citation omitted)).

In their opposition, plaintiffs further argue that to toll the statute of limitations for a reasonable time only, as *Phillips* instructs, is contrary to the decision in *Burnett v. New York C. R. Co.*, 380 U.S. 424 (1965).  Pl.'s Opp. at 50.  Plaintiffs' argument is without merit.  First, the *Burnett* decision did not address the issue presented in *Phillips*; *i.e.*, how much additional time does a plaintiff receive under the doctrine of equitable tolling?  Second, the "important interests of national uniformity and certainty" which the *Burnett* court considered was in the context of the Federal Employers' Liability Act ("FELA") which provided for concurrent state and federal jurisdiction.  Under that statutory scheme, separate state "saving" and "transfer" statutes, or a lack of any such statutes in a number of states, could lead to inconsistent statute of limitations for claims brought under the FELA.  *Id*. at 433-434.  That was not the case in *Phillips* and is not the case here.  Finally, *Phillips* specifically cited *Burnett* evidencing the fact that the D.C. Circuit considered the scope of the *Burnett* decision and concluded that *Burnett* did not stand for the proposition that equitable tolling suspends the running of the statute of limitations in all

instances.  For the foregoing reasons, tolling the statute of limitations only for a reasonable time

is not inconsistent with the *Burnett* decision as plaintiffs contend.

 Plaintiffs also attempt to challenge the persuasiveness of the recent decisions in

*Buonocore* and *Vine.*  They argue that the decisions are inconsistent with "the vast majority of

cases in this Circuit" though they cite to only four decisions from this Court. [6]  Pl's Opp. at 57.

However, after thoughtful analysis, both Judge Kessler and Judge Kennedy explicitly rejected

this very same argument in reaching their respective decisions in *Buonocore* and *Vine*.  As Judge

Kessler explained:

> Two of these cases, *Peterson* and *Flatow*, involve default
> judgments where the statute of limitations issue was never fully
> litigated.  While *Collett* and *Wyatt* do squarely address the issue,
> neither case provides more than a conclusory statement about
> Section 1605(f) and, most significantly, neither case even considers
> the Court of Appeals' decision in *Phillips*.  Consequently, this
> Court finds the detailed analysis of Section 1605(f) in *Vine* to be
> more compelling.

*Buonocore*, 2007 U.S. Dist. LEXIS 49031 at *8 (citations omitted).  In *Vine*, Judge Kennedy

rejected a similar argument raised by plaintiffs.  He wrote:

> The court notes that the overwhelming majority of the cases cited
> involve default judgments, for which any statute of limitations
> argument was necessarily waived.  In only three of those cases was
> the statute of limitations even mentioned, and those reference are
> dicta given the procedural posture of the case.  In one of the two
> cases cited by plaintiffs that was not decided by default, the
> defendant failed to raise the statute of limitations defense and
> therefore waived it as well.  Finally, in the sole disputed matter
> cited by plaintiffs in which the statute of limitations was raised, the
> court recognized that the statute of limitations began to run at the
> time the underlying acts occurred, but were tolled until immunity
> was waived.

---

[6] Specifically, plaintiffs rely upon *Collett v. Socialist Peoples' Libyan Arab Jamahiriya*, 362 F. Supp. 2d 230, 242 (D.D.C. 2005); *Wyatt v. Syrian Arab Republic*, 362 F. Supp. 2d 103, 111 n.1 (D.D.C. 2005); *Flatow v. Islamic Republic of Iran*, 999 F. Supp. 1, 18 (D.D.C. 1998); and *Peterson v. Islamic Republic of Iran*, 264 F. Supp. 2d 46, 60 (D.D.C. 2003).

*Vine*, 459 F. Supp.2d at 21, n. 9 (citations omitted).   *Buonocore* and *Vine* are the only decisions which thoroughly analyzed and are consistent with the binding precedent in *Phillips*. Accordingly, this Court should follow the well reasoned opinions in *Buonocore* and *Vine*.[7]

*Phillips* is binding on this Court.  Equitable tolling does not operate to give plaintiffs a period of 10 years from the date of the enactment of § 1605(a)(7) to file their Complaint nearly 34 years after their cause of action arose.  There is no substantive support for plaintiffs' position that they had 10 years after the enactment of § 1605(a)(7) to file their claims.  This Court should follow the well-reasoned analysis in *Buonocore* and *Vine*, both of which followed the binding decision in *Phillips*, and dismiss plaintiffs' Complaint with prejudice.

