Case 1:06-cv-00734-RBW    Document 29    Filed 02/14/2008    Page 1 of 15

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOSE MANUEL VEGA FRANQUI, et al., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:06-CV-00734-RBW |
| ) | |
| SYRIAN ARAB REPUBLIC, et al., ) | |
| ) | |
| Defendants. ) | |
| ) | |

**PLAINTIFFS' RESPONSE TO LIBYAN DEFENDANT'S REPLY TO PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE COMPLAINT AND ACCOMPANYING MEMORANDUM OF LAW**

COME NOW, the Plaintiffs, by and through counsel, Joshua M. Ambush, of the Law Offices of Joshua M. Ambush, LLC, and hereby institute Plaintiffs' Response to Libyan Defendant's Reply to Plaintiff's Opposition to Defendant's Motion to Dismiss the Complaint and Accompanying Memorandum of Law, and in support thereof, respectfully state as follows:

1. The new amendment to the Federal Sovereign Immunities Act defeats Defendants' allegations that Plaintiffs' Complaint is stale or time-barred.

2. Plaintiffs have shown sufficient, conclusive facts for this court to establish jurisdiction over Libyan Defendants.

3. The exhibits for Plaintiff's Opposition to Defendant's Motion to Dismiss the Complaint and Accompanying Memorandum of Law ("original motion") were mailed to Defendants' Counsel, but due to technical difficulties, were inadvertently not e-filed with the original motion. Thus, the exhibits have been attached to this Response as Exhibit 1, and should be incorporated herein and in the original motion, as if fully set forth in this Response.

4. In support of this Response to Libyan Defendant's Reply to Plaintiffs' Opposition to Defendant's Motion to Dismiss the Complaint, Plaintiffs respectfully refer this Court to the attached Memorandum of Law and proposed Order.

Respectfully submitted,

*/s/ Joshua M. Ambush*

          Joshua M. Ambush (Md. Bar # 27025)
          Law Offices of Joshua M. Ambush, LLC
          Hilton Plaza
          1726 Reisterstown Road
          Suite 206
          Baltimore, Maryland 21208
          410-484-2070
          410-484-9330 (facsimile)
          joshua@ambushlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing Plaintiffs' Response to Libyan Defendant's Reply to Plaintiff's Opposition to Defendant's Motion to Dismiss the Complaint and Accompanying Memorandum of Law was delivered *via* electronic filing and first class mail postage prepaid, to Thomas J. Whalen, Esquire, Mark A. Johnston, Esquire, Eckert Seamans Cherin & Mellott, LLC, 1747 Pennsylvania Avenue, N.W., Twelfth Floor, Washington, D.C. 20006; Wendy West Feinstein, Eckert Seamans Cherin & Mellott, LLC, U.S. Steel Tower, 44th Floor, 600 Grant Street, Pittsburgh, PA 15219, this 14th day of February, 2008.

          */s/ Joshua M. Ambush*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOSE MANUEL VEGA FRANQUI, et al., )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>SYRIAN ARAB REPUBLIC, et al., )<br>)<br>Defendants. )<br>) | Case No. 1:06-CV-00734-RBW |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' RESPONSE
TO LIBYAN DEFENDANT'S REPLY TO PLAINTIFFS' OPPOSITION
TO DEFENDANT'S MOTION TO DISMISS THE COMPLAINT**

Plaintiffs, by and through counsel, Joshua M. Ambush, of the Law Offices of Joshua M. Ambush, LLC, respectfully submit this Memorandum of Law in Support of Plaintiffs' Response to Libyan Defendant's Reply to Plaintiff's Opposition to Defendant's Motion to Dismiss the Complaint.

## I. INTRODUCTION

Libyan Defendants' Reply to Plaintiff's Opposition to Defendant's Motion to Dismiss the Complaint repeats the same purportedly dispositive reasons to dismiss the complaint, as Libyan Defendants provided in its previous Motion to Dismiss: (1) this Court lacks jurisdiction because Libya is allegedly immune from suit under the Federal Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1601, *et seq.*; and (2) the Plaintiffs' claims in the Complaint, all of which allegedly arose in 1972, are stale and time barred.

