# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Reverend JOSÉ MANUEL VEGA FRANQUI, | * |
| Individually and as Administrator of the Estate of | * |
| VASTHI ZILA MORALES DE VEGA, deceased | * |
| | *    Civil Action No: 1:06-cv-00374 |
| VASTHI NOEMI VEGA MORALES | *    (RBW) |
| | * |
| DAMARIS ESTER VEGA MORALES | * |
| | * |
| ROSA MARIA GUZMAN ROSADO, | * |
| Individually and as Administrator of the Estate of | * |
| CARMEN ENEIDA GUZMAN ROSADO a/k/a/ | * |
| CARMEN E. GUZMAN DE PADILLA | * |
| | * |
| CARLOS GUZMAN ROSADO | * |
| | * |
| MARIANO GUZMAN ROSADO | * |
| | * |
| TOMAS GUZMAN ROSADO | * |
| | * |
| ROSA MARIA ROSADO | * |
| | * |
| NOEMI RODRIGUEZ ROBLES, | * |
| Individually and as Administrator of the Estate of | * |
| ANTONIO RODRIGUEZ MORALES | * |
| | * |
| ANGEL M. RODRIGUEZ ROBLES | * |
| | * |
| RUTH D. RODRIGUEZ ROBLES | * |
| | * |
| ELIEZER RODRIGUEZ ROBLES | * |
| | * |
| MARIA M. RODRIGUEZ ROBLES | * |
| | * |
| VICTOR PADILLA ORTIZ, | * |
| Individually and as Administrator of the Estate of | * |
| JUAN PADILLA ORTIZ | * |
| | * |
| PEDRO PADILLA ORTIZ | * |
| | * |
| ELIZABETH PADILLA ORTIZ | * |
| | * |
| AIDA PADILLA ORTIZ | * |

|                                                                        |   |
|------------------------------------------------------------------------|---|
| LAURA PADILLA ORTIZ                                                     | * |
|                                                                        | * |
|                                                                        | * |
| SARAH PADILLA ORTIZ                                                     | * |
|                                                                        | * |
| ZELIDITH PADILLA ORTIZ                                                  | * |
|                                                                        | * |
| NELSON ANDRES PADILLA ORTIZ                                             | * |
|                                                                        | * |
| EFRAIN BERGANZO CRUZ,                                                   | * |
| Individually and as Administrator of the Estate of                     | * |
| ANGEL BERGANZO COLON                                                    | * |
|                                                                        | * |
| ISRAEL P. FISCHEL                                                       | * |
|                                                                        | * |
| ROSA VASQUEZ                                                            | * |
|                                                                        | * |
| JESÚS CANTRES MELENDEZ                                                  | * |
|                                                                        | * |
| RUBEN VIVOS RUIZ                                                        | * |
|                                                                        | * |

Plaintiffs

v.

The SYRIAN ARAB REPUBLIC
Damascus, Syria

ESTATE OF HAFEZ AL-ASSAD, PRESIDENT
Syrian Arab Republic
Damascus, Syria

SYRIAN AIR FORCE INTELLIGENCE
DIRECTORATE ("SAFID")
Kafar Susa Roundabout
Damascus, Syria

GENERAL MUHAMMED AL KHOULI,
Former Chief
Syrian Air Force Intelligence Directorate
Kafar Susa Roundabout
Damascus, Syria

SYRIAN ARAB AIRLINES D/B/A/ SYRIANAIR
P.O. Box 417
Youssef Al-Azmeh Square
Damascus, Syria

2

|  |  | * |
|---|---|---|
| PALESTINE LIBERATION ORGANIZATION | | * |
| ("PLO") and its successors-in-interest | | * |
| | | * |
| POPULAR FRONT FOR THE LIBERATION OF | | * |
| PALESTINE ("PFLP") | | * |
| | | * |
| THE JAPANESE RED ARMY ("JRA") | | * |
| | | * |
| GREAT SOCIALIST PEOPLE'S LIBYAN | | * |
| ARAB JAMAHIRIYA a/k/a LIBYA | | * |
| Tripoli, Libya | | * |
| | | * |
| COLONEL MUAMMAR QADHAFI | | * |
| Supreme Leader of the Great Socialist | | * |
| People's Libyan Arab Jamahiriya ("LIBYA") | | * |
| Tripoli, Libya | | * |
| | | * |
| LIBYAN EXTERNAL SECURITY | | * |
| ORGANIZATION ("ESO") | | * |
| a/k/a JAMAHIRIYA SECURITY | | * |
| ORGANIZATION | | * |
| | | * |
| | | * |
| and | | * |

John Does 1-99

Defendants

## **FIRST AMENDED COMPLAINT**

Plaintiffs, by counsel, file this First Amended Complaint against Defendants seeking damages arising out of the May 30, 1972 terrorist attack at Lod Airport, near Tel Aviv, Israel.[1]  Plaintiffs Rev. José Vega Franqui, Rosa Maria Guzman Rosado, Noemi Rodriguez Robles, Victor Padilla Ortiz, and Efrain Berganzo Cruz as individuals and as Executors for Estates as listed in the caption of this First Amended Complaint; Plaintiffs Vasthi Noemi Vega Morales, Damaris Esther Vega Morales, as daughters of decedent

---

[1] Now called Ben Gurion International Airport

3

Vasthi Zila Morales de Vega; Carlos Guzman Rosado, Mariano Guzman Rosado, Tomas Guzman Rosado, Rosa Maria Guzman Rosado as siblings of decedent Carmen Eneida Guzman Rosado; Plaintiffs Angel M. Rodriguez Robles, Eliezer Rodriguez Robles, Ruth D. Rodriguez Robles, Maria M. Rodriguez Robles, and Noemi Rodriguez Robles, as children of decedent Antonio Rodriguez Morales; Plaintiffs Victor Padilla Ortiz, Pedro Padilla Ortiz, Elizabeth Padilla Ortiz, Aida Padilla Ortiz, Laura Padilla Ortiz, Sarah Padilla Ortiz, Zelideth Padilla Ortiz and Nelson Andres Padilla Ortiz as siblings of decedent Juan Padilla Ortiz; Efrain Berganzo Cruz as son of decedent Angel Berganzo Colon; Israel P. Fischel, Rosa Vasquez, José Vega Franqui, Ruben Vivas Ruiz, and Jesús Cantres Melendez as injured claimants, seek judgment against Syrian Arab Republic, Estate of Hafez Al-Assad, Syrian Air Force Intelligence Directorate, General Muhammed Al Khouli, Syrian Arab Airlines, the PLO, the PFLP, the JRA, Libya, Muammar Qadhafi, the Libyan External Security Organization, and John Does 1-99, jointly and severally, and in support of the Complaint, Plaintiffs allege:

## JURISDICTION AND VENUE

1.    This court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1330 (a); 1331; and 1332 (a)(2); and 1605(A)(a)(1).

2.    Pendant jurisdiction arises under the common and statutory laws, as well as the District of Columbia.

3.    Defendants The Syrian Arab Republic, and Great Socialist People's Libyan Arab Jamahiriya a/k/a Libya, are subject to suit in U.S. Federal Courts pursuant to the Foreign Sovereign Immunities Act, ("FSIA")  as amended, 28 U.S.C. § 1605(A), and

related statutes including, but not limited to, 28 U.S.C. § 1605(A)and related provisions. Defendants the Estate of Hafez Al-Assad, Syrian Air Force Intelligence Directorate ("SAFID"), General Muhammed Al Khouli, Syrian Arab Airlines D/B/A/ Syrianair, Palestinian Liberation Organization ("PLO"), Popular Front for the Liberation of Palestine ("PELP"), Libyan Colonel Muammar Qadhafi, Libyan External Security Organization ("ESO") a/k/a Jamahiriya Security Organization, and John Does 1-99 are also subject to suit in the courts of the United States pursuant to FSIA, 28 U.S.C. § 1605(A) and related provisions, as agents, instrumentalities, or officials and employees of Libya.

4.    Actions for wrongful death, loss of consortium, intentional infliction of emotional distress, personal injury, and related torts committed by foreign state sponsors of terrorism through their officials, employees, and agents fall within the meaning of 28 U.S.C. § l605 (A)(a) and (c) and U.S.C. § 1605 Note[2]. Additionally, under 28 U.S.C. § 1606, foreign states and their instrumentalities may be held liable for such wrongs "in the same manner and to the same extent as a private individual under like circumstances…"

5.    Venue is proper in this District Court pursuant to 28 U.S.C. §§ 1391 (d) and (f)(4).

## THE PARTIES

6.    Plaintiff, Reverend José' Vega Franqui, a resident and citizen of Puerto Rico, is the spouse of decedent-Plaintiff Vasthi N. Vega Morales, who was tortured and who

---

[2] Defendants in this matter satisfy the requirements to bring such an action. As agencies or instrumentalities of a foreign sovereign or non-resident aliens, defendants have been designated foreign state sponsors of terrorism and the acts complained of are among those described in Section l605(a)(7) of Title 28 of the U.S.C.

died as a result of the May 30, 1972 terrorist attack by Defendants at Lod Airport. Reverend Franqui was also tortured and sustained injuries. At the time of her death, Vasthi Morales was also a resident and citizen of Puerto Rico. Reverend Franqui represents his wife as Executor of his late wife's estate, in his capacity as her spouse, and as an individual.

