# EXHIBIT A

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| Reverend JOSE MANUEL VEGA FRANQUI,<br>Individually and as Administrator of the<br>Estate of VASTHI ZILA MORALES DE VEGA,<br>et al. | ) ) ) ) | |
| | ) | Case No. 1:06-cv-00734-RBW |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| GREAT SOCIALIST PEOPLE'S LIBYAN<br>ARAB JAMAHIRIYA, et al. | ) ) | |
| Defendants. | ) ) | |

### LIBYA'S MOTION TO DISMISS THE AMENDED COMPLAINT

Defendant, Great Socialist People's Libyan Arab Jamahiriya a/k/a Libya ("Libya"), by

undersigned counsel, hereby moves this Court pursuant to Rules 12(b)(1) and (6) of the Federal

Rules for Civil Procedure to dismiss this action against Libya on the basis that this Court lacks

subject matter jurisdiction, *in personam* jurisdiction and that, in any event, the claims are time-

barred.  Libya specifically contends that:  (1) plaintiffs cannot establish that an exception to

Libya's sovereign immunity applies and, consequently, this Court lacks subject matter

jurisdiction; (2) the Court lacks *in personam* jurisdiction and (3) plaintiffs' claims are barred by

the applicable statute of limitations.

In support of this motion, Libya respectfully refers this Court to the attached

Memorandum of Points and Authorities and proposed Order.

Respectfully submitted,

**ECKERT SEAMANS CHERIN**
**& MELLOTT, LLC**

_____*/s/ Mark A. Johnston*_____
Thomas Whalen, Esq. (D.C. Bar #208512)
Mark Johnston, Esq. (D.C. Bar #455764)
1747 Pennsylvania Ave., N.W.
Suite 1200
Washington, DC  20006-4604
(202) 659-6600
Fax: (202) 659-6699
twhalen@eckertseamans.com
mjohnston@eckertseamans.com

Of counsel:

Wendy West Feinstein, Esq.
ECKERT SEAMANS CHERIN
    & MELLOTT LLC
600 Grant Street
44th Floor
Pittsburgh, PA 15219
(412) 566-6000
Fax:  (412) 566-6099
wfeinstein@eckertseamans.com

*Attorneys for Great Socialist People's*
*Libyan Arab Jamahiriya a/k/a Libya*

Dated:  May 2, 2008

2

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that copies of the foregoing **Motion to Dismiss the Amended Complaint, Memorandum of Points and Authorities, and Proposed Order** were electronically filed and served, this 2nd day of May, 2008, to:

Joshua Ambush
Terri Sneider
The Law Offices of Joshua M. Ambush, LLC
1726 Reisterstown Road Suite 206
Baltimore, MD 21208

_____/s/ Mark A. Johnston_____
Mark A. Johnston

3

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

Reverend JOSE MANUEL VEGA FRANQUI,  )
Individually and as Administrator of the  )
Estate of VASTHI ZILA MORALES DE VEGA,  )
et al.  )
                                        )    Case No. 1:06-cv-00734-RBW
           Plaintiffs,  )
                  )
      v.  )
                  )
GREAT SOCIALIST PEOPLE'S LIBYAN  )
ARAB JAMAHIRIYA, et al.  )
                  )
          Defendants.  )

## MEMORANDUM OF POINTS AND AUTHORITIES
## IN SUPPORT OF LIBYA'S MOTION TO DISMISS THE AMENDED COMPLAINT

**ECKERT SEAMANS CHERIN**
**& MELLOTT, LLC**

1747 Pennsylvania Ave., N.W.
Suite 1200
Washington, DC  20006-4604
(202) 659-6600
Fax: (202) 659-6699

*Attorneys for Great Socialist People's*
*Libyan Arab Jamahiriya a/k/a Libya*

## **TABLE OF CONTENTS**

                                                                          **Page**

INTRODUCTION…………………………………………………………………..1

A. The Court Lacked Jurisdiction Over The Original Complaint…………………………….2

B. Summary Of Factual Allegations………………………………………………....2

ARGUMENT……....……………………………………………………………….4

A. Summary of Argument……………………………………………………………...4

B. The Amended Complaint Should Be Dismissed Because This Court Lacks
   Subject Matter Jurisdiction…………………………………………………………5

C. Plaintiffs' Amended Complaint Does Not Meet The Requirements of 28 U.S.C.
   §1605A……………………………………………………………………………….9

   1. Section 1083(c), the "Application to Pending Cases" Provision of the
      Revised Legislation, By Its Express Terms Does Not Apply to Plaintiffs'
      Complaint………………………………………………………………..…10

   2. Because Plaintiffs Original Action Was Untimely, They Were Not
      "Adversely Affected" As Required Under Section 1803(c)(2)(A)(iii)………………13

   3. Plaintiffs May Not File A "Related Action" Arising From the May 30, 1972
      Attack Because Their Original Complaint Was Not Timely Filed Pursuant To
      28 U.S.C. §1605(a)(7)…………………………………………….……………..15

D. The Amended Complaint Should Be Dismissed Against Libya Because the
   Plaintiffs' Claims Are Time Barred……………………………………….……………16

   1. The Statute of Limitations Began To Run From the Date On Which Plaintiffs'
      Claims Arose, May 30, 1972……………………………………………………...17

   2. The Doctrine of Equitable Tolling Tolls The Statute of Limitations For a
      Reasonable Period After An Impediment To Suit Is Removed……………….…..19

   3. Plaintiffs' Claims Are Time-Barred Even If the Doctrine of Equitable Tolling
      Suspended The Running of the Statute of Limitations…………………………22

E. The FSIA Does Not Provide Subject Matter Jurisdiction Over Claims Brought By
   Indirect Victims of Terrorism……………………………………………………..…24

F. The Exercise Of Personal Jurisdiction Over Libya Violates The Due Process Clause of
   The Fifth Amendment………………………………………………..…………….…28

CONCLUSION………………………………………………………………………….31

CERTIFICATE OF SERVICE…………………………………………………….…….32

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Acree v. Republic of Iraq,*
370 F.3d 41 (D.C. Cir. 2004)………………………………………………….……….7

*Amoco Overseas Oil Co. v. Compagnie Nationale Algerienne de Navigation,*
605 F.2d 648 (2d Cir. 1979)……………………………………………….…...……….29

*Arce v. Garcia,*
434 F.3d 1254 (11th Cir. Fla. 2006)……………………………………...……..20

*Argentine Republic v. Amerada Hess Shipping Corp.,*
488 U.S. 428 (1989)……………………………………………………………..….…..…5

*Chung v. DOJ,*
333 F.3d 273 (D.C. Cir. 2003)……………………………………………….…...21

*Cicippio-Puleo v. Islamic Republic of Iran,*
2002 WL 34408105 (D.D.C. June 21, 2002)……………………………………….27

*Cicippio-Puleo v. Islamic Republic of Iran,*
353 F.3d 1024 (D.C. Cir. 2004)……………………………………...……..….14, 27

*Communs. Vending Corp. of Ariz. v. FCC,*
365 F.3d 1064 (D.C. Cir. 2004)……………………………………...….………..21

*Doe v. State of Israel,*
400 F. Supp. 2d 86 (D.D.C. 2005)……………………………………...….………..5

*Estate of Buoncore v. Great Socialist People's Libyan Arab Jamahiriya,*
2007 WL 2007509 (D.D.C. July 9, 2007)…………………………………….…..14, 17, 19, 20, 21

*Fernandez-Vargas v. Ashcroft,*
126 S. Ct. 2422 (2006)……………………………………………………...…..11-12

*Foremost-McKesson, Inc. v. Islamic Republic of Iran,*
905 F.2d 438 (D.C. Cir. 1990)………………………………………………..………6

*Frontera Res. Azer Corp. v. State Oil Co. of the Azer. Republic,*
479 F. Supp. 2d 276 (S.D.N.Y. 2007)…………………………………...…….29

*Int'l Shoe Co. v. Washington,*
326 U.S. 310 (1945)…………………………………………………………..….28

*Jarecki v. G.D. Searle & Co.,*
367 U.S. 303 (1961)…………………………………………………….………25-26

*John R. Sand & Gravel Co. v. United States,*
128 S. Ct. 750 (2008)…………………………………………………..……15

*\*Kaiser Aluminum & Chem. Corp. v. Bonjorno,*
494 U.S. 827 (1990)……………………………………………………......…12, 19

*Kalil v. Johanns,*
407 F. Supp 2d 94 (D.D.C. 2005)……………………………………….……….25

*Landgraf v. USI Film Prods.,*
511 U.S. 244 (1994)……………………………………………….…..…….11

*Lindh v. Murphy,*
521 U.S. 320 (1997)………………………………………………………..….11

*National Insulation Transp. Committee v. Interstate Commerce Com.,*
683 F.2d 533 (D.C. Cir. 1982)………………………………..……..……….....17-18

*Nat'l R.R. Passenger Corp. Lexington Ins. Co. ,*
357 F. Supp. 2d 287 (D.D.C. 2005)………………………………………..……….16

*O'Gilvie v. United States,*
519 U.S. 79 (1996)……………………………………………………….….25

*Qi-Zhuo v. Meissner,*
70 F.3d 136 (D.C. Cir. 1995)……………………………………..……….17

*Pfizer, Inc. v. Gov't of India,*
434 U.S. 308 (1978)……………………………………………………….30

*Phillips v. Heine,*
984 F.2d 489 (D.C. Cir. 1993)……………………………………………………19, 20

*Phoenix Consulting, Inc. v. Republic of Angola,*
216 F.3d 36 (D.C. Cir. 2000)…………………………………..………….........6, 9

*Price v. Socialist People's Libyan Arab Jamahiriya,*
294 F. 3d 82 (D.C. Cir. 2002)…………………………………………..………28, 29, 30-31

*Reid v. Covert,*
354 U.S. 1 (1957)………………………………………………………………..30

*Republic of Argentina v. Weltover, Inc.*
504 U.S. 607 (1992)……………………………………………………………..9

*Roeder v. Islamic Republic of Iran,*
195 F. Supp. 2d 140 (D.D.C. 2002)……………………..………………………...8, 9

*Sandvik v. United States,*
177 F.3d 1269 (11th Cir. 1999)……………………………………………………..20

*Schumann v. C.I.R.,*
827 F.2d 808 (D.C. Cir. 1988)…………………………..…..………………………12

*Sinochem Int'l Co. v. Malay Int'l Shipping Corp.,*
127 S. Ct. 1184 (2007)…………………………………………………….………14

*Steel Co. v. Citizens for Better Env't,*
523 U.S. 83 (1998)…………………………………………………………………..14

*Texas Trading & Milling Corp. v. Federal Republic of Nig.,*
647 F.2d 300 (2d Cir. 1981)…………………………………………………….29, 30

*TMR Energy Ltd. v. State Property Fund of Ukr.,*
411 F.3d 296 (D.C. Cir. 2005)…………………………………………………...29

*TRW Inc. v. Andrews,*
534 U.S. 19 (2001)………………………………………………...…………17-18

*United States v. Nordic Village,*
503 U.S. 30 (1992)…………………………………………………...…..…………27

*United States v. Noriega,*
117 F.3d 1206 (11th Cir. 1997)……………..………………………...…..………..23

iv

*United States v. Verdugo-Urquidez,*
494 U.S. 259 (1990)..........................................................................................30

*Verlinden B.V. v. Central Bank of Nigeria,*
461 U.S. 480 (1983)..........................................................................................22

*\*Vine v. Republic of Iraq,*
459 F. Supp. 2d 10 (D.D.C. 2006)...........................................................14, 17, 20