C.    **The Statute of Limitations Contained in § 1605(f) of the FSIA Was Intended to Protect Defendant from Defending Stale Claims such as those Raised by Plaintiffs in this Case.**

Moreover, plaintiffs' argument that the filing of their Complaint nearly 34 years after the May 30, 1972 attack is contrary to the fundamental purpose and protections of a statute of limitations.  As the Supreme Court explained in *Burnett*:

> Statutes of limitations are primarily designed to assure fairness to defendants.  Such statutes "promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared.  The theory is that even if one has a just claim it is unjust not to put the adversary on notice to defend within the period of limitation and that the right to be free of stale claims in time comes to prevail over the right to prosecute them."  ***Moreover, the courts ought to be relieved of the burden of trying stale claims when a plaintiff has slept on his rights.***

*Burnett*, 380 U.S. at 428 (citation omitted) (emphasis added).  Specifically, statutes of limitation,

---

[7]  Plaintiffs state that the *Buonocore* and *Vine* are both on appeal and that *Vine* "is expected to be overturned."  Pl.'s Opp. at 56.  The appeal in *Buonocore* was dismissed for lack of subject matter jurisdiction on January 4, 2008. Further, there is no support for plaintiffs' conclusory statement that *Vine* will be overturned.  *Vine* is consistent with the law of the D.C. Circuit on equitable tolling and plaintiffs' expectation that it will be overturned is completely irrelevant to defendant's pending motion to dismiss in the case before this Court.

"protect defendants and the courts from having to deal with cases in which the search for truth

may be seriously impaired by the loss of evidence, whether by death or disappearance of

witnesses, fading memories, disappearance of documents, or otherwise." *United States v.*

*Kubrick*, 444 U.S. 111, 117 (1979).  Consistent with these principles, the D.C. Circuit in *Phillips*

has explained that statutes of limitations exist "to advance important interests in evidentiary

accuracy and repose."  *Phillips v. Heine*, 984 F.2d 489, 492 (D.C. Cir. 1993).

In the case before this Court, it is almost certain that documentary evidence crucial for

Libya to mount a defense to plaintiffs' claims has been lost, and that witnesses, to the extent that

any can be located and identified more than three decades after the attack, surely cannot be

counted upon to provide accurate testimony.  There can be no assurances that any evidence

presented in this case would be even remotely accurate so many years after the occurrence upon

which plaintiffs bring their Complaint.  At the very least, plaintiffs should have brought their

claims within a reasonable time after the passage of § 1605(a)(7).  Instead, plaintiffs slept on

their rights for an additional ten years before filing suit.  Plaintiffs' claims, by any measure, are

stale at this late date.  For the foregoing reasons, plaintiffs' contention that the filing of their

Complaint ***more than 34 years*** after the date of the alleged occurrence is timely is contrary to the

purpose and protections of the statute of limitations.

### 4. Plaintiffs' Claims Are Time-Barred even if the Doctrine of Equitable Tolling Suspended the Running of the Statute of Limitations.

Assuming, *arguendo*, that the statute of limitations is suspended during the period of time

in which Libya was immune from suit, plaintiffs' claims are nonetheless time-barred.  It is

undisputed that the personal injuries for which plaintiffs seek recovery occurred on May 30,

1972.  Significantly, Libya was not immune from suit on the date of the alleged occurrence.

FSIA, passed on October 21, 1976, confers immunity on foreign states and its political

subdivisions.  Prior to the enactment of FSIA, courts "consistently…deferred to the decisions of

the political branches – in particular, those of the Executive Branch – on whether to take

jurisdiction over actions against foreign sovereigns and their instrumentalities."  *Verlinden B.V. v.*

*Cent. Bank of Nigeria*, 461 U.S. 480, 486 (1983).  Moreover, the "the Executive Branch's

suggestion of immunity [was] conclusive and not subject to judicial inquiry."  *Ye v. Zemin*, 383

F.3d 620, 625 (7th Cir. 2004) (citation omitted).    In contrast, the passage of the FSIA

"transferred the responsibility for case-by-case application of [immunity] principles from the

Executive Branch to the Judicial Branch."  *United States v. Noriega*, 117 F.3d 1206, 1212 (11th

Cir. 1997).

        Plaintiffs would have this Court believe that Libya was immune from suit until the

enactment of § 1605(a)(7) of the FSIA on April 24, 1996.  Plaintiffs are incorrect.  It is

undisputed that the statutory provisions of immunity under the FSIA did not apply to plaintiffs'

claims at the time of the alleged attack, May 30, 1972 because the FSIA first provided immunity

to foreign sovereigns in 1976.  Therefore, Libya was not immune from suit at the time of the

attack.  Moreover, Libya was not immune from plaintiffs' claims from the time of the alleged

attack until the enactment of the FSIA, a period of more than four years.

        Plaintiffs' opposition ignores the fact that there was no impediment to plaintiffs bringing

their claims for at least a four year period prior to the enactment of the terrorism exception to the

FSIA.  Instead, plaintiffs vaguely argue that "Plaintiffs were unable to file suit within the statute

of limitations period, as sufficient documentation with which to link Libyan and Syrian

Defendants to the attack at Lod Airport did not arise within the first few years of the terrorist

attack."  Pl.'s Opp. at 61.  Plaintiffs would have this Court substitute the term "arose", which

appears in § 1605(a)(7), with the term "accrue" in calculating the statute of limitations for their

claims.  Plaintiffs' position is without merit.