Plaintiffs disagree, as Plaintiffs have shown sufficient, conclusive facts for this Court to establish jurisdiction over the Defendants. It is irrefutable that Plaintiffs' claims are no longer stale or time-barred. In fact, Defendants' claims in this regard are now moot.

3

## II. PLAINTIFFS' CLAIMS ARE NOT TIME-BARRED DUE TO THE NEW AMENDMENT OF THE FSIA, H.R. 4986, SECTION 1083

On January 29, President Bush signed into law the National Defense Authorization Act for Fiscal Year 2008, H.R. 4986. Included in H.R. 4986 was Section 1083, otherwise titled as the "Terrorism Exception to Immunity" amendment. *See* EXHIBIT 2. This law was based on legislation introduced in 2007, the JUSTICE FOR VICTIMS OF STATE SPONSORED TERRORISM ACT, S. 1944, 110th Cong. (2007), and was based on the 1996 Flatow Amendment to the FSIA.

The relevant portion of the "Terrorism Exception to Immunity" amendment, H.R. 4986, §1083, reads, in pertinent part:

> An action may be brought or maintained under this section if the action is commenced, or a related action was commenced under section 1605(a)(7) (before the date of the enactment of this section) … not later than **the latter of**—
>
> (1) 10 years after April 24, 1996; or
>
> (2) 10 years after the date on which the cause of action arose.

NATIONAL DEFENSE AUTHORIZATION ACT FOR FISCAL YEAR 2008, H.R. 4986, § 1083 (2008) (*emphasis added*). According to the legislative history, the purpose of §1083 was to ensure that:

> Any judgment or action brought under section 1605(a)(7) … after the effective date of such provisions relying on either of these provisions as creating a cause of action, which has been adversely affected on the grounds that either or both of these provisions fail to create a cause of action against the state, and which is still before the courts in any form … shall, on motion … be given effect as if it had originally been filed pursuant to section 1605A(d) …

JUSTICE FOR VICTIMS OF STATE SPONSORED TERRORISM ACT, S. 1944, 110th Cong. (2007).

Previously, the vague wording of the FSIA required a subjective interpretation by this Court. The prior version of the FSIA stated:

> No action shall be maintained under subsection (a)(7) unless the action is commenced not later than 10 years after the date on which the cause of action arose. All principles of equitable tolling, including the period during which the foreign state was immune from suit, shall apply in calculating this limitation period.

28 U.S.C. §1605(f). Defendants have disputed the fact that equitable tolling applied to the statute of limitations period. *See* Libya's Reply to Plaintiffs' Opposition to Defendants Motion to Dismiss the Complaint at 1 (hereinafter referred to as "Libya's Reply" or "Defendants' Reply").

Previously, Plaintiffs argued that Congress intended the ten-year statutory period for claims under the FSIA's terrorism exception to begin to run only upon the waiver of sovereign immunity. *See* Plaintiff's Motion in Opposition to Libyan Defendant's Motion to Dismiss and Accompanying Memorandum of Points and Authorities at 53 (hereinafter referred to as "Plaintiffs' Memorandum of Points and Authorities"). Thus, Plaintiffs argued that the statute of limitations should be tolled from between May 30, 1972, until April 24, 2006, when the Defendants were stripped of their sovereign immunity. *Id.* at 63. Accordingly, Plaintiffs argued that they filed their Complaint after a reasonable time, but still within the 10-year statute of limitations period. *Id.* at 62-63.

Libyan Defendants disagreed, and devoted over 13 pages to their argument that (a) Plaintiffs' cause of action arose on May 30, 1972; (b) equitable tolling did not suspend the running of the statute of limitations; (c) the FSIA statute of limitations was intended to protect defendants from litigating stale claims arising 34 years later; and (c) Plaintiffs' claims were time-barred even if equitable tolling suspended the statute of limitations, because Plaintiffs' claims were not filed within a reasonable time-frame. *See* Libya's Reply at 9-21.

Due to the enactment of H.R. 4986, §1083, Defendants' arguments on this matter are now moot. The clear language of §1083, which amends the FSIA, establishes that any action brought during the time-frame listed in §1083 is not considered stale or time-barred, despite Defendants' arguments to the contrary. *See* Libya's Reply at 9-21.