7.    Plaintiffs Damaris E. Vega Morales and Vasthi Noemi Vega Morales, citizens of Puerto Rico, are the daughters of decedent-Plaintiff Vasthi Zila Morales de Vega.    Damaris E. Vega Morales is a resident of the State of Illinois and was, at all relevant times, a citizen of Puerto Rico. Vasthi Noemi Vega Morales is and was, at all relevant times, a resident of Puerto Rico.

8.    Plaintiff, Rosa Maria Guzman Rosado, a resident of and citizen of Puerto Rico, is the sister of decedent-Plaintiff Carmen Eneida Guzman Rosado, who was tortured and who died as a result of the May 30, 1972 terrorist attack by Defendants at Lod Airport. At the time of her death, decedent Carmen Eneida Guzman Rosado was a resident and citizen of Puerto Rico. Rosa Maria Guzman Rosado represents her late sister as Executor of his estate, in her capacity as her sister, and as an individual.

9.    Plaintiffs Carlos Guzman Rosado, Mariano Guzman Rosado, Tomas Guzman Rosado, Rosa Maria Guzman Rosado, citizens of Puerto Rico, are the surviving siblings of decedent Plaintiff Rosa Maria Guzman Rosado.

10.    Plaintiff, Noemi Rodriguez Robles, a resident of and citizen of Puerto Rico, is the sister of decedent-Plaintiff Antonio Rodriguez Morales, who was tortured and who died as a result of the May 30, 1972 terrorist attack by Defendants at Lod Airport. At the time of his death, decedent Antonio Rodriguez Morales was a resident and citizen of

Puerto Rico. Noemi Rodriguez Robles represents her late brother as Executor of his estate, in her capacity as his sister, and as an individual.

11. Plaintiffs Angel M. Rodriguez Robles, Eliezer Rodiguez Robles, Ruth D. Rodriguez Robles, Maria M. Rodriguez Robles, and Noemi Rodriguez Robles, citizens of Puerto Rico, are the surviving children of decedent Plaintiff Antonio Rodriguez Morales.

12. Plaintiff, Victor Padilla Ortiz, a resident of and citizen of Puerto Rico, is the brother of decedent-Plaintiff Juan Padilla Ortiz, who was tortured and who died as a result of the May 30, 1972 terrorist attack by Defendants at Lod Airport. At the time of his death, decedent Juan Padilla Ortiz was a resident and citizen of Puerto Rico. Victor Padilla Ortiz represents his late brother as Executor of his estate, in his capacity as his brother, and as an individual.

13. Plaintiffs Pedro Padilla Ortiz, Victor Padilla Ortiz, Elizabeth Padilla Ortiz, Laura Padilla Ortiz, Sarah Padilla Ortiz, Zelideth Padilla Ortiz, Nelson Andres Padilla Ortiz, citizens of Puerto Rico and Aida Padilla Ortiz, a citizen of Hollywood Florida, are the surviving siblings of decedent-Plaintiff Juan Padilla Ortiz.

14. Plaintiff, Efrain Berganzo Cruz, a resident of and citizen of Puerto Rico, is the brother of decedent-Plaintiff Angel Berganzo Colon, who was tortured and who died as a result of the May 30, 1972 terrorist attack by Defendants at Lod Airport. At the time of his death, decedent-Plaintiff Angel Berganzo Colon was a resident and citizen of Puerto Rico. Efrain Berganzo Cruz represents his late brother as Executor of his estate, in his capacity as his brother, and as an individual.

15. Plaintiff Israel P. Fischel was injured in the May 30, 1972 terrorist attack by Defendants at Lod Airport.  At the time of his injury, he was a resident of the State of New York.  He is currently a resident of the state of Connecticut.

16. Plaintiffs Rosa Vaszquez, José Vega Franqui, Ruben Vivas Ruiz, and Jesús Cantres Melendez were injured in the May 30, 1972 terrorist attack by Defendants at Lod Airport.  Rosa Vaszquez, José Vega Franqui, Ruben Vivas Ruiz, and Jesús Cantres Melendez were residents of Puerto Rico at all relevant times.

17. Defendants the Syrian Arab Republic (hereinafter also referred to as "Syria") and the Great Socialist People's Libyan Arab Jamahiriya (hereinafter also referred to as "Libya") are foreign states designated "state sponsors of terrorism" within the meaning of the Export Administration Act of 1979 (50 U.S.C. App. § 2405(j)) and the Foreign Assistance Act of 1961 (22 U.S.C. § 2371(b)) since January 19, 1984, as the term "state sponsors of terrorism" is defined under 28 U.S.C. § 1605(A) and 28 U.S.C. § 1605 Note. Operating through their agencies, instrumentalities, officials, officers, agents and employees acting within the scope of their employment or duties, Syria and Libya regularly provided material support and resources to international terrorist organizations, such as the Japanese Red Army (hereinafter also referred to as the "JRA"), the Palestine Liberation Organization (hereinafter referred to as "the PLO"), and the Popular Front for the Liberation of Palestine (hereinafter also referred to as the "PFLP") within the meaning of 28 U.S.C. § 1605(A)(a)(1) and § 1605 Note, in the form of  funding, direction, training, military intelligence, personnel, forged passports, personnel and diplomatic support, so that these terrorist agents of Libya and Syria could carry out their sovereigns' policy of international terrorism, including the  Lod Airport attack of  May

30, 1972, which proximately caused the injuries and deaths of Plaintiffs, set out more fully below.

18. Defendant the Estate of Hafez al-Assad is the legal entity responsible for the acts of Hafez al-Assad, now deceased, who provided material support and resources to terrorist organizations responsible for executing the May 30, 1972 attack at Lod Airport. Hafez al-Assad, as agent for Syria within the meaning of 28 U.S.C. § 1605(A)(a) and (c) and 28 U.S.C. § 1605 Note, performed acts within the scope of his agency that caused the abduction, false arrest, hostage taking, torture, assault, battery, extrajudicial killing, wrongful death and emotional distress described below.

19. Defendant Syrian Air Force Intelligence Directorate (hereinafter "SAFID") is the intelligence service that sponsored, on Syria's behalf, the May 30, 1972 terrorist attack at Lod Airport by providing material support to terrorist groups like Defendants the JRA, PLO, and PFLP. The Syrian Air Force Intelligence Directorate, acting as agent for Syria within the meaning of 28 U.S.C. § 1605(A)(a) and (c) and 28 U.S.C. § 1605 Note, performed acts within the scope of its agency that caused the abduction, false arrest, hostage taking, torture, assault, battery, extrajudicial killing, wrongful death and emotional distress described below.

20. Defendant Muhammed al Khouli was the chief of the Syrian Air Force Intelligence Directorate at the time of the May 30, 1972 terrorist attack at Lod Airport. Defendant Muhammed al Khouli acted within the scope of his office to coordinate, direct and provide material support to the JRA, the PLO and PFLP in the May 30, 1972 terrorist attack at Lod Airport. Defendant Muhammed al Khouli, acting as agent for Syria within the meaning of 28 U.S.C. § 1605(A)(a) and (c) and 28 U.S.C. § 1605 Note, performed

acts within the scope of its agency that caused the abduction, false arrest, hostage taking, torture, assault, battery, extrajudicial killing, wrongful death and emotional distress described below.

21. Defendant Syrian Arab Airlines, d/b/a/ SyrianAir was founded in 1961. Defendant Syrian Arab Airlines is a commercial airline with international flights to over 30 airports in North Africa, the Middle East, Europe and Asia, and domestic flights toAleppo, Damascus, Dayr az-Zawr, Qamishli and Latakia. Syrian Arab Airlines was used by Defendant Muhammed al Khouli and the Syrian Air Force Directorate to execute the terrorist attack at Lod Airport. Defendant Syrian Arab Airlines, a commercial entity acting as agent for Syria within the meaning of 28 U.S.C. § 1605(A)(a) and (c) and 28 U.S.C. § 1605 Note, performed acts within the scope of its agency that caused the abduction, false arrest, hostage taking, torture, assault, battery, extrajudicial killing, wrongful death and emotional distress described below.