*World-Wide Volkswagen Corp. v. Woodson,*
444 U.S. 286 (1980)..........................................................................................28

*Yanco v. United States,*
258 F. 3d 1356 (Fed. Cir. 2001)........................................................................25

*Ye v. Zemin,*
383 F.3d 620 (7th Cir. 2004)............................................................................22

## FEDERAL RULES, STATUTES, AND REGULATIONS

Fed. R. Civ. P. 12(b)(1)...............................................................................4, 25

Fed. R. Civ. P. 12(b)(6).........................................................................4, 16, 25

Fed. R. Civ. P. 12(h)(2)....................................................................................5

Fed. R. Civ. P. 15(a).......................................................................................10

28 U.S.C. §1604.................................................................................................5

28 U.S.C. §1607.................................................................................................6

28 U.S.C. §1605(a)(2) (repealed 2008)..............................................................5

28 U.S.C. §1605(a)(5) (repealed 2008)..............................................................5

28 U.S.C. §1605(a)(7) (repealed 2008).......................................................*passim*

28 U.S.C. §1605(f) (repealed 2008)............................................................*passim*

28 U.S.C. §1605A.....................................................................................*passim*

28 U.S.C. §1605A(a)................................................................................*passim*

28 U.S.C. §1605A(a)(i)................................................................................5, 6, 8

28 U.S.C. §1605A(a)(2)……………………………………………....……….…….8

28 U.S. C. §1605A(c)…………………………………………………………..……….9

"The Foreign Sovereign Immunities Act", 28 USC §1601, *et. seq*...…………………...*passim*

The National Defense Authorization Act §1083, Pub. L. No. 110-181 (2008)…………......*passim*

Antiterrorism and Effective Death Penalty Act of 1996,
Pub. L. 104-132, 110 Stat. 1241 (1996)…………………………………..…….…….…..26

## LEGISLATIVE MATERIALS

Foreign Sovereign Immunities Act: Hearing Before the Subcomm. On Cts. And Administrative Practice, S. Comm. on the Judiciary, 103rd Cong. 28 (June 1994)……………………….………..27

H.R. 934 H. Rep. 103-172, 103rd Congress, August 16, 1994………………………………26, 27

*Comprehensive Antiterrorism Act of 1995: Report of the Comm. on the Judiciary,* H.R. Rep. No. 104-383 (1995)…………………………………………………………………..…….…..27

## OTHER AUTHORITIES

Blacks Law Dictionary (8th Ed. 2004)……………………………………………………...25

Lori Fisler Damrosch, *Foreign States and the Constitution,* 73 Va. L. Rev. 483, 519-520 & no. 150 (1987)…………………………………………………………………………………...30

Oxford English Dictionary (2008 ed.),
*available at* http://www.oed.com…..……………………………………………….…………25

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Reverend JOSE MANUEL VEGA FRANQUI,     )
Individually and as Administrator of the     )
Estate of VASTHI ZILA MORALES DE VEGA,     )
et al.     )
     )     Case No. 1:06-cv-00734-RBW
          Plaintiffs,     )
     )
     v.     )
     )
GREAT SOCIALIST PEOPLE'S LIBYAN     )
ARAB JAMAHIRIYA, et al.     )
     )
          Defendants.     )

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF LIBYA'S MOTION TO DISMISS THE AMENDED COMPLAINT

Defendant, Great Socialist People's Libyan Arab Jamahiriya a/k/a Libya ("Libya")[1],

through undersigned counsel, respectfully submits this Memorandum of Points and Authorities

in Support of its Motion to Dismiss the Amended Complaint.

I.     **INTRODUCTION**

The Amended Complaint seeks recovery for injuries sustained by the plaintiffs in May

1972, nearly thirty-four (34) years before the Complaint was filed.  Even with the Amendment to

the Complaint and the January 2008 amendment to the FSIA, there are two fully dispositive

reasons to dismiss plaintiffs' claims with prejudice: (1) Libya is immune from suit under the

Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1601, *et seq.*; and (2) the claims, all of

which arose in 1972, are time-barred.  The Amended Complaint suffers from the same

deficiencies that were present in the original Complaint, even if the newly amended § 1605A

applied, which it does not.

---

[1] This Motion to Dismiss and Memorandum in Support is filed on behalf of Libya only because plaintiffs have not
effectuated service upon Colonel Muammar Qadhafi or the Libyan External Security Organization.

A.    **The Court Lacked Jurisdiction Over the Original Complaint.**

The Amended Complaint relies upon the newly enacted 28 U.S.C. § 1605A as the basis

for subject-matter jurisdiction. The Court does not have subject-matter jurisdiction to hear

plaintiffs' claims against Libya under 28 U.S.C. § 1605A(a), because the Court lacked subject-

matter jurisdiction over plaintiffs' original Complaint.

As described in Libya's brief in support of its Motion to Dismiss the original Complaint

(*See* Docket Entry 22, herein), Libya is immune from suit for these plaintiffs' claims because it

was not designated as a state sponsor of terrorism in 1972 and was not later designated as a result

of the act that allegedly caused the plaintiffs' injuries. In addition, plaintiffs' claims were time-

barred under § 1605(a)(7). The recent amendment to the FSIA as part of the National Defense

Authorization Act does not resuscitate plaintiffs' fatally flawed claims. It does not provide

jurisdiction and does not make plaintiffs' stale claims timely. Since the Court lacked subject-

matter jurisdiction to hear plaintiffs' original claims, this action could not have been "adversely

affected" because neither § 1605(a)(7) nor the Flatow Amendment created a cause of action as

required to assert claims under § 1605A.

In the alternative (and at a minimum), the personal injury claims brought by indirect

victims of terrorism must be dismissed because the Court lacks jurisdiction under § 1605A.

B.    **Summary of Factual Allegations.**

The factual allegations demonstrate that the Amended Complaint should be dismissed.

For purposes of this Motion to Dismiss only, and without conceding any of these facts or

waiving any defenses, Libya states the following facts as alleged by plaintiffs and includes

reasonable inferences from those alleged facts.

On April 21, 2006, plaintiffs filed a 13-count Complaint, seeking recovery for injuries

sustained from a terrorist attack that occurred nearly thirty-four (34) years earlier – on May 30,

1972 – at Lod Airport near Tel Aviv, Israel. (Am. Complaint, ¶¶ 6-16). Plaintiffs allege that

Libya and Syria have been designated as state sponsors of terrorism since 1984. (Am.

Complaint, ¶ 17). Allegedly, Libya, Syria and the other defendants provided material support

and resources to organizations such as the Japanese Red Army ("JRA"). According to plaintiffs,

Libya provided this support as part of its "sovereign policy of international terrorism." (Am.

Complaint, ¶ 17, 33). Plaintiffs allege that Libya's acts proximately caused their personal

injuries. (*Id*). Libya and Syria also allegedly provided safe haven to the JRA among other

groups. (Am. Complaint, ¶ 35).

Plaintiffs allege that terrorists associated with the JRA carried out the attack. Two

terrorists died during the attack; one survived and was arrested. (Am. Complaint, ¶ 48). The

terrorist who survived was tried and convicted in Israel. According to plaintiffs, the terrorist

confessed to the attack. (Am. Complaint, ¶ 53). The surviving terrorist allegedly "described the

terrorist training in Syria and the material support the JRA received from all co-Defendants, all

of which is part of his trial record." (Am. Complaint, ¶ 53).

By plaintiffs' own allegations, they had significant information about the attack and the

possible responsible parties as a result of the confession by the surviving terrorist. (Am.

Complaint ¶¶ 53, 54). Consequently, plaintiffs could have and should have brought these claims

long before April 21, 2006.

In complete absence of allegations that establish that an exception to sovereign immunity

applies and in the complete absence of allegations that demonstrate the reasons why plaintiffs

took nearly 34 years to file the original Complaint, the Amended Complaint must be dismissed in

its entirety.

## II.    ARGUMENT

### A.    Summary of Argument.

Plaintiffs are seeking recovery for personal injuries sustained in Israel nearly thirty-four (34) years prior to the filing of the original Complaint.  The Amended Complaint should be dismissed with prejudice pursuant to Fed.R.Civ.P. 12(b)(1) because this Court lacks subject matter jurisdiction.  Libya is immune from suit for these claims under the FSIA and the allegations of the Amended Complaint demonstrate that none of the exceptions to sovereign immunity apply to plaintiffs' claims.

Plaintiffs incorrectly allege that Libya is not immune based on the exception to immunity set forth in 28 U.S.C. § 1605A, newly enacted in January 2008.  This exception to sovereign immunity does not apply to plaintiffs' claims against Libya because Libya was not designated as a state sponsor of terrorism when the act occurred in 1972.  Consequently, this Court does not have subject matter jurisdiction over this matter.  The failure of this exception to apply to this matter is wholly dispositive of the case and the Court need not consider any of other meritorious issues raised in this brief.

For example, the Amended Complaint should also be dismissed pursuant to Fed.R.Civ.P. 12(b)(6) because the nearly 34-year-old claims are time-barred because the statute of limitations has run and plaintiffs have not established that the application of equitable tolling allowed plaintiffs to wait until April 21, 2006 to file the original Complaint.

Both of these arguments are fully dispositive and the Court should dismiss with prejudice the Amended Complaint against Libya in its entirety.[2]

---

[2] In the event that the Court does not agree with Libya's position that there are two fully dispositive bases to dismiss the Amended Complaint, Libya expressly reserves the right to challenge the legal sufficiency of plaintiffs' claims as

**B.    The Amended Complaint Should Be Dismissed Because This Court Lacks Subject Matter Jurisdiction.**

The Amended Complaint should be dismissed, in its entirety, pursuant to Rule 12(b)(1), because this Court does not have subject matter jurisdiction.

The Amended Complaint contends that Libya is subject to suit in the United States District Court pursuant to the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1605A(a)(i).[3]  Plaintiffs admit that Libya is a foreign state, but incorrectly allege that it is not immune from suit because of the exception to sovereign immunity set forth in § 1605A.  The Amended Complaint does not establish that this exception, or any other exception to sovereign immunity, applies to the facts of this case.

It is well-settled that the FSIA is the "sole basis for obtaining jurisdiction over a foreign state in federal court."  *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 439 (1989).  The FSIA grants immunity to "foreign states" as that term is defined by the statute, 28 U.S.C. § 1604.  Section 1604 states in relevant part, ". . . a foreign state shall be immune from the jurisdiction of the courts of the United States and of the States except as provided in sections 1605-1607 of this chapter."  28 U.S.C. § 1604.  The grant of immunity under the FSIA is subject only to the exceptions expressly provided in the FSIA.  *See Doe v. Israel*, 400 F. Supp. 2d 86, 104 (D.D.C. 2005); 28 U.S.C. § 1604.

"Under the FSIA, a foreign state is immune from the jurisdiction of both the federal and the state courts except as provided by . . . nine specifically enumerated exceptions, *see id.*,

---

permitted by the Federal Rules of Civil Procedure.  *See e.g.*, Fed.R.Civ.P. 12(h)(2).

[3] The original Complaint was brought under 28 U.S.C. §§ 1605(a)(2)(5) and (7).  Libya filed a Motion to Dismiss which was briefed and pending when the FSIA was amended.  As more fully described in Libya's original Motion to Dismiss, plaintiffs' claims did not satisfy the criteria of § 1605(a)(2)(5) or (7) and were time-barred when the original Complaint was filed.  The amendment to § 1605 does not salvage or resuscitate plaintiffs' fatally defective claims.