In the case before this Court, it is undisputed that plaintiffs' claims arose on May 30,

1972.  Therefore, the 10-year statute of limitations began to run on the date of the alleged attack

as there was no impediment to plaintiffs bringing their claim at that time.  Applying the facts of

this case to plaintiffs' argument that the statute of limitations was suspended during the time

period that Libya was immune from suit, plaintiffs' Complaint was still filed beyond the 10-year

statute of limitations.  The clock ran for a period of more than four years from May 30, 1972

until the enactment of the FSIA on October 21, 1976.  So even if the statute of limitations was

indeed suspended during the time period in which Libya was immune from suit, as incorrectly

argued by the plaintiffs, then plaintiffs had less than six years after the enactment of § 1605(a)(7)

of the FSIA on April 24, 1996 to bring their claims, or until approximately January 2002.  As

mentioned above, plaintiffs filed their action in 2006.

     **5.**       **Plaintiffs' Claims Were not Filed within a Reasonable Time.**

As a means of last resort, plaintiffs argue that if the Court holds that the doctrine of

equitable tolling required them to file suit within a reasonable time after the removal of the

impediment to suit was removed on April 24, 1996, the filing of their suit nearly ten years later

was reasonable given the facts and circumstances of this case.

Plaintiffs argue that "sufficient documentation with which to link Libyan and Syrian

Defendants to the attack at Lod Airport did not arise within the first few years of the terrorist

attack."  Pl.'s Opp. at 61.  However, in the Complaint, plaintiffs admit that they had access to

information and facts allegedly supporting their claims as early as the mid-1970s when the

terrorist who participated in the attack was tried and convicted in Israel.  *See* Complaint ¶¶ 53,

54.  Moreover, exhibits referenced in plaintiffs' opposition and provided to defendants reveal that much of the information contained in plaintiffs' Complaint was available prior to 2002 as plaintiffs contend in their opposition.[8]  *See* Pl.'s Opp. at 62.  Assuming that the plaintiffs could not file this case until after § 1605(a)(7) was enacted, they could have done so shortly thereafter. Plaintiffs offer no credible explanation as to why they had to wait until April 21, 2006 – just 3 days before the 10-year anniversary of the enactment of § 1605(a)(7) – to file their Complaint. Simply stated, the filing of the Complaint in this matter 10 years after the enactment of § 1605(a)(7), and nearly 34 years after the cause of action arose, was not a reasonable time by any measure for plaintiffs to bring their claims.

Moreover, plaintiffs' argument that Libya's involvement and support of the terrorist groups which carried out the attack at Lod Airport was not known until 2002 is inconsistent with their argument that Libya was placed upon the list of State Sponsors of Terrorism, at least in part, as a result of the May 30, 1972 attack at Lod Airport.  Stated another way, how could the President have contemplated Libya's involvement in the May 30, 1972 attack at Lod Airport when it placed Libya on the list of State Sponsors of Terrorism in 1979 if Libya's alleged role in the attack was not revealed until 2002?  Plaintiffs simply cannot argue on one hand, that the attack on Lod Airport was part of a pattern of conduct which the President considered in placing Libya on the list of State Sponsors of Terrorism in 1979, and on the other hand, that plaintiffs could not have filed their claims until after 2002 when Libya's alleged material support for the attack was discovered.  The two positions are completely inconsistent with one another and should be rejected by this Court.

---

[8]  Plaintiffs' exhibits were not originally filed with plaintiffs' Opposition.  Plaintiffs' counsel has subsequently provided counsel for defendant with copies of the exhibits referenced in plaintiffs' Opposition.  However, defendants are unsure as to what exhibits, if any, have been provided to the Court.

III.    CONCLUSION

For the foregoing reasons, as well as those set forth in defendant's Motion to Dismiss, defendant, Great Socialist People's Libyan Arab Jamahiriya a/k/a Libya requests that the Court enter an Order dismissing all of plaintiffs' claims against defendant with prejudice.

Respectfully, Submitted,

**ECKERT SEAMANS CHERIN**
**& MELLOTT, LLC**

By:        _/s/ Mark A. Johnston_
        Thomas J. Whalen, Esq. (Bar No. 208512)
        Mark A. Johnston, Esq. (Bar No. 455764)
        1747 Pennsylvania Ave., N.W.,
        Twelfth Floor
        Washington, D.C. 20006
        (202) 659-6600


        _Of Counsel:_

        Wendy West Feinstein
        ECKERT SEAMANS CHERIN & MELLOTT, LLC
        U.S. Steel Tower, 44th Floor
        600 Grant Street
        Pittsburgh, PA 15219
        (412) 566-6000

        Attorneys for Great Socialist People's Libyan Arab
        Jamahiriya a/k/a Libya

Dated:  January 31, 2008

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a copy of the foregoing **Reply to Plaintiffs' Opposition to Defendant's Motion to Dismiss** was electronically filed and served, this 31st day of January, 2008, to:

> Joshua Ambush
> Terri Sneider
> The Law Offices of Joshua M. Ambush, LLC
> 1726 Reisterstown Road Suite 206
> Baltimore, MD 21208

> */s/ Mark A. Johnston*
> Mark A. Johnston