Section 1083 provides that an action is considered timely filed as long as it is filed by April 24, 2006.[1] Notwithstanding Plaintiffs' claims that the immunity period should be removed from the statute of limitations calculation, the vague principles of equitable tolling outlined in the FSIA are no longer implicated under §1083. Thus, the adverse decisions relied upon by Defendants, which applied equitable tolling principles to statute of limitations arguments, are now inapplicable to the case at bar. *See, e.g., Buonocore v. Great Socialists People's Libyan Arab Jamahiriya,* 2007 U.S. Dist. LEXIS 49031 (D.D.C. 2007); *Vine v. Republic of Iraq*, 459 F.Supp. 2d 10 (D.D.C. 2006); *Sandvik v. United States*, 177 F.3d 1269 (11th Cir.1999); *Phillips v. Heine*, 984 F.2d 489 (D.C. Cir.1993); *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 453 (7th Cir. 1990) (Posner, J.).

As Plaintiffs timely filed their action on April 21, 2006, inside of ten years from April 24, 1996, their claims are neither stale nor time-barred, and must "be given effect as if [originally] filed pursuant to section 1605A(d)." *Id.* Moreover, Defendants claims that Plaintiffs had no impediment toward bringing their claims for at least a four year period prior to the enactment of the terrorism exception to the FSIA, *see* Libya's Reply at 19, are now irrelevant.

Section 1083 permits Plaintiffs' filing at any time prior to April 24, 2006. Even if the cause of action arose, as Defendants claim, four years prior to the terrorism exception to the FSIA, Plaintiffs could still file at any time prior to April 24, 2006.

---

[1] The latter of 10 years after the date on which the cause of action arose (assuming the cause of action arose either on May 30, 1972 or on April 24, 1996, would render the amended dates to May 30, 1982, or April 24, 2006), or 10 years after April 24, 1996 (i.e., April 24, 2006), is clearly 10 years after April 24, 1996.

Therefore, assuming that the cause of action arose *either,* as Defendants argue, on May 30, 1972, or, as Plaintiffs would have it, on April 24, 1996, and notwithstanding the fact that Defendants timely filed their complaint on April 21, 2006, Plaintiffs' filing must still be considered timely under the "Terrorism Exception to Immunity" amendment, §1083.

### III.  LIBYAN DEFENDANTS ARE NOT IMMUNE FROM SUIT UNDER THE FSIA

    a. **This Court Has Jurisdiction Over Libyan Defendants Because Libya Was Added To The State Sponsors Of Terrorism List As A Result Of The Lod Airport Massacre**

Libyan Defendants dismiss the significant fact that Plaintiffs "devoted nearly 30 pages of their opposition to the issue of jurisdiction." *See* Libya's Reply at 1.  Defendants repeatedly provided detailed and factual evidence to establish that Libyan Defendants were added to the State Sponsored Terrorism list as a result of the Lod Airport Massacre.  This Court should not dismiss Plaintiffs' factual showings out of hand, as Defendants have done here.

As Plaintiffs stated previously, "the complaint is construed liberally in the plaintiff's favor, and [the court] will grant plaintiffs the benefit of all inferences that can be derived from the facts alleged." *Kowal v. MCI Communications Corp.,* 16 F.3d 1271, 1276 (D.C.Cir.1994). Accordingly, "[t]he court must treat the plaintiffs' factual allegations – including mixed questions of law and fact – as true and draw all reasonable inferences in the plaintiffs' favor." *Coles v. Harvey*, 2007 WL 63666 (D.D.C.2007) (citing *Macharia v. United States*, 334 F.3d 61, 64, 67 (D.C.Cir.2003); *Holy Land Found. For Relief and Dev. Ashcroft*, 333 F.3d 156, 165 (D.C.Cir.2003).

Although Plaintiffs do not need to establish all of the precise facts on which they base their claims, Plaintiffs have sufficiently shown enough facts to survive Defendants' Motion to Dismiss the Complaint. *Price v. Socialist People's Libyan Arab Jamahiriya*, 294 F.3d 82, 93

(D.C.Cir.2002). Despite any challenges by the Defendant in Defendants' Reply, regarding the legal sufficiency of the Plaintiff's jurisdictional allegations, this Court should accept Plaintiffs' factual allegations as true and determine whether such facts bring the case within any of the exceptions to foreign-state immunity invoked by Plaintiffs. *Foremost-McKesson, Inc. v. Islamic Republic of Iran*, 905 F.2d 438, 443 (D.C.Cir.1990).