22. Defendant Palestine Liberation Organization ("PLO") is a terrorist group which espouses, promotes and supports the terrorism attacks, a legitimate vehicle through which to achieve its political goals. The PLO was an umbrella organization for several terrorist subgroups and factions that included the PFLP, and was as an active participant in the Lod Airport terrorist attack with co-Defendants JRA and PFLP. The PLO provided planning and material aid to the JRA that it had received from Syria and Libya to enable Defendant JRA to carry out the May 30, 1972 terrorist attack at Lod Airport. Defendant PLO, acting as agent for Syria and Libya within the meaning of 28 U.S.C. § 1605(A)(a) and (c) and 28 U.S.C. § 1605 Note, performed acts within the scope of its agency that caused the abduction, false arrest, hostage taking, torture, assault, battery, extrajudicial

killing, wrongful death and emotional distress described below.

23. Defendant Popular Front For the Liberation of Palestine ("PFLP") is a Marxist-Leninist terrorist group that provided funds and other material aid to co-Defendant JRA in preparation for and execution of the May 30, 1972 terrorist attack at Lod Airport. It had received these funds from Syria and Libya and their respective agencies, officers, employees, agents and instrumentalities. Defendant PFLP, acting as agent for Syria and Libya within the meaning 28 U.S.C. § 1605(A)(a) and (c) and 28 U.S.C. § 1605 Note, performed acts within the scope of its agency that caused the abduction, false arrest, hostage taking, torture, assault, battery, extrajudicial killing, wrongful death and emotional distress described below.

24. Defendant Japanese Red Army ("JRA") is a leftist international terrorist group founded in 1971 by Ms. Fusako Shigenobu. Members Kozo Okamoto, Okudeita Takeshi and Yasuda Yasuki, carried out the Lod Airport terrorist attack of May 30, l972 on behalf of its co-Defendant sponsors, Libya and Syria and their respective agencies, instrumentalities, officials, officers, and employees, and the terrorist groups PLO and PFLP. Defendant JRA, acting as agent for Syria and Libya within the meaning of 28 U.S.C. § 1605(A)(a) and (c) and 28 U.S.C. § 1605 Note, performed acts within the scope of its agency that caused the abduction, false arrest, hostage taking, torture, assault, battery, extrajudicial killing, wrongful death and emotional distress described below.

25. Defendant Colonel Muammar Qadhafi is the leader of Libya. On behalf of Libya and acting within the scope of his office, and on his sovereign's behalf to promote his nation's policy of worldwide terrorism, he provided, through co-Defendant agencies, instrumentalities and officers of Libya material aid and resources to the JRA, the PLO

and PFLP, and other terrorist groups within the meaning of 28 U.S.C. § 1605(A)(a) and (c) and 28 U.S.C. § 1605 Note. As Libya's leader and on behalf of Libya he directed, planned, and caused his nation's agencies and instrumentalities to provide material aid to terrorist groups such as the JRA, PLO and PFLP, who operated on his and Libya's behalf to carry out the terrorist attack on Lod Airport on May 30, l972. acting as agent for Libya within the meaning of 28 U.S.C. § 1605(A)(a) and (c) and 28 U.S.C. § 1605 Note, performed acts within the scope of its agency that caused the abduction, false arrest, hostage taking, torture, assault, battery, extrajudicial killing, wrongful death and emotional distress described below.

26. Defendant Libyan External Security is an intelligence service of Libya that provided material aid and resources to Defendants JRA, the PLO and PFLP to promote and facilitate the terrorist attack on Lod Airport on May 30, 1972. Defendant Libyan External Security, as agent for Libya within the meaning of 28 U.S.C. § 1605(A)(a) and (c) and 28 U.S.C. § 1605 Note, performed acts within the scope of its agency that caused the abduction, false arrest, hostage taking, torture, assault, battery, extrajudicial killing, wrongful death and emotional distress described below.

27. John Does 1 through 99 are as yet unknown agents, officers, employees, or instrumentalities of Syria and Libya or other terrorist groups who made the May 30, 1972 terrorist attack on Lod Airport possible.

## STATEMENT OF FACTS

28. On May 30, 1972 all Plaintiffs, save for Israel Fischel, were part of a pilgrimage tour to Israel by over 250 Puerto Rican Americans. The entire group took

three different flights from New York's Kennedy Airport that were scheduled to arrive in Israel at approximately the same time. The plaintiffs were on Air France Flight 132. Israel Fischel was working at the airport at the time.

29.    En Route to Tel Aviv, Air France Flight 132 made a forty-minute stopover in Rome, Italy.  Twelve people boarded Flight 132 in Rome, including three terrorists. The two other planes arrived ahead of Air France Flight 132 and the majority of the pilgrims made it through the airport without incident.

30.    Since at least 1969, when General Hafez Assad was Defense Minister and commander of the Syrian Air Force, Syria provided aid to terrorist groups. In 1970, General Assad became President and repeatedly and systematically utilized terrorism as a weapon on Syria's behalf to advance its domestic and international policy interests, including sponsorship and direct participation in the May 30, 1972 terrorist attack at Lod Airport. General Assad particularly utilized SAFID to actively engage in terrorist activity. Through SAFID he controlled and subverted Syrian Arab Air Lines for the purpose of carrying out and aiding terrorist activities.

31. At the same time, Libya and its agents, officers and instrumentalities provided material aid to terrorist organizations including the JRA, the PLO, and the PFLP to promote their agenda of worldwide terrorism.

32. For the Lod Airport mission, all named Defendants chose the JRA to act as their attack "triggermen" and their agent.

33. Syria and Libya provided material support to the JRA, PLO,  PFLP and other terrorist groups, as they:

> a.  Permitted camps for terrorist training to operate in territories under its control;

b.  Provided weapons, logistic materials to terrorist groups, including the named Defendant terrorist groups;

c.  Provided fraudulent identification documents to terrorist groups, including the named Defendant terrorist groups and others;

d.  Helped terrorists in obtaining legal passage and infiltration into Israel to commit a terrorist act on Lod Airport on May 30, l972, and to other nations;

e.  Permitted the propaganda activities of the terrorist organization around the world against US citizens and others;

f.  Allowed the JRA, PLO and PFLP to operate in accommodations in its territory and have safe haven there.

34. To fund this conspiracy, Libya violated United Nations Security Council Resolutions and international law by nationalizing oil fields located in Libya but belonging to private American corporations, and used the illegally gained oil revenues to fund terrorism, through acts of murder, kidnapping, arson, robbery, and extortion, and the dealings and sales of illegal controlled substances and listed chemicals; they falsified official Syrian Arab Republic and other national identification documents, they unlawfully procured, reproduced, and sold naturalization and citizenship papers, passports and visas, they obstructed United States federal and state criminal investigations; and committed financial institution and mail fraud in which the Defendants received income, directly or indirectly from this pattern of racketeering to fund terrorism worldwide, and to carry out terrorist attacks worldwide.

35. Both Syria and Libya provided refuge and safe haven to numerous terrorist groups including the PFLP, JRA and PLO which enabled them to establish logistical and political offices, training and operation bases in Syrian and Syrian-controlled territory in eastern and southern Lebanon, as well as in and throughout Libya.  Syria and Libya allowed members of these terrorist organizations to travel freely between Syria and the

Syrian controlled areas of Lebanon and to other Arab states, and into foreign counties by providing them with forged passports and travel documents.

36. Libya and Syria, acting through Defendant agents, officers, employees, agencies and instrumentalities, helped Defendant terrorist groups organize and carry out military training, stockpile weapons, and develop global banking and communications networks throughout Syria and Syrian-controlled areas of Lebanon with funds obtained by Syria and Libya from racketeering as that term is defined in the Federal Civil RICO laws.

37. This terrorist group patronage by Syria and Libya allowed these groups to launch terrorist attacks against Israel from Syrian controlled southern and eastern Lebanon and to establish headquarters and residences for the terrorist leaders in Damascus, Syria.

38. Terrorist attacks carried out at the direction and under the sponsorship of Libya and Syria started taking place as a result of the aiding and abetting of the JRA, PLO and PFLP and other terrorist groups.

39. In an early May 1972 meeting, George Habash and Wadih Haddad, heads of the PFLP, hosted a gathering of all the major international terrorist groups at the PFLP controlled Baddawi refugee camp outside Tripoli, Lebanon. Using forged passports provided by Syria and its agencies and instrumentalities, the delegates were smuggled into and out of Lebanon. At this meeting, attendees pledged to not only assist one another logistically, but to participate in and actively participate and carry out attacks on behalf of one another. At the time, these groups were only able to travel to and from the meeting

and carry out its terrorist plans for attacks with the material support provided to them by Syria and Libya and their officers, employees, agents, agencies and instrumentalities.