§ 1605(a)(1) through (7), (b), (d), . . . *see, id.*, § 1607.  **If no exception applies, a foreign sovereign's immunity under the FSIA is complete:  The district court lacks subject matter jurisdiction over the plaintiff's case.**  *See, id.*, § 1330(a).  Thus, the sovereign has an immunity from trial and the attendant burdens of litigation, and not just a defense to liability on the merits." *Phoenix Consulting, Inc. v. Republic of Angola*, 216 F.3d 36, 39 (D.C. Cir. 2000) (emphasis added) (citing *Foremost-McKesson, Inc. v. Islamic Republic of Iran*, 905 F.2d 438 (D.C. Cir. 1990)).  The plaintiffs incorrectly allege that this Court has jurisdiction over the claims against Libya pursuant to § 1605A(a)(i) of the FSIA.  The allegations in the Amended Complaint do not fall within this provision, or **any** of the exceptions to sovereign immunity.

The Terrorism Exception to sovereign immunity, which was originally enacted in 1996 as § 1605(a)(7), was amended in January of 2008 and replaced with § 1605A.  The amended provision is a vehicle for nationals of the United States injured or killed by acts of terrorism to pursue a claim for money damages in the United States if certain criteria are met.  It states:

> "§ 1605A.    **Terrorism exception to the jurisdictional immunity of a foreign state**
>
> "(a)    IN GENERAL.–
>
> > "(1)    NO IMMUNITY.–A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case not otherwise covered by this chapter in which money damages are sought against a foreign state for personal injury or death that was caused by an act of torture, extrajudicial killing, aircraft sabotage, hostage taking, or the provision of material support or resources for such an act if such act or provision of material support or resources is engaged in by an official, employee, or agent of such foreign state while acting within the scope of his or her office, employment, or agency.
> >
> > "(2)    CLAIM HEARD.–The court shall hear a claim under this section if–
> >
> > > "(A)(i)(I) **the foreign state was designated as a state sponsor of terrorism at the time the act described in paragraph (1) occurred, or was so designated as a result of such act**, and, subject to

>subclause (ii), either remains so designated when the claim
>is filed under this section or was so designated within the 6-
>month period before the claim is filed under this section; or
>                "(II) in the case of an action that is
>refiled under this section by reason of section
>1083(c)(2)(A) of the National Defense Authorization Act
>for Fiscal Year 2008 or is filed under this section by reason
>of section 1083(c)(3) of that Act, the foreign state was
>designated as a state sponsor of terrorism when the original
>action or the related action under section 1605(a)(7) (as in
>effect before the enactment of this section) or section 589
>of the Foreign Operations, Export Financing, and Related
>Programs Appropriations Act, 1997 (as contained in
>section 101(c) of division A of Public Law 104-208 was
>filed; . . . ."

28 U.S.C. § 1605A (emphasis added). Though it replaced § 1605(a)(7), § 1605A does not

change the primary prerequisite to the exception to immunity – that the foreign state was

designated as a state sponsor of terrorism "at the time the act . . . occurred or was later so

designated as a result of such act."

"This exception applies only if the defendant foreign state was designated as a state

sponsor of terrorism at the time the alleged acts of torture occurred." *Acree v. Republic of Iraq*,

370 F.3d 41, 44 (D.C. Cir. 2004) (citing 28 U.S.C. § 1605(a)(7)(A)). Plaintiffs allege that Libya

has been designated a state sponsor of terrorism since 1984. (Am. Complaint, ¶ 17).[4]

Plaintiffs cannot establish that the terrorism exception to sovereign immunity applies to

Libya in this case. At the time of the incident, May 30, 1972, Libya was not designated as a state

sponsor of terrorism. Moreover, plaintiffs have not alleged that Libya was designated as a state

sponsor of terrorism – seven years later – as a result of such act. In other words, there are no

allegations that the attack at the Lod Airport, and Libya's alleged involvement in that attack was

the reason that Libya was designated as a state sponsor of terrorism seven years later. Without

such facts, the Amended Complaint does not establish that the exception to immunity found in

---

[4] Libya was placed on the state sponsor of terrorism list on December 29, 1979 and removed from the list in 2006.

§ 1605A(a)(i) applies to Libya for these claims.

The Amended Complaint alleges that "Defendants [Syria] and [Libya] are foreign states designated "state sponsors of terrorism" within the meaning of the Export Administration Act . . . and the Foreign Assistance Act . . . **since January 19, 1984**, as the term "states sponsors of terrorism" is defined under 28 U.S.C. § 1605A and 28 U.S.C. § 1605, note . . ." (Am. Complaint, ¶ 17) (emphasis added). There are no allegations (and plaintiffs have not shown in their response to defendant's Motion to Dismiss the original Complaint) that Libya was so designated as a result of the attack at the Lod Airport. Because they cannot make such a showing, § 1605(a)(7) did not apply and § 1605A does not apply and cannot be the basis for this Court to exercise subject matter jurisdiction over the plaintiffs' claims. *See, Roeder v. Islamic Rep. of Iran*, 195 F. Supp. 2d 140, 159-160 (D.D.C. 2002) (the court did not have jurisdiction over the plaintiffs' claims against Iran relating to the 1979-1980 hostage taking because Iran was not on the state sponsor of terrorism list at that time).

The language of the statute is clear and unequivocal. The court shall hear a claim under this section only if "the foreign state was designated as a state sponsor of terrorism at the time the act described [above] occurred, or was designated as a result of such act." § 1605A(a)(2). Plaintiffs admit that their claims against Libya do not satisfy this requirement. Plaintiffs admit that Libya was not designated as a state sponsor of terrorism in 1972 and plaintiffs have alleged no facts to support that Libya was later designated as a result of the attack at Lod Airport or made any showing of that fact in response to defendant's Motion to Dismiss the original Complaint. The plaintiffs allege simply that Libya was designated as a state sponsor of terrorism in 1984 and that Libya provided "material support and resources to international terrorist organizations." (Am. Complaint, ¶ 17). These allegations are not sufficient to satisfy the

requirements of § 1605A. *See, Roeder*, 195 F. Supp. 2d at 161 (general allegations that a sovereign was later designated as a state sponsor of terrorism because of support for terrorism do not satisfy state sponsor of terrorism exception).

The FSIA codified the restrictive view of sovereign immunity and the exceptions to immunity are not to be casually applied. *See generally, Republic of Argentina v. Weltover, Inc.*, 504 U.S. 607, 612 (1992). On the contrary, the exceptions to immunity set forth in the FSIA, including § 1605A, are to be carefully analyzed before being applied. It is well settled that if the claims asserted in a particular complaint do not fall within an exception to immunity, then the sovereign enjoys immunity and the Court does not have jurisdiction. *See, Phoenix Consulting*, 261 F.3d at 39.

Plaintiffs have not alleged and cannot demonstrate that Libya was included on the State Sponsor of Terrorism List in 1972 or that it was later added as a result of the attack at the Lod Airport in May 1972. Consequently, plaintiffs cannot rely on this exception to sovereign immunity and the Amended Complaint should be dismissed. The failure of plaintiffs to meet this "state sponsor of terrorism" requirement for subject matter jurisdiction under 28 U.S.C. § 1605A (as they failed previously under § 1605(a)(7) is dispositive of this case.

C.    **Plaintiffs' Amended Complaint Does not Meet the Requirements of 28 U.S.C. § 1605A.**

Section 1605A was created by § 1083 of the National Defense Authorization Act of 2008, Pub L. No. 110-181 (the "2008 Defense Act"). The Terrorism Exception to Immunity found in § 1083 of the Defense Act amends the FSIA in certain respects. (A copy of § 1083 of the National Defense Authorization Act of 2008 is attached hereto as Exhibit A). Among other things, § 1605A creates a new cause of action for certain types of terrorism-related claims against foreign states, and repeals former § 1605(a)(7) and § 1605(f). *See* 28 U.S.C. 1605A(c)

9

and § 1083(b).  By filing their Amended Complaint, plaintiffs seem to believe that the new

legislation applies retroactively to their claims.  However, plaintiffs' claims under § 1605A are

barred by the express language of § 1083(c) entitled "Application to Pending Cases".  The new

legislation's provision of application to pending cases does not apply to the present case.

Plaintiffs' claims were not "adversely affected" by the lack of a cause of action against Libya

under either § 1605(a)(7) or the Flatow Amendment.  Therefore, the "prior actions" provision of

§ 1083(c)(2)(A) does not apply in this case.  In addition, plaintiffs cannot show that a separate

action arising out of an act or incident has been timely commenced pursuant to 28 U.S.C. §

1605(a)(7) as required in order to bring new claims as a "related action" under § 1083(c)(3). [5]

Therefore, the newly enacted § 1605A does not apply to plaintiffs' action.

    1.      **Section 1083(c), the "Application to Pending Cases"**
             **Provision of the Revised Legislation, by its Express Terms**
             **Does not Apply to Plaintiffs' Complaint.**

        Plaintiffs seemingly have filed their Amended Complaint under the mistaken belief that

the new legislation applies "retroactively" to their Complaint, and that they are entitled to re-file

their claims based upon § 1083(c).  However, the language of Section 1083(c) and the plain

meaning of the statute is clear that Congress did not intend the provisions of  that section to

apply to the present case.

        Section 1083(c) is entitled "Application to Pending Cases" and states in relevant part:

        (c) Application to Pending Cases-

        (1) IN GENERAL- The amendments made by this section shall
        apply to any claim arising under section 1605A of title 28, United
        States Code.

---

[5] Plaintiffs filed their Amended Complaint as a matter of right pursuant to Fed.R.Civ.P. 15(a).  Accordingly, the
grounds upon which plaintiffs base their § 1605A claims against defendant are unknown at this time.  Nonetheless,
as shown below, plaintiffs do not meet the criteria of any subsection of § 1083(c) which could arguably apply to the
facts of this case and plaintiffs' § 1605A claims should therefore be dismissed.

(2) PRIOR ACTIONS-

(A) IN GENERAL- With respect to any action that--

(i) was brought under section 1605(a)(7) of title 28, United States Code, or section 589 of the Foreign Operations, Export Financing, and Related Programs Appropriations Act, 1997 (as contained in section 101(c) of division A of Public Law 104-208), before the date of the enactment of this Act,

(ii) *relied upon either such provision as creating a cause of action,*

(iii) *has been adversely affected on the grounds that either or both of these provisions fail to create a cause of action against the state, and*

(iv) as of such date of enactment, is before the courts in any form, including on appeal or motion under rule 60(b) of the Federal Rules of Civil Procedure, that action, and any judgment in the action shall, on motion made by plaintiffs to the United States district court where the action was initially brought, or judgment in the action was initially entered, be given effect as if the action had originally been filed under section 1605A(c) of title 28, United States Code.

Pub. Law No. 110-181, § 1083(c)(1-2) (emphasis added).

As such, Section 1083(c) allows for retroactive application of Section 1605A(c) to only a limited number of "prior actions" that satisfy the express statutory criteria set forth in Section 1083(c)(2)(A). Its conditional nature contrasts with the type of unequivocal statements the Supreme Court previously has found to provide the blanket retroactive application that plaintiffs seek. *Compare with Lindh v. Murphy*, 521 U.S. 320, 329 n.4 (1997) (identifying the following as an example of a statement that might qualify as sufficiently clear to have retroactive effect: "[This Act] shall apply to *all* proceedings pending on or commenced after the date of enactment of this Act.") (emphasis added) (quoting *Landgraf v. USI Film Prods.*, 511 U.S. 244, 260 (1994)); *Fernandez-Vargas v. Ashcroft*, 126 S. Ct. 2422, 2428 (2006) (explaining that courts

11

apply the presumption against retroactivity by construing a statute as inapplicable to a past act "in the absence of a clear indication from Congress that it intended such a result") (citation omitted).   Because retroactive application of 28 U.S.C. § 1605A to all cases may not be presumed – indeed, Congress intentionally limited its application to a particular subset of cases that fit the criteria of Section 1083(c)(2)(A), *see Schumann v. C.I.R.*, 857 F.2d 808, 811 (D.C. Cir. 1988) (stating that "under the maxim *expression unius exclusion alterius*, Congress' specific enumeration of certain exceptions indicates that no other exceptions were intended") – plaintiffs may only bring a claim under 28 U.S.C. § 1605A if they meet certain criteria, which here they do not.