As Plaintiffs previously stated, Plaintiffs *have* demonstrated that Libya engaged in a broad policy of support of international terrorism, occurring long before the incident at Lod Airport, and continuing through the date Libya was added to the state-sponsored terrorism list. The evidence conclusively shows that both Libya and Syria provided "material support or resources" to the PLO, PFLP, and their co-conspirators, the JRA, and these terrorist groups were the perpetrators of the heinous acts of terrorism at Lod Airport. Libya and Syria were later designated to the list under the FSIA's provision of "unless later so designated as a result of such act." *Id.*

Plaintiffs argue that these facts conclusively establish that Libyan Defendants were added to the State Sponsored Terrorism list as a result of the Lod Airport Massacre. Thus, this court should find that it has jurisdiction over the Defendants.

    **b. This Court Has Jurisdiction Over Libyan Defendants Despite Any Misinterpretation Of The Statute By Libyan Defendants**

Libyan Defendants continue to misconstrue the "plain" language of § 1605(a)(7), distinguishing between Libyan Defendants' incorrect usage: "as a result of **the** act," *see* Libya's Reply at 3-4 (emphasis added), instead of the proper phrasing which requires that the foreign state must have been designated a state-sponsor of terrorism at the time the act occurred, unless later so designated as a result of **such** act. *See*, U.S.C. § 1605 (a)(7)(A) and (B) (emphasis added).

8

Plaintiffs incorporate by reference all arguments previously made in its Opposition to Defendant's Motion to Dismiss the Complaint. As Plaintiffs stated previously, Defendants argue that the state-sponsored terrorism exception only applies if "the foreign state was designated a state-sponsor of terrorism at the time of the [enactment of the Export Administration] Act [of 1979 or as a result of *such [specific]* act [of terrorism]. In 1972, at the time this cause of action arose, Libya was not impliedly designated a state-sponsor of terrorism. Therefore, Defendants argue that the "court lacks subject matter jurisdiction over the Plaintiff's case… and the sovereign has immunity from trial." Defendant's Motion to Dismiss at 5.

Libyan Defendants correctly stated in their Reply that "[i]n interpreting the FSIA, we look to the plain meaning of the language employed by Congress. When determining the plain meaning of language, we may consult dictionary definitions." *Af-Cap Inc. v. Chevron Overseas (Congo) Ltd.,* 475 F.3d 1080, 1087-88 (9th Cir.2007). Words in a statute should have their "ordinary, contemporary, common meaning, absent an indication Congress intended them to bear some different import." *Williams v. Taylor,* 529 U.S. 420, 431 (2000). Thus, Defendants misconstrue the plain language of the FSIA, incorrectly reading it as "**the** act" instead of "**such** act," an important distinction. *See* Libya's Reply at 3-4 (emphasis added).

According to basic principles of the English lexicon, the word "the," as used by Defendants,' is a limiting term. "The" limits the usage of the clause following "the" to the singular. For instance, "*the* baseball." Baseball is singular. In contrast, the word "such," as used in the FSIA, is an adjective. *See* Dictionary.com, *Definitions: Such* (2008), *available at* http://dictionary.reference.com/browse/such. "Such" is defined as "[i]dentical with, being the same as what has been mentioned. Alike, similar, of the like kind." BLACK'S LAW DICTIONARY

9

1432 (6th ed. 1991). Usage of "such" enables a user to broadly describe multiple events in the plural form. For instance, "like *such* act."

Defendant's interpretation of the term "as a result of **the** act," Libya's Reply at 3-4 (emphasis added), creates the false impression that Plaintiff's claims are barred absent an express written statement to the effect that Libya was designated a state-sponsor of terrorism for directly perpetrating the Lod Airport massacre. Plaintiffs urge the court to reject the notion that state sponsors of terrorism were designated on the basis of reference to a specific "list" that included some, but excluded other terror attacks, and a foreign state's sovereign immunity, or loss thereof, was dependant upon whether the terror attack in question was or was not "on the list".