40. At this meeting, the PLO, PFLP and JRA, in partnership with Syria and Libya, and as agents and recipients of material aid and support from these two sovereigns, jointly finalized plans for the May 30, 1972 terrorist attack at Lod Airport two weeks later.

41. In preparation for the Lod Airport attack, PFLP operatives, with the assistance of Syrian and Libyan governmental officials provided the JRA terrorists chosen to carry out the Lod Airport attack weapons training in terrorist camps in Syrian controlled areas of Lebanon.

42. On or about May 16, 1972, Defendants selected three JRA Japanese terrorists to carry out of the Lod Airport attack:  Kozo Okamoto, Tsuyoshi Okudaira, and Yasuyuki Yasuda.  The three JRA terrorists selected because they would not arouse the suspicions of Israeli security, who were on the lookout for Arab terrorists.  Okamoto, Okudaira and Yasuda were given specific instructions about the logistics of the attacks.  They were then provided plane tickets, money, clothing, forged travel documents and weapons pre-packed in three suitcases, a travel route, and hotel accommodations in Rome, Italy to facilitate their circuitous travel from Lebanon to Tel Aviv for the actual attack. All of this support was provided by co-Defendant officers, agencies, employees and instrumentalities, acting within the scope of their office, employment, or agency on behalf of their sovereigns.

43. The three JRA terrorists' international travel was facilitated by Defendants the Syrian Air Force Intelligence Directorate, Syrian Arab Airlines, Libyan Internal Security

Organization, Libyan External Security Organization, PLO, PFLP, JRA and John Does 1-99, acting as agents on behalf of their sovereigns.

44. Syrian and Libyan agents and employees used their diplomatic pouch privileges to smuggle guns and grenades into Rome and on to Air France Flight 132 for the JRA to use in carrying out the attack at Lod Airport.

45. At approximately 10:00 P.M. on May 30, l972, the three JRA terrorists arrived at Lod Airport on Air France Flight 132, the same flight as many as their victims.

46. Once in the terminal, The JRA terrorists attempted to destroy their forged passports in the bathroom prior to the terrorist attack.

47. The three JRA terrorists waited for their luggage to arrive in the baggage claim area. When their luggage arrived, the three JRA terrorists removed Czech-made VZT-58 and M-43 automatic rifles and approximately half a dozen powerful shrapnel grenades.

48. Without warning, the JRA terrorists fired and threw grenades at passengers grouped around the baggage claim area. The JRA terrorists fired one hundred thirty-three bullets into the airport passengers. Within a minute, blood, baggage, and bodies littered the hall. 24 people died and 78 were wounded. Two of the three terrorists also died in the attack. The third was uninjured and was arrested.

49. The JRA terrorists, holding and shooting assault rifles and exploding shrapnel grenades into the crowd provided no means of escape for Plaintiffs.

50. Once the JRA triggermen removed their assault rifles and grenades and opened fire, Plaintiffs witnessed their fellow passengers suffering, bleeding, being disfigured, and dying.

51. Plaintiffs Vasthi Zila Morales, Juan Padilla Ortiz, Carmen E. Guzman Rosado, Angel Berganzo Colon and Antonio Rodriguez Morales died in the attack.

52. Plaintiffs José Vega Franqui, Israel Fischel, Jesús Melendez, Rosa Vasquez, and Ruben Ruiz survived the attack, but were injured.

53. The surviving JRA terrorist, Okamoto, was subsequently prosecuted in Israel, and given life imprisonment.  At his trial, Okamoto fully confessed, testifying that the Popular Front for the Liberation of Palestine had come up with the idea for the Lod Airport attack.  He described his terrorist training in Syria and the material support the JRA received from all co-Defendants, all of which is part of his trial record.

54. The Defense Intelligence Agency of the United States Department of Defense, and other intelligence agencies of the United States government have determined that the massacre at the Lod Airport of May 30, l972 was conducted by members of the terrorist organization known as the Japanese Red Army under the sponsorship of the governments of Syria and Libya, either directly, or through their respective agents, agencies, instrumentalities, officers, leaders and employees acting on their behalf.


## COUNT I-BATTERY

55. All Plaintiffs incorporate herein by reference all paragraphs above as if fully set forth at length.

56. The injuries of Plaintiffs resulted from the battery from the bullets fired by the JRA terrorists, and shrapnel from the grenades detonated by the JRA terrorists.

57. Heirs and spouses of those Plaintiffs injured and killed during the airport attack also suffered injury as a result of the battery sustained by Plaintiffs. The injuries to

their loved ones were offensive to Plaintiff's reasonable sense of personal dignity and injurious to each of them since they each suffered a loss, and pain and suffering.

58. No Plaintiff named consented to this battery and un-permitted touching of their bodies by Defendants.

59. Defendants The Syrian Air Force Intelligence Directorate, Syrian Arab Airlines, the PLO, the PFLP, the JRA,  the Libyan External Security Organization, and John Does 1-99, acting as agents of Libya and Syria within the meaning of 28 U.S.C. §§1605(A)(a) and (c) of the FSIA, § 1605 Note of the FSIA, the Torture Victims Protection Act ("TVPA"), 28 U.S.C. §1350 Note, the law of New York State, the law of the District of Columbia, international law, the law of Lebanon, law of Puerto Rico and the law of Israel, performed acts within the scope of their agency which provided material support to the JRA.  These acts caused the battery of the Plaintiffs.  Defendants are therefore jointly and severally liable for damages under applicable law, including Connecticut, New York State, the District of Columbia, Illinois, Florida and Puerto Rico, through the operation of 28 U.S.C. § 1606, and through the doctrine of respondeat superior, Syria, Libya, SAFID, and ESO are liable to plaintiffs for damages to the same extent that a private individual who committed the same acts would be liable.

60. Defendants The Estate of Hafez Al-Assad, General Muhammed Al Khouli, Muammar Qadhafi, and John Does 1-99, are officials, employees, and/or agents of Libya and/or Syria, within the meaning of 28 U.S.C. §1605(A) and 28 U.S.C.A. §1605 Note, who performed acts within the scope of their offices, employment and/or agencies, which provided material support and resources to the JRA and caused the battery of the Plaintiffs.

61. All Defendants are directly or vicariously liable for their actions or the actions of their co-defendants because they controlled and/or acted in concert with the JRA in sponsoring its terrorist activities at Lod Airport, and in providing material support to the JRA for these activities.

62. For the reasons stated above, Defendants are jointly and severally liable to Plaintiffs , and their relatives and distributees.

63. WHEREFORE, Plaintiffs  demand that judgment be entered against all Defendants, jointly and severally, in an amount to be determined by the court, but no less than FIFTY MILLION ($50,000,000.00) U.S. Dollars to each Plaintiff and relative, distribute, and beneficiary.


## COUNT II – ASSAULT

64. All Plaintiffs incorporate herein by reference all paragraphs above as if fully set forth at length.

65. During the time Plaintiffs José Vega Franqui, Vasthi Vega Morales, Juan Padilla Ortiz, Israel Fischel, Carmen E. Guzman Rosado, Angel Berganzo Colon, Antonio Rodriguez Morales, Jesús Melendez, and Ruben Ruiz and were held as hostages by three JRA terrorists, at the Lod Airport on May 30, l972, their JRA captors directly, proximately, intentionally, and willfully put them in fear for their lives and in apprehension of immediate physical harm.

66.  At the time it was obvious to all plaintiffs that they were subject to imminent physical harm and injury.  Plaintiffs were put in fear for their life and were subjected to fear, emotional pain and physical suffering.

67. Separate damages for assault should also be available to Plaintiffs under the Torture Victim Protection Act of 1991, Pub L. 102-256, 106 Stat. 73 (reprinted at 28 U.S.C.A. § 1350 note), for the assault each Plaintiff suffered during the Lod Airport.

68. Defendants The Syrian Air Force Intelligence Directorate, Syrian Arab Airlines, the PLO, the PFLP, the JRA, the Libyan External Security Organization, and John Does 1-99, acting as agents of Libya and Syria within the meaning of 18 U.S.C. 28 U.S.C. §§1605(A) and, 28 U.S.C. § 1605 Note, performed acts within the scope of their agency which provided material support to the JRA. These acts caused the assault of the Plaintiffs. Defendants are therefore jointly and severally liable for damages under applicable law, including Connecticut, New York, the District of Columbia, Illinois, Florida and Puerto Rico, through the operation of 28 U.S.C. § 1606, and through the doctrine of respondeat superior, Syria, Libya, SAFID, and ESO are liable to plaintiffs for damages to the same extent that a private individual who committed the same acts would be liable.