Plaintiffs' original Complaint did not rely upon either 28 U.S.C. § 1605(a)(7) or section 589 of the Foreign Operations, Export Financing, and Related Programs Appropriations Act, 1997 (the "Flatow Amendment")[6] as creating a cause of action as required by § 1083(c)(2)(A)(ii).  Therefore, plaintiffs' original Complaint does not meet the requisite criteria set forth in § 1083(c)(2)(A)(ii) and does not qualify as a "prior action" as defined by § 1083(c). The language of § 1083(c)(2)(A)(ii) is clear and unambiguous; its provisions are plainly inapplicable to the facts of this case.  *See Kaiser Aluminum & Chem. Corp. v. Bonjorno*, 494 U.S. 827, 835 (1990) ("The starting point for the interpretation of a statute is the language of the statute itself.  Absent a clearly expressed legislative intention to the contrary, that language must ordinarily be regarded as conclusive.") (citation omitted).

---

[6] Plaintiffs' original Complaint alleged common law and/or statutory claims for battery (Count I), assault (Count II), false imprisonment (Count III), intentional infliction of emotional distress (Count IV), civil conspiracy (Count VII), wrongful death (Count V) and survival damages (Count VI), civil conspiracy (Count VII), civil RICO claims pursuant to 18 U.S.C. § 1962(a) and (d) (Count VIII), aiding and abetting (Count IX), willful and wanton misconduct (Count X), loss of consortium and solatium (Count XI), economic damages (Count XII), and punitive damages (Count XIII).  The original Complaint generally alleged that certain unnamed individual defendants ("John Does 1-99") acting as agents of Libya and Syria performed acts within the scope of their agency.  *See e.g.*, Complaint ¶¶ 60, 68, 76, 83, etc.  However, the original Complaint did not rely upon the Flatow Amendment as creating a cause of action against Libya.

In addition, because plaintiffs did not rely upon 28 U.S.C. § 1605(a)(7) or the Flatow

Amendment as creating a cause of action, their Complaint was not adversely impacted on the

grounds that 28 U.S.C. § 1605(a)(7) or the Flatow Amendment failed to create a cause of action.

*See* § 1083(c)(2)(A)(iii). Accordingly, § 1083(c)(2)(A)(iii) is inapplicable to the facts of this

case. Because §§ 1083(c)(2)(A)(ii-iii) do not apply to plaintiffs' original Complaint in this

matter, § 1083(c)(2)(A) is inapplicable in its entirety as it requires plaintiffs to satisfy each

respective subpart.

### 2. Because Plaintiffs' Original Action Was Untimely, They Were Not "Adversely Affected" as Required Under Section 1083(c)(2)(A)(iii).

In addition, as explained in detail in Section D below, this action was untimely when

filed, and the amendments to the FSIA do not change that fact. On the face of the First Amended

Complaint, Plaintiffs' claims arose on May 30, 1972. This action was not commenced until

April 21, 2006, almost 34 years later.

When this action was filed, subject-matter jurisdiction rested exclusively upon 28 U.S.C.

§ 1605(a)(7), and 28 U.S.C. § 1605(f) set forth a specific limitations period for actions brought

under § 1605(a)(7):

> No action shall be maintained under subsection (a)(7) unless the
> action is commenced not later than 10 years after the date on which
> the cause of action arose. All principles of equitable tolling,
> including the period during which the foreign state was immune
> from suit, shall apply in calculating this limitation period.

28 U.S.C. § 1605(f).

Plaintiffs' action plainly was not brought within 10 years of the time when the cause of

action arose. Nor were Plaintiffs' claims saved through principles of equitable tolling; this Court

has specifically held that "equitable tolling under § 1605(f) does not bring about an automatic

extension of the statute of limitations by the length of the tolling period. Instead, the doctrine

13

provides extra time to a plaintiff only if it is needed, and only for a reasonable period." *Estate of Buonocore v. Great Socialist People's Libyan Arab Jamahiriya*, No. 06-727 (GK), 2007 WL 2007509, at *2 (D.D.C. July 9, 2007) (internal quotation omitted) (dismissing action filed in 2006 as untimely under § 1605(f) where cause of action arose in 1985); *see also Vine v. Republic of Iraq*, 459 F. Supp. 2d 10, 22 (D.D.C. 2006) (dismissing action filed in 2001 as untimely under § 1605(f) where cause of action arose in 1990, at the latest). Because Plaintiffs' action was untimely, the Court lacked subject-matter jurisdiction under Section 1605(a)(7). *See Sinochem Int'l Co. v. Malay Int'l Shipping Corp.*, 127 S. Ct. 1184, 1191 (2007) ("'Without jurisdiction the court cannot proceed at all in any cause'; it may not assume jurisdiction for the purpose of deciding the merits of the case.") (quoting *Steel Co. v. Citizens for Better Env't*, 523 U.S. 83, 94 (1998)).

Invocation of the newly enacted Section 1605A does not transform Plaintiffs' jurisdictionally deficient action into a viable one. In any event, Plaintiffs have not satisfied the statutory criteria to bring their action within Section 1605A(c).

Section 1083(c)(2)(A), relating to "prior actions," allows retroactive application of Section 1605A(c), only if, among other things, those actions were "adversely affected" by the lack of a federal cause of action against the state under Section 1605(a)(7) or the Flatow Amendment. 28 U.S.C. § 1605A note (Section 1083(c)(2)(A)(iii)). Section 1083(c)(2)(A) does *not* revive cases that had jurisdictional defects that prevented the court from even considering causes of action.

Because Section 1605(a)(7) was "merely a jurisdiction conferring provision that does not otherwise provide a cause of action," *Cicippio-Puleo v. Islamic Republic of Iran*, 353 F.3d 1024, 1032 (D.C. Cir. 2004), an action that did not satisfy all requirements set forth in Section

14

1605(a)(7) lacked subject-matter jurisdiction.  Those requirements include the timeliness

requirements of former Section 1605(f), which was expressly tied to Section 1605(a)(7).  *See*

*John R. Sand & Gravel Co. v. United States*, 128 S. Ct. 750, 753 (2008) (describing a statute of

limitations "limiting the scope of a governmental waiver of sovereign immunity" as

"jurisdictional") (citations omitted).

      **3.**      **Plaintiffs May Not File A "Related Action" Arising From The**
                      **May 30, 1972 Attack Because Their Original Complaint**
                      **Was Not Timely Filed Pursuant To 28 U.S.C. § 1605(a)(7).**

Section 1083 contains a provision which purportedly permits the filing of a new action

provided there was a previously filed action arising out the same act or incident.  This provision

does not apply here.  The "Related Actions" provision of § 1083 states as follows:

> (3) RELATED ACTIONS- If an action arising out of an act or
> incident has been ***timely commenced under*** <u>***section 1605(a)(7)***</u> of
> title 28, United States Code, or section 589 of the Foreign
> Operations, Export Financing, and Related Programs
> Appropriations Act, 1997 (as contained in section 101(c) of
> division A of Public Law 104-208), any other action arising out of
> the same act or incident may be brought under section 1605A of
> title 28, United States Code, if the action is commenced not later
> than the latter of 60 days after--
>
>  (A) the date of the entry of judgment in the original action; or
>
>  (B) the date of the enactment of this Act.

Pub. Law No. 110-181, § 1083(c)(3) (emphasis added).  In order for plaintiffs to be permitted to

file a new Complaint as a "related action", their original Complaint must have been ***timely*** filed

pursuant to Section 1605(a)(7).  As shown below, as well as in defendant's Motion to Dismiss

the original Complaint, plaintiffs' claims were not timely filed under Section 1605(a)(7).

Importantly, the Amended Complaint is not a "related action" - it is the **same action**.

The Amended Complaint asserts the same claims, on behalf of the same plaintiffs against the

same defendants arising out of the same incident. The provisions of Section 1083(c)(3) do not

permit plaintiffs in a pending action to file an Amended Complaint with identical claims arising

out the same incident. Section 1083(c)(3) simply states that "any *other action* arising out of the

same act or incident may be brought under section 1605A . . ." (emphasis added). Plaintiffs have

not brought *another action* pursuant to Section 1083(c)(3), but rather have simply brought

identical claims under § 1605A as those asserted in their original Complaint. Section 1083(c)(3)

contemplates the filing of "Related Actions" only, not the refiling of identical claims.

Based upon the foregoing, plaintiffs cannot simply re-file their Complaint by asserting

new claims under § 1605A as a "related action" to their previous Complaint. Section 1083(c)(3)

does not apply to the present matter and the Amended Complaint should be dismissed.

**D.    The Amended Complaint Should Be Dismissed Against Libya Because The Plaintiffs' Claims Are Time-Barred.**

Even if the Court determines that it has subject matter jurisdiction, the plaintiffs' claims

against Libya should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) because all of the claims

are time-barred. *See Nat'l R.R. Passenger Corp. v. Lexington Ins. Co.*, 357 F. Supp. 2d 287,

292 (D.D.C. 2005) ("[a] defendant may raise the affirmative defense of a statute of limitations

via a Rule 12(b)(6) motion when the facts giving rise to the defense are apparent on the face of

the complaint."). As shown above, plaintiffs' Complaint does not meet the requirements of 28

U.S.C. § 1605A. To the extent that plaintiffs have any viable claims against defendant

remaining, those claims must proceed pursuant to § 1605(a)(7). Therefore, the applicable

limitations period for plaintiffs' claims is contained in 28 U.S.C. § 1605(f). As shown in

defendant's Motion to Dismiss plaintiffs' original Complaint, plaintiffs' claims are time-barred

pursuant to the express terms of § 1605(a)(7) and all claims against Libya should be dismissed

with prejudice.

Plaintiffs filed their original Complaint on April 21, 2006. The personal injuries for which plaintiffs seek recovery occurred on May 30, 1972, nearly 34 years before their original Complaint was filed. Even under the most lengthy statute of limitations, plaintiffs' claims are stale. In addition, plaintiffs have not established that the doctrine of equitable tolling applies to the facts of this case or that they can allege facts which would warrant their delay of nearly ten years in filing suit after any impediment to filing suit was removed (*e.g.*, the enactment of Section 1605(a)(7) on April 24, 1996). Plaintiffs' claims are time-barred and the Amended Complaint should be dismissed with prejudice.

1.    **The Statute of Limitations Began to Run from the Date on which Plaintiffs' Claims Arose, May 30, 1972.**

The 10-year statute of limitations period begins to run when the cause of action arose. "Under the FSIA, the key question is when the claim 'arose,' that is, when the events in question occurred." *Estate of Buonocore*, 2007 WL 2007509 LEXIS 49031 at *2; *see also Vine*, 459 F. Supp. 2d at 21 ("A claim 'arises' on the date that the action in question occurred, yet does not 'accrue' until a prior disability to suit is removed."). Therefore, plaintiffs' claims in the case before this Court arose on May 30, 1972, the date of the alleged attack, and the 10-year statute of limitations began to run on that date.