  **c. The R*oeder* Decision is Inapplicable To The Case At Bar. Regardless, *Roeder* Has Been Effectively Overturned by § 1083.**

Plaintiffs incorporate by reference all arguments previously made in its Opposition to Defendant's Motion to Dismiss the Complaint. As Plaintiffs stated previously, the Roeder decision is inapplicable to the case *sub judice*. The *Roeder* decision was a narrow interpretation of specific legislation enacted by Congress, which directed U.S. courts to decline to hear such cases, and read in pertinent part:

> if the foreign state was not designated as a state sponsor of terrorism … at the time the act occurred, unless later so designated as a result of such act *or the act is related to Case Number 1:00CV03110 (ESG) in the United States District Court for the District of Columbia*.

28 U.S.C.A. § 1605(a)(7)(A) (emphasis added).

According to the *Roeder* court, Plaintiffs in *Roeder* failed to meet either of the two criteria established in the statute. Iran was not **designated a state-sponsor of terrorism at the time** of the Iranian hostage crisis, and Iran was not **later so designated as a result** of the Iranian hostage crisis. 28 U.S.C. § 1605(a)(7)(A) and (B) (emphasis added).

10

Therefore, as Judge Sullivan stated in *Roeder*:

> Neither the Anti-Terrorism Act, the Flatow Amendment, Subsection 626(c), or Section 208 contain the type of express statutory mandate sufficient to abrogate an international executive agreement. Furthermore, … the legislative histories of these statutes contain no clear statements of Congressional intent to specifically abrogate the Algiers Accords. Therefore, …[u]nless and until Congress expresses its clear intent to overturn the provisions of a binding agreement between two nations that has been in effect for over twenty years, this Court can not interpret these statutes to abrogate that agreement.

*Roeder v. Islamic Republic of Iran*, 195 F.Supp.2d 140 (D.D.C.2002). Absent a clear intent by Congress to overturn the *Algiers Accords,* the *Roeder* Court refused to grant jurisdiction to Plaintiffs over Iranian Defendants.

In stark contrast to the situation regarding Iran, no such limitations were indicated when Libya was designated one of the original state sponsors of terrorism. In point of fact, Libya was not designated a state-sponsor of terrorism for its actions subsequent to the Lod Airport Massacre. The statutory language plainly and clearly indicates Congressional intent that any material sponsorship of terrorism by Libya, which may have proximately caused terrorist acts such as the Lod Airport massacre, which were later grounds for Libya to be placed on the state sponsored terrorism list, is sufficient to grant this court subject matter jurisdiction.

However, Congress, in passing H.R. 4986, § 1083, struck the applicable portion of the FSIA which directed U.S. courts to decline to hear such cases. *See* NATIONAL DEFENSE AUTHORIZATION ACT FOR FISCAL YEAR 2008, H.R. 4986, § 1083 (2008) (stating that "[s]ection 1605 of title 28, United States Code, is amended … in subsection (a) ... by striking paragraph (7)"). Now, under §1083, U.S. Courts have jurisdiction to hear claims prosecuted against Iran by victims of the 1979 Iran Hostage Crisis. Clearly, Congress intended for *Roeder* to effectively be

overturned by H.R. 4986. Therefore, *Roeder* cannot be considered for purposes of adjudicating the matter at bar.

### d. The President Contemplated Libya's Involvement In The Lod Airport Attack When the U.S. Placed Libya On The List of State Sponsors Of Terrorism In 1979

Libyan Defendants question "how could the President have contemplated Libya's involvement in the May 30, 1972 attack at Lod Airport when it placed Libya on the list of State Sponsors of Terrorism in 1979 if Libya's alleged role in the attack was not revealed until 2002?" *See* Libya's Reply at 21. Libyan Defendants claim that Plaintiffs could not argue "that the attack on Lod Airport was part of a pattern of conduct which the president considered in placing Libya on the list of State Sponsors of Terrorism in 1979, [but] on the other hand, that plaintiffs could not have filed their claims until after 2002 when Libya's alleged material support for the attack was discovered." *Id.*

However, Defendants are mistaken. These two propositions are not "completely inconsistent with one another." *Id.* In fact, the two statements propounded by Defendants are quite distinct from each another. As Defendants previously stated in its Memorandum,

> Many documents in this particular case still remain classified, and the full extent of Libyan and Syrian Defendants involvement in Lod remains to be seen. Indeed, Plaintiffs were only able to secure the majority of the classified documents, as referenced in this Motion, in 2002 or later, as they were classified and unavailable to the public. Thus, with the current resources available, only now are Plaintiffs sufficiently able to demonstrate the findings they have made in this Motion … These now-declassified documents have enabled Plaintiffs to bring this lawsuit, *at a reasonable time.*

Plaintiffs' Memorandum of Points and Authorities at 62.