69. Defendants The Estate of Hafez Al-Assad, General Muhammed Al Khouli, Muammar Qadhafi, and John Does 1-99, are officials, employees, and/or agents of Libya and/or Syria, within the meaning of 28 U.S.C. §1605(A) and 28 U.S.C. §1605 note, who performed acts within the scope of their offices, employment and/or agencies, which provided material support and resources to the JRA and caused the assault of the Plaintiffs.

70. All Defendants are directly or vicariously liable for their actions or the actions of their co-defendants because they controlled and/or acted in concert with the JRA in sponsoring its terrorist activities at Lod Airport, and in providing material support to the

JRA for these activities.

71. For the reasons stated above, Defendants are jointly and severally liable to Plaintiffs , and their relatives and distributees.

72. WHEREFORE, Plaintiffs  demand that judgment be entered against all Defendants, jointly and severally, in an amount to be determined by the court, but no less than FIFTY MILLION ($50,000,000.00) U.S. Dollars to each Plaintiff and relative, distribute, and beneficiary.


## COUNT III – FALSE IMPRISONMENT

73. All Plaintiffs incorporate herein by reference all paragraphs above as if fully set forth at length.

74. Plaintiffs were deprived of their freedom of movement by the JRA, and were aware that they had no means of escape.

75. This restriction of liberty of Plaintiffs present when the terrorist attack occurred was without Plaintiff's consent causing each such Plaintiff to  suffer anguish and pain and intense physical injury, pain, discomfort and in some instances, death on account of their being held hostage and falsely imprisoned.

76. Defendants The Syrian Air Force Intelligence Directorate, Syrian Arab Airlines, the PLO, the PFLP, the JRA,  the Libyan External Security Organization, and John Does 1-99, acting as agents of Libya and Syria within the meaning of 28 U.S.C. §§1605(A)(a) and (c) and  28 U.S.C. § 1605 Note, Torture Victims Protection Act ("TVPA"), 28 U.S.C. § 1350 Note, the law of New York State, the law of the District of Columbia, international law, the law of Lebanon, law of Puerto Rico and the law of

Israel, performed acts within the scope of their agency which provided material support to the JRA. These acts caused the false imprisonment of the Plaintiffs. Defendants are therefore jointly and severally liable for damages under applicable law, including the District of Columbia, Puerto Rico, Illinois, Florida  New York State, and Connecticut Law through the operation of 28 U.S.C. § 1606, and through the doctrine of respondeat superior, Syria, Libya, SAFID, and ESO are liable to plaintiffs for damages to the same extent that a private individual who committed the same acts would be liable.

77. Defendants The Estate of Hafez Al-Assad, General Muhammed Al Khouli, Muammar Qadhafi, and John Does 1-99, are officials, employees, and/or agents of Libya and/or Syria, within the meaning of 28 U.S.C. §1605(A) and 28 U.S.C.A. §1605 Note, who performed acts within the scope of their offices, employment and/or agencies, which provided material support and resources to the JRA and caused the false imprisonment of the Plaintiffs.

78. All Defendants are directly or vicariously liable for their actions or the actions of their co-defendants because they controlled and/or acted in concert with the JRA in sponsoring its terrorist activities at Lod Airport, and in providing material support to the JRA for these activities.

79. For the reasons stated above, Defendants are jointly and severally liable to Plaintiffs, and their relatives and distributees.

80. WHEREFORE, Plaintiffs  demand that judgment be entered against all Defendants, jointly and severally, in an amount to be determined by the court, but no less than FIFTY MILLION ($50,000,000.00) US Dollars to each Plaintiff and relative, distribute, and beneficiary.

## COUNT IV - INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

81. All Plaintiffs incorporate herein by reference all paragraphs above as if fully set forth at length.

82. Defendants' intentional, reckless, and extreme and outrageous conduct on the caused extreme, severe emotional distress to Plaintiffs, and upon members of their family. These acts were undertaken by all said Defendants for the purpose of causing mental duress and suffering, upon the members of the families of any person who they were able to kill or injure or blow into pieces during the terrorist attack at Lod Airport. The Plaintiffs enduring this terrorist attack and those and suffering injuries endured torture, shock, trauma to their nervous systems, pain, suffering, and battery. Surviving victims and the heirs of those killed during the May 30, 1972 terrorist attack at Lod Airport have suffered, and will forever suffer in the future severe and permanent psychiatric disorders, emotional distress and anxiety, permanent psychological distress, and permanent mental impairment requiring ongoing and long-term expenses for medical services, care, and counseling, as well as other economic losses, due to the intentional, reckless, wanton and extremely outrageous conduct of the Defendants. This attack was undertaken in deliberate disregard of the high degree of probability that emotional distress or such injuries or death would occur to Plaintiffs or their heirs and families.

83. Defendants The Syrian Air Force Intelligence Directorate, Syrian Arab Airlines, the PLO, the PFLP, the JRA, the Libyan External Security Organization, and John Does 1-99, acting as agents of Libya and Syria within the meaning of 28 U.S.C. §§1605(A) and 28 U.S.C. § 1605 Note, performed acts within the scope of their agency

which provided material support to the JRA. These acts caused the battery of the Plaintiffs. Defendants are therefore jointly and severally liable for damages under all possible sources of applicable law, including U.S.C. § 1606(A) and U.S.C. § 1605 note of the FSIA, the law of the state of Connecticut, New York, the District of Columbia, Illinois, Florida, Puerto Rico and the law of Israel. Under the operation of 28 U.S.C. § 1606, and through the doctrine of respondeat superior, Syria, Libya, SAFID, and ESO are liable to plaintiffs for damages to the same extent that a private individual who committed the same acts would be liable.

84. Defendants The Estate of Hafez al-Assad, General Muhammed Al Khouli, Muammar Qadhafi, and John Does 1-99, are officials, employees, and/or agents of Libya and/or Syria, within the meaning of 28 U.S.C. §1605(A)(a) and (c) and 28 U.S.C.A. §1605 Note, who performed acts within the scope of their offices, employment and/or agencies, and in their individual and official capacities, which provided material support and resources to the JRA and caused the battery of the Plaintiffs .

85. All Defendants are directly or vicariously liable for their actions or the actions of their co-defendants because they controlled and/or acted in concert with the JRA in sponsoring its terrorist activities at Lod Airport, and in providing material support to the JRA for these activities.

86. For the reasons stated above, Defendants are jointly and severally liable to Plaintiffs, and their relatives and distributees.

87. WHEREFORE, Plaintiffs demand that judgment be entered against all Defendants, jointly and severally, in an amount to be determined by the court, but no less

than FIFTY MILLION ($50,000,000.00) US Dollars for each of them on this Count IV, and their costs expended, plus interest.

## COUNT V - ACTION FOR WRONGFUL DEATH

88. All Plaintiffs incorporate herein by reference all paragraphs above as if fully set forth at length.

89. The Defendants caused the wrongful, willful, intentional, premeditated, deliberate, and malicious extrajudicial killing of Plaintiffs.

90. At no time did any Plaintiff give their consent to be wrongfully killed or to be killed in an extrajudicial manner.

91. Defendants The Syrian Air Force Intelligence Directorate, Syrian Arab Airlines, the PLO, the PFLP, the JRA, the Libyan External Security Organization, and John Does 1-99, acting as agents of Libya and Syria within the meaning of 28 U.S.C. §§1605(A)(a) and (c) and 28 U.S.C. § 1605 Note of the FSIA, and under all other applicable laws performed acts within the scope of their agency which provided material support to the JRA. These acts caused the battery and wrongful death of the Plaintiffs. Defendants are therefore jointly and severally liable for damages under all other applicable law, including Connecticut, New York, the District of Columbia, Illinois, Florida Puerto Rico and Israel, and through the operation of 28 U.S.C. § 1606, and through the doctrine of respondeat superior, Syria, Libya, SAFID, and ESO are liable to plaintiffs for damages to the same extent that a private individual who committed the same acts would be liable.

92. Defendants The Estate of Hafez al-Assad, General Muhammed Al Khouli,

Muammar Qadhafi, and John Does 1-99, are officials, employees, and/or agents of Libya and/or Syria, within the meaning of 28 U.S.C. §1605(A) and 28 U.S.C.A. §1605 Note, who performed acts within the scope of their offices, employment and/or agencies, which provided material support and resources to the JRA and caused the battery of the Plaintiffs .

93. All Defendants are directly or vicariously liable for their actions or the actions of their co-defendants because they controlled and/or acted in concert with the JRA in sponsoring its terrorist activities at Lod Airport, and in providing material support to the JRA for these activities.

94. For the reasons stated above, Defendants are jointly and severally liable to Plaintiffs, and their relatives and distributees.