Well settled principles of statutory construction require that a statute must be construed such that, "no clause, sentence, or word shall be superfluous, void, or insignificant." *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) (citation omitted); *see also Qi-Zhuo v. Meissner*, 70 F.3d 136, 139 (D.C. Cir. 1995) (No words in a statute should be rendered superfluous, consistent with the "endlessly reiterated principle of statutory construction . . . that all words in a statute are to be assigned meaning, and that nothing therein is to be construed as surplusage."); *National Insulation Transp. Committee v. I.C.C.*, 683 F.2d 533, 537 (D.C. Cir. 1982) ("Moreover, a court

17

must, if possible, give effect to every phrase of a statute so that no part is rendered superfluous."). Any contention that plaintiffs' cause of action did not arise until the passage of the terrorism exception to the FSIA is inconsistent with the plain text of statute. Any such interpretation of the statute of limitations and application of the principle of equitable tolling under the FSIA would render the second clause of § 1605(a)(7) superfluous and without meaning.

As shown above, the statute of limitation for FSIA claims brought pursuant to § 1605(a)(7) is set forth in § 1605(f). Section 1605(f) of the FSIA states:

> No action shall be maintained under subsection (a)(7) unless the action is commenced not later than 10 years after the date on which the cause of action arose. All principles of equitable tolling, including the period during which the foreign state was immune from suit, shall apply in calculating this limitation period.

28 U.S.C. § 1605(f). In their Opposition to defendant's Motion to Dismiss the original Complaint, plaintiffs argued that "this Court should conclude that Congress intended the ten-year statutory period for claims under the FSIA's terrorism exception to begin to run only upon the waiver of sovereign immunity." Pl.'s Opp. at 53. However, to do so would render the second clause of § 1605(f) superfluous and without meaning.

The text of § 1605(f) states that plaintiffs shall have *10 years from the date upon which the cause of action arose.* If it was indeed Congress' intent for claims under the terrorism exception to the FSIA to arise on April 24, 1996, then there would have been no need for Congress to include an equitable tolling provision in the statute since the 10 year statute of limitations would not have begun to run until the passage of § 1605(a)(7). The only reasonable interpretation of the *entire text* of § 1605(f) is that plaintiffs' cause of action arose on May 30, 1972 and that the ten year period ran, uninterrupted, from that date.

This reading of the statute is supported by the 1996 amendment to the FSIA, that included a retroactivity provision which states that Sections 1605(a)(7) and 1605(f) "shall apply

to any cause of action arising before, on, or after the date of enactment of this Act." Pub. L. No.

104-132, 110 Stat. 1214, 1243 (codified as amended at 28 U.S.C. § 1605(a)(7)).  Clearly,

Congress intended for the date of the occurrence to be the date on which the cause of action

arose under § 1605(a)(7), even if the occurrence occurred before the passage of the terrorism

exception to the FSIA.  Plaintiffs' position that their cause of action arose under § 1605(a)(7) on

April 24, 1996 is therefore contrary to Congressional intent as reflected in the language of the

statute and must be rejected.  *See Kaiser Aluminum & Chem. Corp.*, 494 U.S. at 837.

### 2. The Doctrine of Equitable Tolling Tolls the Statute of Limitations for a Reasonable Period after an Impediment to Suit is Removed.

The *Buonocore* case is strikingly similar to this case and was filed on the same date as

this case – April 21, 2006.  In that case, Judge Kessler was faced with a motion to dismiss based

on the statute of limitations, also filed on behalf of Libya.  The plaintiffs in *Estate of Buonocore*

sought recovery for personal injuries sustained in December 1985.  Despite the fact that the

cause of action arose in 1985, the plaintiffs waited until April 21, 2006 to file their complaint.

Judge Kessler rejected the plaintiffs' arguments that they had ten years from the April 1996

enactment of Section 1605(a)(7) or that equitable tolling provided them with ten years from that

time.  Judge Kessler also followed the binding precedent in this Circuit, *Phillips v. Heine*, 984

F.2d 489 (D.C. Cir. 1993), in concluding that equitable tolling permits the plaintiffs to

"commence suit with in a reasonable period of time after Congress enacted 28 U.S.C. §

1605(a)(7) in April 1996, which waived sovereign immunity for Libya.  Congress did not create

an automatic extension of the statute of limitations by the length of the tolling period." *Estate of*

*Buonocore,* 2007 WL 2007509 at *3 (*citing Phillips*, 984 F.2d at 492).

Judge Kessler concluded that to benefit from equitable tolling, the plaintiffs need to

demonstrate that a time period is reasonable.  This conclusion is well supported by the case law

analyzing and applying the doctrine of equitable tolling. Equitable tolling is an equitable

principle that extends the period within which a plaintiff may file a claim. The burden is on the

plaintiff to demonstrate that it is entitled to equitable tolling. *Arce v. Garcia*, 434 F.3d 1254,

1261 (11th Cir. 2006). The plaintiff bears this burden because equitable tolling is an exception

to the rule of the statute of limitations, not the rule itself. Equitable tolling is only appropriate in

extraordinary circumstances. *Id.* (citing *Sandvik v. United States*, 177 F.3d 1269, 1271 (11th Cir.

1999). The D.C. Circuit has instructed that even "where a plaintiff establishes circumstances

justifying equitable tolling, the plaintiff is given extra time '*only* if he needs it.'" *Vine*, 459 F.

Supp. 2d at 22 (quoting *Phillips,* 984 F.2d at 492) (emphasis in original). Moreover, if the

plaintiff does not need extra time, the D.C. Circuit has held that "there is no basis for depriving

the defendant of the protection of the statute of limitations." *Phillips*, 984 F.2d at 492.

Importantly, equitable tolling "does not bring about an automatic extension of the statute of

limitations by the length of the tolling period." *Id.* The court should only "extend the time for

filing by a reasonable period after the tolling circumstance [is] mended." *Id.* "*The purposes of

the doctrine are fully achieved if the court extends the time for filing by a reasonable period after

the tolling circumstance is mended.*" *Id.* at 492 (emphasis added, citations and internal

quotations omitted).

     Equitable tolling does not operate to give plaintiffs a period of 10 years from the date of

the enactment of § 1605(a)(7) to file a complaint. There is no substantive support in any case or

in the legislative history for the position that plaintiffs had 10 years after the enactment of §

1605(a)(7) to file their claims. This Court should follow the reasoned analysis in *Estate of

Buonocore* and *Vine*, both of which followed the binding *Phillips* decision.

     In their Opposition to Libya's Motion to Dismiss the original Complaint, plaintiffs

argued that the decision in *Phillips* is distinguishable from the facts of this case because *Phillips*

analyzed equitable tolling under the Death on the High Seas Act ("DOSHA"), not the FSIA.

Pl.'s Opp. at 49. As Judge Kessler noted in *Estate of Buonocore*:

> [N]othing in *Phillips* indicates that its treatment of equitable tolling
> was limited to the Death on the High Seas Act. Indeed, the Phillips
> court, in discussing the contours of the equitable tolling doctrine,
> cited a number of cases involving a wide variety of statutes. 984
> F.2d at 491 (citing e.g., *Burnett v. New York Cent. R.R. Co.*, 380
> U.S. 424, 85 S. Ct. 1050, 13 L. Ed. 2d 941 (1965) (Federal
> Employers' Liability Act); *Cada v. Baxter Healthcare Corp.*, 920
> F.2d 446 (7th Cir. 1990) (Age Discrimination in Employment Act);
> *Hill v. Texaco, Inc.*, 825 F.2d 333 (11th Cir. 1987) (Petroleum
> Marketing Practices Act); *Timoni v. United States*, 135 U.S. App.
> D.C. 407, 419 F.2d 294 (D.C. Cir. 1969) (National Service Life
> Insurance Act)). Given the wide variety of statutory schemes
> involved in these cases and the broad language used by the Court
> of Appeals, it is difficult to construe the Phillips court's discussion
> of equitable tolling as only limited to the Death on the High Seas
> Act.

*Estate of Buonocore*, 2007 WL 2007509 at *3. The scope of the decision in *Phillips* goes

beyond DOSHA and applies to the doctrine of equitable tolling itself. In fact, since deciding

*Phillips*, the D.C. Circuit has reiterated that equitable tolling is to be allowed in extraordinary

cases only, and that the doctrine does not suspend the statute of limitations. *See*

*Communications Vending Corp. of Ariz. v. F.C.C.*, 365 F.3d 1064, 1075 (D.C. Cir. 2004) ("We

too have set a high hurdle for equitable tolling, allowing a statute to be tolled only in

extraordinary and carefully circumscribed instances.") (internal citation omitted); *see also Chung*

*v. Dep't of Justice*, 333 F.3d 273, 279 (D.C. Cir. 2003) (stating that equitable tolling "merely

ensures that the plaintiff is not, by dint of circumstances beyond his control, deprived of a

reasonable time in which to file suit.") (internal citation omitted).

Plaintiffs have not and cannot present facts that demonstrate that 10 years from the

enactment of § 1605(a)(7) is a reasonable time for them to file suit. In both their original

21

Complaint and the Amended Complaint, plaintiffs admit that they had access to information and facts allegedly supporting their claims as early as the mid-1970s when the terrorist who participated in the attack was tried and convicted in Israel. *See* Complaint ¶¶ 53, 54; Amended Complaint ¶¶ 53, 54. Consequently, even assuming that the plaintiffs could not file this case until after § 1605(a)(7) was enacted, they could have done so shortly thereafter.

Plaintiffs allege no facts as to why they had to wait until April 21, 2006 – just 3 days before the 10 year anniversary of the enactment of Section 1605(a)(7) – to file their original Complaint. There is absolutely no factual support presented by plaintiffs that 10 years after the enactment of § 1605(a)(7), and nearly 34 years after the cause of action arose, is a reasonable time to bring their claims.

### 3. Plaintiffs' Claims Are Time-Barred even if the Doctrine of Equitable Tolling Suspended the Running of the Statute of Limitations.

Assuming, *arguendo*, that the statute of limitations is suspended during the period of time in which Libya was immune from suit, plaintiffs' claims are nonetheless time-barred. It is undisputed that the personal injuries for which plaintiffs seek recovery occurred on May 30, 1972. Significantly, Libya was not immune from suit on the date of the alleged occurrence. FSIA, passed on October 21, 1976, confers immunity on foreign states and its political subdivisions. Prior to the enactment of FSIA, courts "consistently...deferred to the decisions of the political branches – in particular, those of the Executive Branch – on whether to take jurisdiction over actions against foreign sovereigns and their instrumentalities." *Verlinden B.V. v. Cent. Bank of Nigeria*, 461 U.S. 480, 486 (1983). Moreover, the "Executive Branch's suggestion of immunity [was] conclusive and not subject to judicial inquiry." *Ye v. Zemin*, 383 F.3d 620, 625 (7th Cir. 2004) (citation omitted). In contrast, the passage of the FSIA "transferred the responsibility for case-by-case application of [immunity] principles from the Executive

22

Branch to the Judicial Branch." *United States v. Noriega*, 117 F.3d 1206, 1212 (11th Cir. 1997).

Plaintiffs would have this Court believe that Libya was immune from suit until the enactment of § 1605(a)(7) of the FSIA on April 24, 1996. Plaintiffs are incorrect. It is undisputed that the statutory provisions of immunity under the FSIA did not apply to plaintiffs' claims at the time of the alleged attack, May 30, 1972 because the FSIA first provided statutory immunity to foreign sovereigns in 1976. Libya was not immune from suit at the time of the attack. Moreover, Libya was not immune from plaintiffs' claims from the time of the alleged attack until the enactment of the FSIA, a period of more than four years. Simply stated, there was no impediment to plaintiffs bringing their claims for at least a four year period prior to the enactment of the terrorism exception to the FSIA.