The historical facts, contrary to Libyan Defendant's assertions, are not at odds with the fact that the President considered the Lod Airport attack as part of a pattern of conduct which the

12

president considered in placing Libya on the list of State Sponsors of Terrorism in 1979. As Plaintiffs established throughout the numerous exhibits in its Memorandum of Points and Authorities, the information needed to assess whether to add Libyan Defendants to the list of State Sponsors of Terrorism in 1979 was readily available to the CIA, FBI, and numerous other government agencies, including the President of the United States.

Defendants fail to recognize that the mere fact that this information was confidential and classified in 1979 effectively precluded *Plaintiffs and Plaintiffs' Counsel* (rather than the President) from securing access to these documents until the documents became declassified. Thus, in response to Libyan Defendants' query; "how could the President have contemplated Libya's involvement in the May 30, 1972 attack at Lod Airport when it placed Libya on the list of State Sponsors of Terrorism in 1979 if Libya's alleged role in the attack was not revealed until 2002?", Libya's alleged role in the attack was not revealed until 2002, to public sources.

Upon securing this now-declassified information, Plaintiffs were able to "devot[e] nearly 30 pages of their opposition," *see* Libya's Reply to Plaintiffs' Opposition to Defendants Motion to Dismiss the Complaint at 1, to conclusively establish that the President contemplated the Lod Airport massacre as part of a pattern of conduct which the president considered in placing Libya on the list of State Sponsors of Terrorism in 1979.

## IV.  CONCLUSION

WHEREFORE for the foregoing reasons, as well as those set forth in Plaintiffs' Opposition to Defendant's Motion to Dismiss the Complaint, Plaintiffs hereby request that this Court deny Libyan Defendant's Motion to Dismiss the Complaint.

Respectfully submitted,

*/s/ Joshua M. Ambush*
_____

13

> Joshua M. Ambush (Md. Bar # 27025)
> Law Offices of Joshua M. Ambush, LLC
> Hilton Plaza
> 1726 Reisterstown Road
> Suite 206
> Baltimore, Maryland 21208
> 410-484-2070
> 410-484-9330 (facsimile)
> joshua@ambushlaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that a true and accurate copy of the foregoing Memorandum of Law in Support of Plaintiffs' Response to Libyan Defendant's Reply to Plaintiff's Opposition to Defendant's Motion to Dismiss the Complaint was delivered *via* electronic filing and first class mail postage prepaid, to Thomas J. Whalen, Esquire, Mark A. Johnston, Esquire, Eckert Seamans Cherin & Mellott, LLC, 1747 Pennsylvania Avenue, N.W., Twelfth Floor, Washington, D.C. 20006; Wendy West Feinstein, Eckert Seamans Cherin & Mellott, LLC, U.S. Steel Tower, 44th Floor, 600 Grant Street, Pittsburgh, PA 15219, this 14th day of February, 2008.

> */s/ Joshua M. Ambush*
> _____

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOSE MANUEL VEGA FRANQUI, et al., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:06-CV-00734-RBW |
| ) | |
| SYRIAN ARAB REPUBLIC, et al., ) | |
| ) | |
| Defendants. ) | |

**<u>ORDER</u>**

UPON CONSIDERATION of the foregoing Plaintiffs' Response to Libyan Defendant's Reply to Plaintiff's Opposition to Defendant's Motion to Dismiss the Complaint and Accompanying Memorandum of Law, it is this _____ day of _____, 2008, by the U.S. District Court for the District of Columbia,

ORDERED, that the Defendant's Motion to Dismiss the Complaint is DENIED.

_____
Judge Reggie B. Walton
U.S. District Court for the District of Columbia