95. WHEREFORE, Plaintiffs demand that judgment be entered against all Defendants, jointly and severally, in an amount to be determined by the court, but no less than FIFTY MILLION ($50,000,000.00) Dollars to each Plaintiff and relative, distribute, and beneficiary.

## COUNT VI - ACTION FOR SURVIVAL DAMAGES

96. All surviving Plaintiffs incorporate herein by reference all paragraphs above as if fully set forth at length.

97. Each plaintiff present at the May 30, 1972 terrorist attack at Lod Airport suffered extreme bodily pain, mental anguish and suffering.

98. Defendants The Syrian Air Force Intelligence Directorate, Syrian Arab Airlines, the PLO, the PFLP, the JRA,  the Libyan External Security Organization, and

John Does 1-99, acting as agents of Libya and Syria within the meaning of 28 U.S.C. §§1605(A)(a) and (c) and 28 U.S.C. § 1605 Note of the FSIA, as well as under the Torture Victims Protection Act ("TVPA"), 28 U.S.C. §1350 Note, performed acts within the scope of their agency which provided material support to the JRA. These acts caused the extreme bodily pain, mental anguish, and suffering of each of the Plaintiffs. Defendants are therefore jointly and severally liable for damages under applicable law, including Connecticut, New York, the District of Columbia, Illinois, Florida and Puerto Rico, through the operation of 28 U.S.C. § 1606, and through the doctrine of respondeat superior, Syria, Libya, SAFID, and ESO are liable to plaintiffs for damages to the same extent that a private individual who committed the same acts would be liable.

99. Defendants The Estate of Hafez Al-Assad, General Muhammed Al Khouli, Muammar Qadhafi, and John Does 1-99, are officials, employees, and/or agents of Libya and/or Syria, within the meaning of 28 U.S.C. §1605(A) and 28 U.S.C.A. §1605 Note, who performed acts within the scope of their offices, employment and/or agencies, which provided material support and resources to the JRA and caused the extreme bodily pain, mental anguish, and suffering of each of the Plaintiffs.

100. All Defendants are directly or vicariously liable for their actions or the actions of their co-defendants because they controlled and/or acted in concert with the JRA in sponsoring its terrorist activities at Lod Airport, and in providing material support to the JRA for these activities.

101. For the reasons stated above, Defendants are jointly and severally liable to Plaintiffs , and their relatives and distributees.

102.    WHEREFORE, Plaintiffs demand that judgment be entered against all Defendants, jointly and severally, in an amount to be determined by the court, but no less than FIFTY MILLION ($50,000,000.00) U.S. Dollars for each of them, and their costs expended, plus interest.

## COUNT VII - ACTION FOR CIVIL CONSPIRACY

103.    All named Plaintiffs incorporate herein by reference all paragraphs above as if fully set forth at length.

104.    All defendants conspired with one another to commit acts of international terrorism against the United States, its nationals and allies.

105.    All named Defendants knowingly and willfully conspired with one another before, during and after the Lod Airport terrorist attack on May 30, 1972 to sponsor Defendants JRA, PLO, PFLP and other terrorist organizations.

106.    The Lod Airport Massacre of May 30, 1972 was a direct, foreseeable, and intended product of the conspiracy among the Defendants to commit acts of international terrorism against the United States, its nationals and allies. Defendants willfully and deliberate conspired with one another to proximately causing the injury and death to Plaintiffs.

107.    Defendants The Syrian Air Force Intelligence Directorate, Syrian Arab Airlines, the PLO, the PFLP, the JRA,  the Libyan External Security Organization, and John Does 1-99, acting as agents of Libya and Syria within the meaning of 28 U.S.C. §§1605(A)(a) and (c) and 28 U.S.C. § 1605 Note, performed acts within the scope of their agency which provided material support to the JRA.  Defendants controlled and/or

acted in concert with the JRA, thus conspiring to cause the injuries to all Plaintiffs. Defendants are therefore jointly and severally liable for damages under applicable law, including Connecticut, New York, the District of Columbia, Illinois, Florida and Puerto Rico, through the operation of 28 U.S.C. § 1606, and through the doctrine of respondeat superior, Syria, Libya, SAFID, and ESO are liable to plaintiffs for damages to the same extent that a private individual who committed the same acts would be liable.

108.    Defendants The Estate of Hafez Al-Assad, General Muhammed Al Khouli, Muammar Qadhafi, and John Does 1-99, are officials, employees, and/or agents of Libya and/or Syria, within the meaning of 28 U.S.C. §1605(A) and 28 U.S.C.A. §1605 Note, who performed acts within the scope of their offices, employment and/or agencies, which provided material support and resources to the JRA and conspired to cause the injuries of all Plaintiffs.

109.    For the reasons stated above, Defendants are jointly and severally liable to Plaintiffs, and their relatives and distributees.

110.    WHEREFORE, Plaintiffs demand that judgment be entered against all Defendants, jointly and severally, in an amount to be determined by the court, but no less than ONE HUNDRED FIFTY MILLION ($150,000,000.00) U.S. Dollars to each Plaintiff and relative, distribute, and beneficiary.

## COUNT VIII: 18 U.S.C. § 1962(a) and (d) – CIVIL RICO

111.    All named Plaintiffs incorporate herein by reference all paragraphs above as if fully set forth at length.

112.    Defendants knowingly and willfully conspired with each other and with international terrorist organizations the JRA, the PLO and PFLP and others to plan and execute acts of international terrorism, including the Lod Airport attack of May 30, 1972.

113.    To engage in these terrorist activities, each named Defendant agreed with one another to engage in a pattern of racketeering to obtain the funding for terrorist attacks worldwide.

114.    Plaintiffs were injured by Defendants through the use or investment of the income that the Defendants received from the pattern of racketeering activity to subsidize and support the terrorist attack on Lod Airport on May 30, 1972.

115.    Each Defendant knew the essential nature and scope of the enterprise and each Defendant intended to receive, use or invest such income for murder and terrorism throughout the world in this pattern of racketeering for a corrupt and illegal purpose.

116.    All named Defendants conducted, aided and abetted, either directly or indirectly, or participated in the conduct of these money raising, racketeering and other illegal activities so that training, money, intelligence, and safe haven could be provided to terrorist group co-conspirators, including the JRA, the PFLP and the PLO, which resulted in the actual Lod Airport attack proximately causing the death and injury to the Plaintiffs, their heirs and survivors.

117.    But for this criminal enterprise, it is more likely that without the material aid and resources provided to co-conspirator Defendants JRA, PLO, and PFLP by the other co-Defendants, the terrorist attack on Lod Airport would not have taken place.

118.    All Defendants knew the essential nature of the enterprise or enterprises that they were employed by or associated with, and each of the Defendants intended to

participate in the affairs of the particular enterprise and enterprises of carrying out worldwide terrorist attacks and funding them by engaging in a pattern of racketeering which is prohibited by § 1961(4) of RICO.

119.    In accordance with Fed. Civ. R. Proc. 8(e)(2), Plaintiffs allege that there were at least the following enterprises as that term is defined in §1961(4) of RICO, and the Defendants in this suit committed, aided and abetted and/or co-conspired with one another to commit violation of §1962(c) to further their objectives of global terrorism including May 30, 1972 terrorist attack at Lod Airport.

120.    Each Defendant is an association in fact under this joint pattern of racketeering enterprise which affected American business activities in the U.S. and overseas, thereby further affecting interstate, foreign commerce as a direct and substantial effect on the U.S. through oil prices paid by U.S. citizens, which were higher than they otherwise would have been absent the racketeering and terrorism enterprises conducted by Defendants.

121.    Each Defendant played separate and discrete roles in conceiving and carrying out its pattern of racketeering schemes to obtain funding for terrorism and such as the provision of military intelligence to terrorist groups; the provision of forged passports and papers and the provision of arms and money.

122.    As a consequence, each Defendant is a "person" as that term is defined in §1961(3), and engaged in "enterprises through a pattern of racketeering activity as that term is defined in §1961(1) and (5) of Title 18 of the U.S. Code 1962(a) and (d) RICO of furthering a conspiracy to commit acts of international terrorism against the United States, its nationals and allies, by Defendants engaging in a pattern of racketeering.

123.    Each of the Defendants was motivated by a desire to promote international terrorism, to profit from it financially and politically, and each Defendant conducted schemes and voluntary cooperation through pattern of racketeering activity by either committing, aiding or abetting each other, their agents and other foreign terrorist groups.

124.    Defendants committed violations of Title 19 of U.S. §§ 1341 and 1343 (mail and wire fraud), §1512(b)(2) (obstruction of justice) and §2314 interstate transportation offences of 18 U.S.C.A. §1961(1) and (5) by using the U.S. mail to further terrorist schemes as to the plan and times of terrorist attacks, and to invest money or to pay it to terrorists in a secret scheme of terrorist against U.S. citizens and others.