In the case before this Court, it is undisputed that plaintiffs' claims arose on May 30, 1972. Therefore, the 10-year statute of limitations began to run on the date of the alleged attack as there was no impediment to plaintiffs bringing their claim at that time. Applying the facts of this case to plaintiffs' argument that the statute of limitations was suspended during the time period that Libya was immune from suit, plaintiffs' Complaint was still filed beyond the 10-year statute of limitations. The clock ran for a period of more than four years from May 30, 1972 until the enactment of the FSIA on October 21, 1976. So even if the statute of limitations was suspended during the time period in which Libya was immune from suit, as incorrectly argued by the plaintiffs, then plaintiffs had less than six years after the enactment of § 1605(a)(7) of the FSIA on April 24, 1996 to bring their claims, or until approximately January 2002. As mentioned above, plaintiffs filed their action in 2006.

In this Circuit, it is the plaintiffs' burden to show that equitable tolling applies and that the time period was reasonable. Plaintiffs have completely failed to meet their burden.

Moreover, plaintiffs cannot meet their burden because there is no set of facts that would support

the position that 10 years after the enactment of § 1605(a)(7) is a reasonable time.  Therefore, all

of plaintiffs' claims are time-barred and Libya's Motion to Dismiss should be granted.

**E.     The FSIA Does Not Provide Subject-Matter Jurisdiction Over Claims Brought by Indirect Victims of Terrorism.**

The Court also lacks subject-matter jurisdiction over the personal claims of Plaintiffs'

Damaris E. Vega Morales, Vasthi Noemi Vega Morales, Carlos Guzman Rosado, Mariano

Guzman Rosado, Tomas Guzman Rosado, Rosa Maria Guzman Rosado, Angel M. Rodriguez

Robles, Eliezer Rodriguez Robles, Ruth D. Rodriguez Robles, Maria M. Rodgriguez Robles,

Noemi Rodriguez Robles, Pedro Padilla Ortiz, Victor Padilla Ortiz, Elizabeth Padilla Ortiz,

Laura Padilla Ortiz, Sarah Padilla Ortiz, Zelideth Padilla Ortiz and Nelson Andres Padilla Ortiz.

as well as the claims of Rev. Jose Vega Franqui, Rosa Maria Guzman Rosado, Noemi Rodriquez

Robles, Victor Padilla Ortiz, and Efrain Berganzon Cruz within their individual capacities as

relatives of the deceased victims.   According to the allegations of the Amended Complaint,

these plaintiffs ("indirect victims") are relatives of the deceased victims of the terrorist attack

asserting secondary claims in their personal capacities.  Section 1605A of the FSIA, however,

does not create an exception to foreign sovereign immunity for the secondary claims of indirect

victims of terrorist acts, *i.e.*, the claims of family members, asserted in their personal capacities.

Section 1605A(a) (like former § 1605(a)(7)) withdraws FSIA immunity in cases "in

which money damages are sought against a foreign state for personal injury or death that was

caused by an act of torture, extrajudicial killing, aircraft sabotage, hostage taking, or the

provision of material support or resources for such an act . . . ."  Section 1605A(a) of the FSIA,

however, does not create an exception to foreign sovereign immunity for the secondary claims of

indirect victims of terrorist acts, *i.e.*, the claims of family members, asserted in their personal

capacities. *See* Sec. Am. Compl. ¶¶ 6-27. The inability of the indirect-victim Plaintiffs to bring

their claims within 28 U.S.C. § 1605A(a) (or former Section 1605(a)(7)) warrants dismissal of

their claims under both Rule 12(b)(1) and Rule 12(b)(6) of the Federal Rules of Civil Procedure.

Whether the term "personal injury" on its face encompasses only physical injury or also

emotional injury is ambiguous. *See, e.g., O'Gilvie v. United States*, 519 U.S. 79, 89 (1996)

(explaining that Congress amended the Internal Revenue Code "to clarify" that the phrase

"personal injuries or sickness," as used in a gross income exclusion provision, did not include

nonphysical injuries or sickness) (citations omitted); *Kalil v. Johanns*, 407 F. Supp. 2d 94, 100

(D.D.C. 2005) (explaining that the D.C. Circuit has not addressed a circuit split as to whether the

Federal Employees' Compensation Act's provision for "injury or death" includes nonphysical

injuries); *Yanco v. United States*, 258 F.3d 1356, 1363 (Fed. Cir. 2001) ("To begin with, it

appears that, as far as state workmen's compensation laws are concerned, the term 'personal

injury' may or may not be limited to physical injuries.") (citations omitted); *see also Black's Law

Dictionary* 802 (8th ed. 2004) (defining "personal injury" as "[i]n negligence action, any harm

caused to a person, such as a broken bone, a cut, or a bruise; bodily injury"); *Oxford English

Dictionary* (2008 ed.), *available at* http://www.oed.com (defining "personal injury" as "injury

inflicted on a person, esp. to the body; (Law) such injury as opposed to damage to a person's

property or reputation").

To the extent that such ambiguity may be resolved without resorting to the legislative

history, the fact that personal injury is situated next to the word "death" is indicative of the fact

that bodily injury is required. *See Jarecki v. G.D. Searle & Co.*, 367 U.S. 303, 307 (1961) ("The

maxim *noscitur a sociis*, that a word is known by the company it keeps, while not an inescapable

rule, is often wisely applied where a word is capable of many meanings in order to avoid the giving of unintended breadth to the Acts of Congress.").

Although the legislative history to Section 1605(a)(7) (enacted through the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1241 (1996) ("AEDPA")), is sparse, support for the proposition that Congress did not intend to open U.S. courts to indirect victims of terrorism is expressly stated in prior versions of the proposed amendment. Specifically, a precursor amendment similar to Section 1605(a)(7) and adopting the same "personal injury or death" language, was previously passed by the House Committee of the Judiciary. H.R. Rep. No. 934, 103d Cong. (1993). That bill, H.R. 934, H. Rep. 103-702, 103rd Congress, Aug. 16, 1994, removed foreign sovereign immunity in cases "in which money damages are sought against a foreign state for personal injury or death of a United States citizen." *Id.*

According to the accompanying House Report, the legislation was "necessary to clarify and expand the circumstances in which an American who is grievously mistreated abroad by a foreign government can bring suit in U.S. courts against the foreign government under the [FSIA]." *Id.* at 3. The bill was designed to provide a remedy to those "physically abused abroad" or killed as a result of certain listed predicate acts. *Id.* Specifically, H.R. 934 "would add a new exception to the FSIA which would allow U.S. citizens who are subjected to torture, summary execution, or genocide abroad by a foreign sovereign to bring suit in the United States against the foreign sovereign." *Id.* at 4. The only means by which someone other than the direct victim abroad may bring suit is "where the victim is not alive to bring suit" so that "the victim's legal representative or another person who is a proper claimant in an action for wrongful death may bring suit." *Id.* at 5. *See also Comprehensive Antiterrorism Act of 1995: Report of the*

*Committee on the Judiciary*, H.R. Rep. No. 104-383 at 105 (1995) ("It is expected that *a lawsuit*

*proceeding under this section will be brought either by the victim himself or by his estate in the*

*case of death or mental incapacity*.") (emphasis added).  Congressman Romano L. Mazzoli, who

introduced H.R. 934, H.R. Rep. No. 103-702 at 6, stated: "H.R. 934 would add a new exception

to the FSIA which would allow U.S. citizens who are subject to torture, extrajudicial killing,

summary execution, as it is called, or genocide abroad by a foreign sovereign to bring suit . . . ."

*Foreign Sovereign Immunities Act: Hearing Before the Subcomm. on Cts. and Admin. Practice,*

*S. Comm. on the Judiciary,* 103rd Cong. 28 (1994) (statement of Congressman Mazzoli).

      In view of this legislative history, the Court should not expand FSIA subject-matter

jurisdiction to include the claims of secondary victims.  To do so would be contrary to the well-

established principle that waivers of sovereign immunity contained in statutes should be

narrowly construed.  *See Cicippio-Puelo v. Islamic Republic of Iran*, No. 01-1496 (TPJ), 2002

WL 34408105, at *2 (D.D.C. June 21, 2002), *aff'd on other grounds*, 353 F.3d 1024 (D.C. Cir.

2004); *United States v. Nordic Vill., Inc.*, 503 U.S. 30, 34 (1992) (holding that waivers of

sovereign immunity, to be effective, must be unequivocally expressed and are not generally to be

liberally construed).  Indeed, the district court in *Cicippio-Puleo*, applying this principle of

narrow statutory construction, found that it lacked subject-matter jurisdiction over the claims of

secondary victims.  *Cicippio-Puleo*, 2002 WL 34408105, at *2.  Here, "in the absence of clearer

evidence to the contrary," this Court should conclude that "Congress did not intend the FSIA to

so enlarge the scope of potential liability of sovereign foreign states — even 'terrorist' states —

to require them to compensate non-victim plaintiffs for damages for which not even a domestic

terrorist would be liable . . . ." *Id.* at *3.

      For these reasons, the Court should dismiss for lack of subject-matter jurisdiction the

claims brought by the above-named alleged indirect victims.

**F.      The Exercise of Personal Jurisdiction Over Libya Violates the Due Process Clause of the Fifth Amendment.**

In relevant part, the Fifth Amendment of the U.S. Constitution provides that "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law." Due process requires, among other things, that a defendant be subject to the personal jurisdiction of the court. It has long been the rule that a court "may exercise personal over a nonresident only so long as there exist 'minimum contacts' between the defendant and the forum State." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980) (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

Since 1996, the FSIA has provided an exception to foreign sovereign immunity for certain enumerated terrorism-related acts. Pursuant to this exception to immunity (formerly codified at 28 U.S.C. § 1605(a)(7)), "the only required link between the defendant nation and the territory of the United States is the nationality of the claimant." *Price v. Socialist People's Libyan Arab Jamahiriya*, 294 F.3d 82, 90 (D.C. Cir. 2002). "Thus, § 1605(a)(7) . . . allows personal jurisdiction to be maintained over defendants in circumstances that do not appear to satisfy the 'minimum contacts' requirement of the Due Process Clause." *Id.* (citations omitted). Section 1605(a)(7) has been recodified at 28 U.S.C. §§ 1605A(a)(1)-(2). Again, the only required link between the defendant foreign state and the United States is the nationality of the claimant. Accordingly, the statute violates the Due Process Clause by allowing personal jurisdiction over foreign state defendants where there are insufficient minimum contacts between the defendant and the United States. *Compare* 28 U.S.C. §§ 1605A(a)(1)-(2) *with* 28 U.S.C. § 1605(a)(2) (requiring either direct connections with the United States or acts that "cause[] a direct effect in the United States" before jurisdiction is permitted) *and Foreign Sovereign*

28

*Immunities Act of 1976: Report of the Committee on the Judiciary*, H.R. REP. NO. 94-1486 at 13

(1976) (stating that the FSIA complies with Constitutional principles of personal jurisdiction:

"Significantly, each of the immunity provisions in the bill, sections 1605-1607, requires some

connection between the lawsuit and the United States, or an express or implied waiver by the

foreign state of its immunity from jurisdiction. These immunity provisions, therefore, prescribe

the necessary contacts which must exist before our courts can exercise personal jurisdiction.").