125.    This use of wires and mail in Defendants' racketeering effort occurred from 1972 to the present.

126.    From its racketeering profits, Defendants knowingly, intentionally and corruptly had the weapons used by the JRA terrorists smuggled onto Air France Flight 132 in Rome through the use of Syria's and Libya's diplomatic privileges.

127.    Defendants knowingly, intentionally and corruptly obstructed justice in violation of 18 U.S.C.A. §1512(b)(2) by keeping secret their plans and by the JRA terrorists trying to conceal or destroy their forged passports in the bathroom just prior to starting the terrorist attack at Lod Airport.

128.    Part of this racketeering scheme was transporting money by fraud through interstate commerce, causing it to be transported, in concealment of this wrongful scheme, in violation of § 2314.

129.    Defendants' violation of 18 U.S.C.A. §1341, 1512 and 2314 constituted a pattern of racketeering activities as that term is defined in §1961(1) and (5) of RICO because, as stated above, these acts were interrelated and continuous.

130.    Defendants' violations of these federal statutes had the same or similar purpose, results, participants, victims, or methods of commission.    They were interrelated, rather than isolated events.    These terrorist acts amount to repeated conduct that extends from the past to the future, with a threat of repetition.    But for the filing of this complaint, these terrorist acts would and may continue indefinitely.

131.    Plaintiffs have standing to sue because they have been injured in their business, property and person by reason of Defendants' violation of §1962(c) and (d) of RICO.    Decedents can no longer engage in business, protect their property, or support their families economically and with love and support and companionship.    Moreover, American citizens are suffering higher oil prices due in part to defendant terrorist and racketeering activities.

132.    The damages suffered by the Plaintiffs, as described herein, were the direct and proximate result of the aforesaid pattern of racketeering activity by the Defendants, acting individually and in concert with one another in violation of 18 U.S.C. §1962(a) Civil RICO and the UN convention against transnational organized crime.

133.    Defendants The Syrian Air Force Intelligence Directorate, Syrian Arab Airlines, the PLO, the PFLP, the JRA,  the Libyan External Security Organization, and John Does 1-99, acting as agents of Libya and Syria within the meaning of 28 U.S.C. §§1605(A)(a) and (c) and 28 U.S.C. § 1605 Note, performed acts within the scope of their agency which provided material support to the JRA.   Defendants' racketeering

caused the injuries to the Plaintiffs. Defendants are therefore jointly and severally liable for damages under applicable law, including the law of Connecticut, New York, the District of Columbia, Illinois, Florida  Puerto Rico, and Israel  through the operation of 28 U.S.C. § 1606, and through the doctrine of respondeat superior, Syria, Libya, SAFID, and ESO are liable to plaintiffs for damages to the same extent that a private individual who committed the same acts would be liable.

134.    Defendants The Estate of Hafez Al-Assad, General Muhammed Al Khouli, Muammar Qadhafi, and John Does 1-99, are officials, employees, and/or agents of Libya and/or Syria, within the meaning of 28 U.S.C. §1605(A) and 28 U.S.C.A. §1605 Note, who performed acts within the scope of their offices, employment and/or agencies, which provided material support and resources to the JRA, and their racketeering caused the injuries of the Plaintiffs .

135.    All Defendants are directly or vicariously liable for their actions or the actions of their co-defendants because they controlled and/or acted in concert with the JRA in sponsoring its terrorist activities at Lod Airport, and in providing material support to the JRA for these activities.

136.    For the reasons stated above, Defendants are jointly and severally liable to Plaintiffs, and their relatives and distributees.

137.    WHEREFORE, Plaintiffs demand that judgment be entered against all Defendants, jointly and severally, in an amount to be determined by the court, but no less than ONE HUNDRED FIFTY MILLION ($150,000,000.00) U.S. Dollars to each Plaintiff and relative, distributee, and beneficiary.

## COUNT IX- ACTION FOR AIDING AND ABETTING

138.    All named Plaintiffs incorporate herein by reference all paragraphs above as if fully set forth at length.

139.    All Defendants knowingly and willfully provided substantial assistance, sponsored and partnered with each other to deliberately and maliciously commit the May 30, 1972 terrorist attack at Lod Airport within the meaning of 28 U.S.C. § 1605(A)(a) and (c) and 28 U.S.C.A. §1605 Note .

140.    Defendants aided and abetted the JRA, PFLP, and PLO and each other by providing them material aid and resources.

141.    Defendants The Syrian Air Force Intelligence Directorate, Syrian Arab Airlines, the PLO, the PFLP, the JRA,  the Libyan External Security Organization, and John Does 1-99, acting as agents of Libya and Syria within the meaning of 18 U.S.C. 28 U.S.C. §§1605(A)(a) and (c) and 28 U.S.C. § 1605 Note, performed acts within the scope of their agency which provided material support to the JRA.  Defendants' racketeering caused the injuries to the Plaintiffs.  Defendants are therefore jointly and severally liable for damages under applicable law, including the law of Connecticut, New York, the District of Columbia, Illinois, Florida  Puerto Rico,  and Israel through the operation of 28 U.S.C. § 1606, and through the doctrine of respondeat superior, Syria, Libya, SAFID, and ESO are liable to plaintiffs for damages to the same extent that a private individual who committed the same acts would be liable.

142.    Defendants The Estate of Hafez Al-Assad, General Muhammed Al Khouli, Muammar Qadhafi, and John Does 1-99, are officials, employees, and/or agents of Libya and/or Syria, within the meaning of 28 U.S.C. §1605(A) and 28 U.S.C.A. §1605 Note, who performed acts within the scope of their offices, employment and/or agencies,

36

which provided material support and resources to the JRA, and their racketeering caused the injuries of the Plaintiffs.

143.    All Defendants are directly or vicariously liable for their actions or the actions of their co-defendants because they controlled and/or acted in concert with the JRA in sponsoring its terrorist activities at Lod Airport, and in providing material support to the JRA for these activities.

144.    For the reasons stated above, Defendants are jointly and severally liable to Plaintiffs , and their relatives and distributees.

145.    WHEREFORE, Plaintiffs  demand that judgment be entered against all Defendants, jointly and severally, in an amount to be determined by the court, but no less than FIFTY MILLION ($50,000,000.00) U.S. Dollars for each of them, for compensatory and punitive damages and for costs expended, plus interest.

## COUNT X:  WILLFUL AND WANTON MISCONDUCT

146.    All named Plaintiffs incorporate herein by reference all paragraphs above as if fully set forth at length.

147.    The May 30, 1972 attack on Lod Airport was a direct, intended and foreseeable product of a larger conspiracy among the Defendants to commit acts of international terrorism against the United States, its nationals and allies.

148.    Defendants negligently, intentionally, recklessly, willfully and wantonly breached duties of care owed to the Plaintiffs to use care and the diligence not to interfere with another sovereign so airport passengers can be safe and not to invade airports where international travel occurs in foreign states and perform terrorist extrajudicial killings, torture and terrorism or harm the human rights and fundamental freedom of U.S. citizens

under international and U.S. law and their constitutional rights and liberties.

149.    Defendants The Syrian Air Force Intelligence Directorate, Syrian Arab Airlines, the PLO, the PFLP, the JRA,  the Libyan External Security Organization, and John Does 1-99, acting as agents of Libya and Syria within the meaning of 18 U.S.C. 28 U.S.C. §§1605(A)(a) and (c) and 28 U.S.C. § 1605 Note, performed acts within the scope of their agency which provided material support to the JRA.  Defendants' racketeering caused the injuries to the Plaintiffs.  Defendants are therefore jointly and severally liable for damages under applicable law, including the law of  Connecticut, New York, the District of Columbia, Illinois, Florida, Puerto Rico, and Israel through the operation of 28 U.S.C. § 1606, and through the doctrine of respondeat superior, Syria, Libya, SAFID, and ESO are liable to plaintiffs for damages to the same extent that a private individual who committed the same acts would be liable.

150.    Defendants The Estate of Hafez Al-Assad, General Muhammed Al Khouli, Muammar Qadhafi, and John Does 1-99, are officials, employees, and/or agents of Libya and/or Syria, within the meaning of 28 U.S.C. §1605(a)(7) and 28 U.S.C.A. §1605, who performed acts within the scope of their offices, employment and/or agencies, which provided material support and resources to the JRA, and their racketeering caused the injuries of the Plaintiffs.

151.    All Defendants are directly or vicariously liable for their actions or the actions of their co-defendants because they controlled and/or acted in concert with the JRA in sponsoring its terrorist activities at Lod Airport, and in providing material support to the JRA for these activities.