Notwithstanding its concerns, the *Price* court found that no violation of the Due Process

Clause had occurred because "foreign states are not 'persons' protected by the Fifth

Amendment." *Price*, 294 F.3d at 96; *accord TMR Energy Ltd. v. State Property Fund of Ukr.*,

411 F.3d 296, 300 (D.C. Cir. 2005). *Price* currently reflects the law of the D.C. Circuit on this

issue. The holding of *Price*, however, stands in direct conflict with the Second Circuit, which

has explicitly held that the Due Process Clause applies to foreign states. *See Texas Trading &*

*Milling Corp. v. Federal Republic of Nig.*, 647 F.2d 300, 313 (2d Cir. 1981) ("Nonetheless, in

*Amoco Overseas Oil Co. v. Compagnie Nationale Algerienne de Navigation*, 605 F.2d 648 (2d

Cir. 1979), a *quasi in rem* suit filed before the FSIA and decided after *Shaffer*, we applied

constitutional due process analysis to a suit against a foreign state. We affirm that holding

today."). Courts within the Second Circuit have recognized that "the holding of *Texas Trading*

remains good law within the Second Circuit . . . ." *Frontera Res. Azer. Corp. v. State Oil Co. of*

*the Azer. Republic*, 479 F. Supp. 2d 376, 385 (S.D.N.Y. 2007). Libya respectfully submits that

the Second Circuit's holding reflects the correct reading of the Due Process Clause.

Foreign states should be afforded due process when sued in the courts of the United

States. Due process is not a rigid, formulaic principle. Rather, as Justice Kennedy stated in

analogous circumstances, "the question of which specific safeguards . . . are appropriately to be

29

applied in a particular context . . . can be reduced to the issue of what process is 'due' a

defendant in the particular circumstances of a particular case." *United States v. Verdugo-*

*Urquidez*, 494 U.S. 259, 278 (1990) (Kennedy, J., concurring) (quoting *Reid v. Covert*, 354 U.S.

1, 75 (1957)). In the context of foreign states, the Supreme Court has recognized that notions of

comity allow a foreign state to appear in the United States and sue under the Sherman Act. *See*

*Pfizer, Inc. v. Gov't of India*, 434 U.S. 308, 318-19 (1978) ("This Court has long recognized the

rule that a foreign nation is generally entitled to prosecute any civil action in the courts of the

United States upon the same basis as a domestic corporation or individual might do."). Only

governments "recognized by the United States and at peace with us" are entitled to such access.

*Id.* Critically, the *Pfizer* court held that this right of access existed with respect to the Sherman

Act even though that statute only applies to "persons": "The word 'person,' however, is not a

term of art with a fixed meaning where it is used, nor was it in 1890 when the Sherman Act was

passed." *Id.* at 315 (citations omitted). Furthermore, as *Price* itself acknowledged,

"[i]nternational law recognized the juridical equality of each member of the international

community, and establishes for all states a series of rights and duties flowing from this

principle." 294 F.3d at 98 (quoting Lori Fisler Damrosch, *Foreign States and the Constitution*,

73 Va. L. Rev. 483, 519-20 & n.150 (1987)).

It would be an anomalous result if a foreign state recognized by the United States and at

peace with the United States — as is Libya — may appear in the courts of the United States with

all rights of a plaintiff but, should it choose to avoid the United States, may still be forced to

appear as a defendant here with no due process rights whatsoever.

Accordingly, Libya respectfully submits that this court lacks personal jurisdiction under

the Due Process Clause of the Fifth Amendment. Libya respectfully raises this Due Process

challenge to Section 1083 in order to preserve their its of appeal.

## III.    **CONCLUSION**

For the foregoing reasons, the Amended Complaint should be dismissed in its entirety.

Respectfully submitted,

**ECKERT SEAMANS CHERIN
& MELLOTT, LLC**

_____/s/ Mark A. Johnston_____
Thomas Whalen, Esq. (D.C. Bar #208512)
Mark Johnston, Esq. (D.C. Bar #455764)
1747 Pennsylvania Ave., N.W.
Suite 1200
Washington, DC  20006-4604
(202) 659-6600
Fax: (202) 659-6699
twhalen@eckertseamans.com
mjohnston@eckertseamans.com

Of counsel:

Wendy West Feinstein, Esq.
ECKERT SEAMANS CHERIN
& MELLOTT LLC
600 Grant Street
44th Floor
Pittsburgh, PA 15219
(412) 566-6000
Fax:  (412) 566-6099
wfeinstein@eckertseamans.com

*Attorneys for Great Socialist People's
Libyan Arab Jamahiriya a/k/a Libya*

Dated:  May 2, 2008

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that copies of the foregoing **Motion to Dismiss the Amended Complaint, Memorandum of Points and Authorities, and Proposed Order** were electronically filed and served, this 2nd day of May, 2008, to:

> Joshua Ambush
> Terri Sneider
> The Law Offices of Joshua M. Ambush, LLC
> 1726 Reisterstown Road Suite 206
> Baltimore, MD 21208

>           /s/ Mark A. Johnston
>           Mark A. Johnston

# EXHIBIT A

Westlaw.

28 U.S.C.A. § 1605A                                                                              Page 1

Effective: January 28, 2008

United States Code Annotated Currentness
    Title 28. Judiciary and Judicial Procedure (Refs & Annos)
        ᴵ▤ Part IV. Jurisdiction and Venue (Refs & Annos)
            ᴵ▤ Chapter 97. Jurisdictional Immunities of Foreign States
                ➡ § 1605A. Terrorism exception to the jurisdictional immunity of a foreign state

(a) In general.--

    (1) No immunity.--A foreign state shall not be immune from the jurisdiction of courts of the United States or of
    the States in any case not otherwise covered by this chapter in which money damages are sought against a foreign
    state for personal injury or death that was caused by an act of torture, extrajudicial killing, aircraft sabotage,
    hostage taking, or the provision of material support or resources for such an act if such act or provision of material
    support or resources is engaged in by an official, employee, or agent of such foreign state while acting within the
    scope of his or her office, employment, or agency.

    (2) Claim heard.--The court shall hear a claim under this section if--

    (A)(i)(I) the foreign state was designated as a state sponsor of terrorism at the time the act described in
    paragraph (1) occurred, or was so designated as a result of such act, and, subject to subclause (II), either
    remains so designated when the claim is filed under this section or was so designated within the 6-month period
    before the claim is filed under this section; or

    (II) in the case of an action that is refiled under this section by reason of section 1083(c)(2)(A) of the National
    Defense Authorization Act for Fiscal Year 2008 or is filed under this section by reason of section 1083(c)(3) of
    that Act, the foreign state was designated as a state sponsor of terrorism when the original action or the related
    action under section 1605(a)(7) (as in effect before the enactment of this section) or section 589 of the Foreign
    Operations, Export Financing, and Related Programs Appropriations Act, 1997 (as contained in section 101(c)
    of division A of Public Law 104-208) was filed;

    (ii) the claimant or the victim was, at the time the act described in paragraph (1) occurred--

        (I) a national of the United States;

        (II) a member of the armed forces; or

        (III) otherwise an employee of the Government of the United States, or of an individual performing a contract
        awarded by the United States Government, acting within the scope of the employee's employment; and

    (iii) in a case in which the act occurred in the foreign state against which the claim has been brought, the
    claimant has afforded the foreign state a reasonable opportunity to arbitrate the claim in accordance with the
    accepted international rules of arbitration; or

    (B) the act described in paragraph (1) is related to Case Number 1:00CV03110 (EGS) in the United States

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

28 U.S.C.A. § 1605A                                                                                      Page 2

District Court for the District of Columbia.

**(b) Limitations.**--An action may be brought or maintained under this section if the action is commenced, or a related action was commenced under section 1605(a)(7) (before the date of the enactment of this section) or section 589 of the Foreign Operations, Export Financing, and Related Programs Appropriations Act, 1997 (as contained in section 101(c) of division A of Public Law 104-208) not later than the latter of--

    **(1)** 10 years after April 24, 1996; or

    **(2)** 10 years after the date on which the cause of action arose.

**(c) Private right of action.**--A foreign state that is or was a state sponsor of terrorism as described in subsection (a)(2)(A)(i), and any official, employee, or agent of that foreign state while acting within the scope of his or her office, employment, or agency, shall be liable to--

    **(1)** a national of the United States,

    **(2)** a member of the armed forces,

    **(3)** an employee of the Government of the United States, or of an individual performing a contract awarded by the United States Government, acting within the scope of the employee's employment, or

    **(4)** the legal representative of a person described in paragraph (1), (2), or (3),

for personal injury or death caused by acts described in subsection (a) (1) of that foreign state, or of an official, employee, or agent of that foreign state, for which the courts of the United States may maintain jurisdiction under this section for money damages. In any such action, damages may include economic damages, solatium, pain and suffering, and punitive damages. In any such action, a foreign state shall be vicariously liable for the acts of its officials, employees, or agents.

**(d) Additional damages.**--After an action has been brought under subsection (c), actions may also be brought for reasonably foreseeable property loss, whether insured or uninsured, third party liability, and loss claims under life and property insurance policies, by reason of the same acts on which the action under subsection (c) is based.

**(e) Special masters.**--

    **(1) In general.**--The courts of the United States may appoint special masters to hear damage claims brought under this section.

    **(2) Transfer of funds.**--The Attorney General shall transfer, from funds available for the program under section 1404C of the Victims of Crime Act of 1984 (42 U.S.C. 10603c), to the Administrator of the United States district court in which any case is pending which has been brought or maintained under this section such funds as may be required to cover the costs of special masters appointed under paragraph (1). Any amount paid in compensation to any such special master shall constitute an item of court costs.

**(f) Appeal.**--In an action brought under this section, appeals from orders not conclusively ending the litigation may only be taken pursuant to section 1292(b) of this title.

**(g) Property disposition.**--

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

28 U.S.C.A. § 1605A                                                                                                          Page 3

(1) **In general.**--In every action filed in a United States district court in which jurisdiction is alleged under this section, the filing of a notice of pending action pursuant to this section, to which is attached a copy of the complaint filed in the action, shall have the effect of establishing a lien of lis pendens upon any real property or tangible personal property that is--

(A) subject to attachment in aid of execution, or execution, under section 1610;

(B) located within that judicial district; and

(C) titled in the name of any defendant, or titled in the name of any entity controlled by any defendant if such notice contains a statement listing such controlled entity.

(2) **Notice.**--A notice of pending action pursuant to this section shall be filed by the clerk of the district court in the same manner as any pending action and shall be indexed by listing as defendants all named defendants and all entities listed as controlled by any defendant.

(3) **Enforceability.**--Liens established by reason of this subsection shall be enforceable as provided in chapter 111 of this title.

(h) **Definitions.**--For purposes of this section--

(1) the term "aircraft sabotage" has the meaning given that term in Article 1 of the Convention for the Suppression of Unlawful Acts Against the Safety of Civil Aviation;

(2) the term "hostage taking" has the meaning given that term in Article 1 of the International Convention Against the Taking of Hostages;

(3) the term "material support or resources" has the meaning given that term in section 2339A of title 18;

(4) the term "armed forces" has the meaning given that term in section 101 of title 10;

(5) the term "national of the United States" has the meaning given that term in section 101(a)(22) of the Immigration and Nationality Act (8 U.S.C. 1101(a)(22));

(6) the term "state sponsor of terrorism" means a country the government of which the Secretary of State has determined, for purposes of section 6(j) of the Export Administration Act of 1979 (50 U.S.C. App. 2405(j)), section 620A of the Foreign Assistance Act of 1961 (22 U.S.C. 2371), section 40 of the Arms Export Control Act (22 U.S.C. 2780), or any other provision of law, is a government that has repeatedly provided support for acts of international terrorism; and

(7) the terms "torture" and "extrajudicial killing" have the meaning given those terms in section 3 of the Torture Victim Protection Act of 1991 (28 U.S.C. 1350 note).