152.    For the reasons stated above, Defendants are jointly and severally liable to

Plaintiffs, and their relatives and distributees.

153.    WHEREFORE, Plaintiffs demand that judgment be entered against all Defendants, jointly and severally, in an amount to be determined by the court, but no less than FIFTY MILLION ($50,000,000.00) U.S. Dollars for each of them, for compensatory damages and for costs expended, plus interest.

## COUNT XI:  LOSS OF CONSORTIUM AND SOLATIUM

154.    All surviving Plaintiffs incorporate herein by reference all paragraphs above as if fully set forth at length.

155.    As direct and proximate result of the willful, wrongful, intentional and reckless acts of the Defendants, surviving Plaintiffs suffered permanent injury to and interference with their marital relationships and were otherwise injured and damaged until the time of the death by the loss to Plaintiffs of their right of consortium and/or solatium.

156.    Defendants The Syrian Air Force Intelligence Directorate, Syrian Arab Airlines, the PLO, the PFLP, the JRA,  the Libyan External Security Organization, and John Does 1-99, acting as agents of Libya and Syria within the meaning of 28 U.S.C. §§1605(A)(a) and (c) and 28 U.S.C. § 1605 Note, performed acts within the scope of their agency which provided material support to the JRA.  Defendants' racketeering caused the injuries to the Plaintiffs.  Defendants are therefore jointly and severally liable for damages under applicable law, including the law of Connecticut, New York, the District of Columbia, Illinois, Florida,  Puerto Rico, and Israel through the operation of 28 U.S.C. § 1606, and through the doctrine of respondeat superior, Syria, Libya, SAFID,

and ESO are liable to plaintiffs for damages to the same extent that a private individual who committed the same acts would be liable.

157.    Defendants The Estate of Hafez Al-Assad, General Muhammed Al Khouli, Muammar Qadhafi, and John Does 1-99, are officials, employees, and/or agents of Libya and/or Syria, within the meaning of 28 U.S.C. §1605(A) and 28 U.S.C.A. §1605 Note, who performed acts within the scope of their offices, employment and/or agencies, which provided material support and resources to the JRA, and their racketeering caused the injuries of the Plaintiffs.

158.    All Defendants are directly or vicariously liable for their actions or the actions of their co-defendants because they controlled and/or acted in concert with the JRA in sponsoring its terrorist activities at Lod Airport, and in providing material support to the JRA for these activities.

159.    For the reasons stated above, Defendants are jointly and severally liable to Plaintiffs, and their relatives and distributees.

160.    WHEREFORE, Plaintiffs demand that judgment be entered against all Defendants, jointly and severally, in an amount to be determined by the court, but no less than FIFTY MILLION ($50,000,000) U.S. Dollars for each of them for compensatory damages and costs expended, plus interest.


## COUNT XII-ECONOMIC DAMAGES

161.    All named Plaintiffs incorporate herein by reference all paragraphs above as if fully set forth at length.

162.    Defendants are jointly and severally liable to Plaintiffs for any economic

damages they incurred, including future employment and economic opportunities, and other economic damages.

163.    Defendants The Syrian Air Force Intelligence Directorate, Syrian Arab Airlines, the PLO, the PFLP, the JRA,  the Libyan External Security Organization, and John Does 1-99, acting as agents of Libya and Syria within the meaning of 28 U.S.C. §§1605(A)(a) and (c) and  28 U.S.C. § 1605 Note, performed acts within the scope of their agency which provided material support to the JRA.  Defendants' racketeering caused the injuries to the Plaintiffs.  Defendants are therefore jointly and severally liable for damages under applicable law, including the law of Connecticut, New York, the District of Columbia, Illinois, Florida, Puerto Rico, and Israel  through the operation of 28 U.S.C. § 1606, and through the doctrine of respondeat superior, Syria, Libya, SAFID, and ESO are liable to plaintiffs for damages to the same extent that a private individual who committed the same acts would be liable.

164.    Defendants The Estate of Hafez Al-Assad, General Muhammed Al Khouli, Muammar Qadhafi, and John Does 1-99, are officials, employees, and/or agents of Libya and/or Syria, within the meaning of 28 U.S.C. §1605(A) and 28 U.S.C.A. §1605 Note, who performed acts within the scope of their offices, employment and/or agencies, which provided material support and resources to the JRA, and their acts caused the injuries of the Plaintiffs.

165.    All Defendants are directly or vicariously liable for their actions or the actions of their co-defendants because they controlled and/or acted in concert with the JRA in sponsoring its terrorist activities at Lod Airport, and in providing material support to the JRA for these activities.

166.   For the reasons stated above, Defendants are jointly and severally liable to Plaintiffs, and their relatives and distributees.

167.   WHEREFORE, Plaintiffs demand that judgment be entered against all Defendants, jointly and severally, in an amount to be determined by the court, but no less than FIFTY MILLION ($50,000,000) U.S. Dollars for each of them, for compensatory damages and for costs expended, plus interest.

## COUNT XIII - PUNITIVE DAMAGES

168.   All named Plaintiffs incorporate herein by reference all paragraphs above as if fully set forth at length.

169.   The actions of all Defendants, acting in concert to carry out their unlawful objectives, were malicious and in willful, wanton and reckless disregard for the rights of Plaintiffs.  The Defendants, acting individually and jointly, intended to carry out such actions which were calculated to result in the death and injury of Plaintiffs at Lod Airport.   The actions sponsored and materially supported by Defendants were undertaken, at such time, and in such  manner, by those responsible individuals who were operating for, and in the service of the Foreign State Defendants Syria and Libya, and those Defendants are, therefore, directly and vicariously liable to the Plaintiffs.

170.   Defendants The Syrian Air Force Intelligence Directorate, Syrian Arab Airlines, the PLO, the PFLP, the JRA, the Libyan External Security Organization, and John Does 1-99, acting as agents of Libya and Syria within the meaning of 28 U.S.C. §§1605(A)(a) and (c) and 28 U.S.C. § 1605 Note, performed acts within the scope of their agency which provided material support to the JRA.   Defendants are therefore

jointly and severally liable for punitive damages under applicable law, including the law of Connecticut, New York, the District of Columbia, Illinois, Florida, Puerto Rico, and Israel, through the operation of 28 U.S.C. § 1606, and through the doctrine of respondeat superior, Syria, Libya, SAFID, and ESO are liable to plaintiffs for damages to the same extent that a private individual who committed the same acts would be liable.

171.    Defendants The Estate of Hafez Al-Assad, General Muhammed Al Khouli, Muammar Qadhafi, and John Does 1-99, are officials and/or employees of Libya and/or Syria, within the meaning of 28 U.S.C. §160(A) and 28 U.S.C.A. §1605 Note, who performed acts within the scope of their offices, employment and/or agencies, which provided material support and resources to the JRA, and whose acts of terrorism caused the injuries of the Plaintiffs .  Said defendants, as officials, employees and/or agents of Libya or Syria are liable for compensatory damages to all Plaintiffs.

172.    For the reasons stated above, Defendants are jointly and severally liable to Plaintiffs, and their relatives and distributees.

173.    WHEREFORE, Plaintiffs demand that judgment be entered against all Defendants, jointly and severally, in an amount to be determined by the court, but no less than THREE HUNDRED MILLLION ($300,000,000) U.S. Dollars for each of them, for punitive damages and for costs expended, plus interest.

## ADDITIONAL RELIEF REQUESTED

174.    Plaintiffs request leave of Court to amend this Complaint as the interests of justice require.

175.

## JURY TRIAL DEMANDED

176.    A jury trial is demanded for all Defendants except those for which jury trials are not available under the law.

Respectfully Submitted,


___/s/ Joshua M. Ambush_____
Joshua Ambush, Esquire
The Law Offices of Joshua M. Ambush, LLC
Hilton Plaza
1726 Reisterstown Road Suite 206
Baltimore, MD 21208
Tel: 410 484-2070
Fax: 410-484-9330
Bar Number: MD 27025


Dated: _____March 28, 2008_____


## CERTIFICATE OF SERVICE

I hereby certify that on this 28th day of March, 2008 a copy of the foregoing was served via first class mail and/or via the United States District Court's ECF filing system, to: Thomas J. Whalen, Esquire, Mark A. Johnston, Esquire, Eckert, Seamons, Cherin & Mellott, LLC, 747 Pennsylvania Avenue, NW, Twelfth Floor, Washington, DC 20006; Wendy West Feinstein, Esquire, Eckert, Seamons, Cherin & Mellott, LLC, 600 Grant Street, 44th Floor, Pittsburgh, PA 15219.


___/s/ Joshua M. Ambush_____