CREDIT(S)

(Added Pub.L. 110-181, Div. A, Title X, § 1083(a)(1), Jan. 28, 2008, 122 Stat. 338.)

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

28 U.S.C.A. § 1605A

## HISTORICAL AND STATUTORY NOTES

### References in Text

Section 1083(c) of the National Defense Authorization Act for Fiscal Year 2008, referred to in subsec. (a)(2)(A)(II), is Pub.L. 110-181, Div. A, Title X, § 1083(c), Jan. 28, 2008, 122 Stat. 342, which is set out as a note under this section.

The enactment of this section, and the date of the enactment of this section, referred to in subsecs. (a)(2)(A)(II), (b), is Jan. 28, 2008, the approval date of Pub.L. 110-181, 122 Stat. 3, which enacted this section.

The Foreign Operations, Export Financing, and Related Programs Appropriations Act, 1997, referred to in subsecs. (a)(2)(A)(II), (b), is Pub.L. 104-208, Div. A, Title I, § 101(c), [Title I to V], Sept. 30, 1996, 110 Stat. 3009. Section 589 of the Act is not classified to the Code; see Tables for complete classification.

The Victims of Crime Act of 1984, referred to in subsec. (e)(2), is Pub.L. 98-473, Title II, ch. XIV, Oct. 12, 1984, 98 Stat. 2170, which is principally classified to Chapter 112 of Title 42, 42 U.S.C.A. § 10601 et seq. Section 1404C of the Act is classified to 42 U.S.C.A. § 10603c. For complete classification, see Short Title note set out under 42 U.S.C.A. § 10601 and Tables.

Chapter 111 of this title, referred to in subsec. (g)(3), is 28 U.S.C.A. § 1651 et seq.

The Immigration and Nationality Act, referred to in subsec. (h)(5), is Act June 27, 1952, c. 477, 66 Stat. 163, as amended, also known as the INA, the McCarran Act, and the McCarran-Walter Act, which is classified principally to chapter 12 of Title 8, 8 U.S.C.A. § 1101 et seq.Section 101 of the Act is classified to 8 U.S.C.A. § 1101. For complete classification, see Short Title note set out under 8 U.S.C.A. § 1101 and Tables.

The Export Administration Act of 1979, referred to in subsec. (h)(6), is Pub.L. 96-72, Sept. 29, 1979, 93 Stat. 503, which is classified principally to 50 App. U.S.C.A. §§ 2401 to 2420. Section 6 of the Act is classified to 50 App. U.S.C.A. § 2405. See Tables for complete classification.

The Foreign Assistance Act of 1961, referred to in subsec. (h)(6), is Pub.L. 87-195, Sept. 4, 1961, 75 Stat. 424, as amended, also known as the Act for International Development of 1961 and the FAA, which is classified principally to chapter 32 of Title 22, 22 U.S.C.A. § 2151 et seq. Section 620A of the Act is classified to 22 U.S.C.A. § 2371. For complete classification, see Short Title note set out under 22 U.S.C.A. § 2151 and Tables.

The Arms Export Control Act, referred to in subsec. (h)(6), is Pub.L. 90-629, Oct. 22, 1968, 82 Stat. 1320, as amended, also known as the AECA and the Foreign Military Sales Act, which is classified principally to chapter 39 of Title 22, 22 U.S.C.A. § 2751 et seq.Section 40 of the Act is classified to 22 U.S.C.A. § 2780. For complete classification, see Short Title note set out under 22 U.S.C.A. § 2751 and Tables.

Section 3 of the Torture Victim Protection Act of 1991, referred to in subsec. (h)(7), is section 3 of Pub.L. 102-256, Mar. 12, 1992, 106 Stat. 73, set out in a note under section 28 U.S.C.A. § 1350.

### Application of Pub.L. 110-181, Div. A, § 1083 to Pending Cases

Pub.L. 110-181, Div. A, Title X, § 1083(c), Jan. 28, 2008, 122 Stat. 342, provided that:

"(1) In general.--The amendments made by this section [enacting this section and amending 28 U.S.C.A. §§ 1605,

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

1607, 1610, and 42 U.S.C.A. § 10603c] shall apply to any claim arising under section 1605A of title 28, United States Code [this section].

"**(2) Prior actions.--**

"**(A) In general.--**With respect to any action that--

"**(i)** was brought under section 1605(a)(7) of title 28, United States Code, or section 589 of the Foreign Operations, Export Financing, and Related Programs Appropriations Act, 1997 (as contained in section 101(c) of division A of Public Law 104-208) [not classified to the Code], before the date of the enactment of this Act [Jan. 28, 2008],
"**(ii)** relied upon either such provision as creating a cause of action,
"**(iii)** has been adversely affected on the grounds that either or both of these provisions fail to create a cause of action against the state, and
"**(iv)** as of such date of enactment [Jan. 28, 2008], is before the courts in any form, including on appeal or motion under rule 60(b) of the Federal Rules of Civil Procedure,
that action, and any judgment in the action shall, on motion made by plaintiffs to the United States district court where the action was initially brought, or judgment in the action was initially entered, be given effect as if the action had originally been filed under section 1605A(c) of title 28, United States Code [subsec. (c) of this section].
"**(B) Defenses waived.--**The defenses of res judicata, collateral estoppel, and limitation period are waived--

"**(i)** in any action with respect to which a motion is made under subparagraph (A), or
"**(ii)** in any action that was originally brought, before the date of the enactment of this Act [Jan. 28, 2008], under section 1605(a)(7) of title 28, United States Code, or section 589 of the Foreign Operations, Export Financing, and Related Programs Appropriations Act, 1997 (as contained in section 101(c) of division A of Public Law 104-208) [not classified to the Code], and is refiled under section 1605A(c) of title 28, United States Code [subsec. (c) of this section],
to the extent such defenses are based on the claim in the action.
"**(C) Time limitations.--**A motion may be made or an action may be refiled under subparagraph (A) only--

"**(i)** If the original action was commenced not later than the latter of--
"**(I)** 10 years after April 24, 1996; or
"**(II)** 10 years after the cause of action arose; and
"**(ii)** within the 60-day period beginning on the date of the enactment of this Act [Jan. 28, 2008].

"**(3) Related actions.--**If an action arising out of an act or incident has been timely commenced under section 1605(a)(7) of title 28, United States Code, or section 589 of the Foreign Operations, Export Financing, and Related Programs Appropriations Act, 1997 (as contained in section 101(c) of division A of Public Law 104-208), any other action arising out of the same act or incident may be brought under section 1605A of title 28, United States Code [this section], if the action is commenced not later than the latter of 60 days after--

"**(A)** the date of the entry of judgment in the original action; or
"**(B)** the date of the enactment of this Act [Jan. 28, 2008].

"**(4) Preserving the jurisdiction of the courts.--**Nothing in section 1503 of the Emergency Wartime Supplemental Appropriations Act, 2003 (Public Law 108-11, 117 Stat. 579 [not classified to the Code]) has ever authorized, directly or indirectly, the making inapplicable of any provision of chapter 97 of title 28, United States Code [28 U.S.C.A. § 1602 et seq.], or the removal of the jurisdiction of any court of the United States."

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

28 U.S.C.A. § 1605A                                                                                      Page 6

[If any provision of Pub.L. 110-181, Div. A, § 1083, or the amendments made by that section, or the application of such provision to any person or circumstance, is held invalid, the remainder of that section and such amendments, and the application of such provision to other persons not similarly situated or to other circumstances, shall not be affected by such invalidation, see Pub.L. 110-181, Div. A, § 1083(e), set out as a note under this section.]

Application of Pub.L. 110-181, Div. A, § 1083 to Iraq

Pub.L. 110-181, Div. A, Title X, § 1083(d), Jan. 28, 2008, 122 Stat. 343, provided that:

"(1) Applicability.--The President may waive any provision of this section [enacting this section, amending 28 U.S.C.A. §§ 1605, 1607, 1610, and 42 U.S.C.A. § 10603c, and enacting provisions set out as notes under this section] with respect to Iraq, insofar as that provision may, in the President's determination, affect Iraq or any agency or instrumentality thereof, if the President determines that--

     "(A) the waiver is in the national security interest of the United States;
     "(B) the waiver will promote the reconstruction of, the consolidation of democracy in, and the relations of the United States with, Iraq; and
     "(C) Iraq continues to be a reliable ally of the United States and partner in combating acts of international terrorism.

"(2) Temporal scope.--The authority under paragraph (1) shall apply--

     "(A) with respect to any conduct or event occurring before or on the date of the enactment of this Act [Jan. 28, 2008];
     "(B) with respect to any conduct or event occurring before or on the date of the exercise of that authority; and
     "(C) regardless of whether, or the extent to which, the exercise of that authority affects any action filed before, on, or after the date of the exercise of that authority or of the enactment of this Act [Jan. 28, 2008].

"(3) Notification to Congress.--A waiver by the President under paragraph (1) shall cease to be effective 30 days after it is made unless the President has notified Congress in writing of the basis for the waiver as determined by the President under paragraph (1).

"(4) Sense of Congress.--It is the sense of the Congress that the President, acting through the Secretary of State, should work with the Government of Iraq on a state-to-state basis to ensure compensation for any meritorious claims based on terrorist acts committed by the Saddam Hussein regime against individuals who were United States nationals or members of the United States Armed Forces at the time of those terrorist acts and whose claims cannot be addressed in courts in the United States due to the exercise of the waiver authority under paragraph (1)."

[If any provision of Pub.L. 110-181, Div. A, § 1083, or the amendments made by that section, or the application of such provision to any person or circumstance, is held invalid, the remainder of that section and such amendments, and the application of such provision to other persons not similarly situated or to other circumstances, shall not be affected by such invalidation, see Pub.L. 110-181, Div. A, § 1083(e), set out as a note under this section.]

Severability

Pub.L. 110-181, Div. A, Title X, § 1083(e), Jan. 28, 2008, 122 Stat. 344, provided that: "If any provision of this section or the amendments made by this section [enacting this section, amending 28 U.S.C.A. §§ 1605, 1607, 1610, and 42 U.S.C.A. § 10603c, and enacting provisions set out as notes under this section], or the application of such provision to any person or circumstance, is held invalid, the remainder of this section and such amendments, and the application of such provision to other persons not similarly situated or to other circumstances, shall not be affected

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

28 U.S.C.A. § 1605A                                                          Page 7

by such invalidation."

28 U.S.C.A. § 1605A, 28 USCA § 1605A

Current through P.L. 110-207 approved 4-30-08

Copr. (C) 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works
END OF DOCUMENT

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| Reverend JOSE MANUEL VEGA FRANQUI, Individually and as Administrator of the Estate of VASTHI ZILA MORALES DE VEGA, et al. | ) ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. 1:06-cv-00734-RBW |
| v. | ) ) ) | |
| GREAT SOCIALIST PEOPLE'S LIBYAN ARAB JAMAHIRIYA, et al. | ) ) ) ) | |
| Defendants. | ) | |

## ORDER

Upon consideration of Defendant's Motion to Dismiss the Amended Complaint, any

Opposition thereto, and the Court being duly advised in the premises, it is, by the Court this

_____ day of _____, 2008,

ORDERED, that Defendant's Motion to Dismiss is GRANTED; and it is further

ORDERED, that all claims against Defendant, Great Socialist People's Libyan Arab

Jamahiriya a/k/a Libya are hereby dismissed with prejudice.


_____
Judge Reggie B. Walton
U.S. District Court for the District of Columbia