IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Reverend JOSE MANUEL VEGA FRANQUI, ) <br> Individually and as Administrator of the Estate of ) <br> VASTHI ZILA MORALES DE VEGA, et al., ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> GREAT SOCIALIST PEOPLE'S LIBYAN ARAB ) <br> JAMAHIRIYA, et al., ) <br> ) <br> Defendants. ) | CA No. 06-734 (RBW) |

**PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS AMENDED COMPLAINT**

Plaintiffs, by and through undersigned counsel, oppose Libya's motion to dismiss plaintiffs' Amended Complaint and to escape all liability for the Libyan-sponsored massacre at the Lod Airport in Israel.

Libya's arguments concerning this Court's purported lack of subject matter and personal jurisdiction and statute-of-limitations bars to this action have all been either expressly or implicitly rejected in many other similar cases. These arguments are especially unavailing in light of the broad new legislation recently enacted into law intended specifically to broaden and to deepen the rights of terrorism victims against state sponsors of terrorism such as Libya. The National Defense Authorization Act for Fiscal Year 2008, P.L. 110-181, January 28, 2008, in response to a number of decisions of this court and of the D.C. Circuit narrowly interpreting some provisions of the prior version of Section 1605(7) of the Foreign Sovereign Immunities Act ("FSIA"), legislatively overruled those decisions and re-affirmed Congressional intent to provide broadly based federal rights of action against state sponsors of terrorism.

The Act expressly affirmed the existence of a federal cause of action against state sponsors of terrorism, extended applicable limitations periods, made available punitive damages against state sponsors of terrorism, and provided extended and broad new opportunities for victims of terrorism to bring new or related actions in cases where similar actions were already pending. Plaintiffs in this case took advantage of those provisions by filing an amended complaint within the legislatively-prescribed time period of 60 days, and are entitled to the full benefits of that recent legislation.

Libya's principal argument is that it is immune from suit because it was not on the list of state sponsors of terrorism at the time of the Lod Airport attack in 1972. However, that list did not even come into existence until 1979, when Libya became one of its charter members. Moreover, at the time the list was first promulgated, it was well-known at the highest levels of the United States government, including at the State Department, that Libya had provided material support and resources to a number of its "proxy" terrorist organizations, such as the Palestinian Liberation Organization ("PLO"), its subgroup the Popular Front for the Liberation of Palestine ("PFLP"), and the Japanese Red Army ("JRA"), which carried out the attack at Lod on behalf of Libya. Libya was put on the terrorism list precisely because of its role in promoting the Lod Airport attack as well as other similar attacks prior to 1979, when the list was first created and published.

Libya also argues that it is immune from suit because the Court has no personal jurisdiction over it, a proposition expressly and repeatedly rejected by this Court as well as by the D.C. Circuit. Finally, Libya argues that this action is time-barred because (i) although it was originally filed under 28 U.S.C. Section 1605(a)(7) of the FSIA within the required 10 years of

passage of that provision, it should be considered time-barred under that section, and (ii) none of the remedial provisions of the recently passed legislation expressly extending or waiving statutes of limitations apply to it. Both propositions are wrong. First, as this Court has repeatedly held, Section 1605(a)(7) actions, by their plain language, are not time-barred so long as they were filed within ten years of the passage of the legislation enacting Section 1605(a)(7) into law,[1] as was this action. Second, even if they would have been time-barred under former Section 1605(a)(7), the remedial legislation of the recent Defense Authorization Act expressly extended and/or waived applicable limitations periods to enable victims of terrorism to seek relief for their injuries received in connection with any terrorist act for which an action was already "pending" or to which any new action is "related."

## BACKGROUND

Plaintiffs filed their original Complaint in this case on April 21, 2006, less than 10 years after the passage of the FSIA amendments authorizing such suits on April 24, 1996. Plaintiffs are survivors and close family members of those killed in a terrorist attack on Lod Airport in Israel carried out on May 30, 1972. Most of the plaintiffs and their survivors were from Puerto Rico, and they were participants in a pilgrimage tour to Israel. Their flight stopped in Rome, Italy, where twelve people boarded, including the three Japanese Red Army Terrorists who carried out the attack. The terrorists were aided by Libyan agents and employees acting in the course of their "service" to their country. Amended Complaint ("AC") ¶¶ 31-36, 41-44. Those Libyan officials, agents, and employees used their diplomatic pouch privileges to avoid inspection and to smuggle

---

[1] Those FSIA amendments were enacted into law by the Antiterrorism and Effective Death Penalty Act, Pub. L. No. 104-132, § 221 (a), 100 Stat. 1214 (April 24, 1996) previously codified at 28 U.S.C. § 1605(a)(7).

guns and grenades on to the airplane that were later used in the attack at Lod Airport in Israel. Id. ¶ 44.

The terrorists, after disembarking from the same flight as plaintiffs, waited for their luggage to arrive in the baggage claim area. When the luggage arrived, the three terrorists removed guns and grenades that had been smuggled aboard using the diplomatic pouch privileges provided by Libyan agents, and opened fire on the passengers grouped around the baggage claim area. Twenty-four people died, and seventy-eight more were injured in one of the most horrific and deadly terrorist attacks at any airport in history. AC, ¶¶ 47-48.

The United States Department of State described the role of Libyan leader Muammar Qadhaffi as follows:

> [Qadhaffi] went out of his way to praise the Japanese perpetrators of the Lod Airport Massacre for having displayed the 'true fedayeen spirit.' He also claimed that the [Libyan Arab Republic Government] is backing morally and financially 'all the Fedayeen.' … [Qadhaffi] ipso facto abets Fedayeen terrorist activities with Libyan funds and defends their operations anywhere.

U.S. Department of State, Airgram From U.S. Embassy in Tripoli, Libya, to U.S. Department of State, Subject: LARG Reservations About Terrorism, (November 28, 1972), at A-176, *4. (*Quoted* in Declaration of Bruce D. Tefft, attached hereto, at 7.)

### ARGUMENT

**I. THIS COURT HAS SUBJECT MATTER JURISDICTION OVER LIBYA AS A STATE SPONSOR OF TERRORISM.**

Libya was on the list of state sponsors of terrorism from the moment that list was first created and published on December 29, 1979, as Libya itself admits. Libya Memo. in Support of Motion to Dismiss at 7, n.4. See Export Administration Act, 50 U.S.C. App. §2405(j); 45 Fed.

Reg. 1595, 1596 (Jan. 8, 1980)(codified at 15 C.F. R. § 385.4(d)(1980)).[2]  Libya was on the list at the time plaintiffs herein filed their original Complaint on April 21, 2006.[3]  That Complaint properly alleged that Libya was a foreign state designated as a "state sponsor of terrorism within the meaning of the Export Administration Act of 1979 (50 U.S.C. App. § 2405) ...."  Complaint, ¶ 17.  The Complaint properly grounded its jurisdiction and causes of action against Libya and other defendants on 28 U.S.C. § 1605(a)(7) and the "Flatow Amendment," 28 U.S.C. § 1605 Note.  Complaint, ¶¶ 17-26.

Plaintiffs filed their First Amended Complaint on March 28, 2008, as a matter of right, because Libya had not to that date ever filed an Answer. That date was within the 60-day period provided by the National Defense Authorization Act of 2008 (signed into law on January 28, 2008) to file new or related actions or to file motions related to pending actions.  In their First Amended Complaint, plaintiffs properly alleged the requisites for subject matter jurisdiction under newly enacted Section 1605(A)(a)(1) as well as under Section 1605 Note.  Amended Complaint, ¶¶ 1, 4, 17-26.  Moreover, plaintiffs expressly alleged that "Defendants ... satisfy the requirements to bring such an action....  Defendants have been designated foreign state sponsors of terrorism and the acts complained of are among those described in [former] Section 1605(a)(7) of Title 28 of the U.S.C."  Amended Complaint at 5, note 2.

---

[2]  In their Amended Complaint, because of a typographical oversight, Plaintiffs mistakenly alleged that Libya was placed on the terrorism list in 1984, not 1979. Amended Complaint, ¶ 17.  As defendant concedes, however, Libya was on the list of states designated as state sponsors of terrorism from the list's inception in 1979.

[3]  Libya remained on the list from the time the list was first created in 1979 until removed later in 2006.  See Fed. Reg. 31,909 (June 1, 2006); 71 Fed. Reg. 39,696-02 (July 13, 2006).

### A. Libya Was Designated as a State Sponsor of Terrorism When the List Was First Promulgated Precisely Because of its Role in the Lod Airport Massacre.

Defendant Libya argues that the Court lacks subject matter jurisdiction because the injuries suffered by plaintiffs and their survivors at the Lod Airport occurred in 1972, at a time before any state sponsor of terrorism was formally designated as such under the Export Administration Act of 1979. This truism is unavailing to relieve Libya of liability, however. A statutory requirement that a state sponsor of terrorism be on a particular list cannot bar an action based on events that occurred even before that list existed. The purpose of the requirement is plainly to remove the sovereign immunity of a state sponsor of terrorism for its sponsorship of terrorism, and to make it liable for the damages it causes as a result of its policies and actions. Libya was designated as a state sponsor of terrorism at the outset, when the list first came into existence in 1979.

Libya also either ignores or dismisses the fact that Libya was put on the list precisely because of its actions in sponsoring the Lod Airport massacre and other terrorist attacks that occurred in the years prior to inception of the list in 1979. The attached Declaration of Dr. Bruce Tefft shows that Libya's role in the Lod Airport attack was known at the highest levels of the United States government, including at the State Department, the National Security Council, and the Department of Defense, and was a primary reason for its designation as a state sponsor of terrorism in 1979. Dr. Tefft has been qualified as an expert witness on terrorism in more than half a dozen recent cases before this Court, and has 33 years experience both within the CIA and outside the Agency as a consultant on counter-terrorism. In his Declaration, he concluded that "Libya and Libyan officials and instrumentalities provided material support and resources to the

terrorists who carried out the Lod Airport massacre in 1972, and ... this attack was a primary reason why Libya was subsequently designated by the United States as a state sponsor of terrorism." Tefft Declaration, ¶ 19.

Even Libya concedes that, if Libya was put on the terrorism list because of its role in the attack which is the subject of this action, then it is properly subject to suit. Memo. in Support of Motion To Dismiss at 8. Libya seeks, however, to elevate form over substance by arguing that plaintiffs did not expressly allege that Libya was put on the terrorism list because of the Lod massacre. However, as noted above, plaintiffs did expressly allege that Libya and other defendants "satisfy the requirements to bring such an action" because "they were designated foreign state sponsors of terrorism...." Amended Complaint at 5, n.2. See also Amended Complaint ¶¶ 1, 3, 17, properly alleging that the Court has jurisdiction under 28 U.S.C. § 1605A and §1605 Note.

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of a complaint. *Browning v. Clinton,* 292 F.3d 235, 242 (D.C. Cir. 2002). The complaint need only set forth a short and plain statement of the claim, giving the defendant fair notice of the claim and the grounds upon which it rests. *Kingman Park Civic Ass'n v. Williams,* 348 F.3d 1033, 1040 (D.C. Cir. 2003) (citing Fed. R. Civ. P. 8(a)(2) and *Conley v. Gibson,* 355 U.S. 41, 47(1957)).

It is not necessary for the plaintiff to plead all elements of his *prima facie* case in the complaint, *Swierkiewicz v. Sonoma N.A.,* 534 U.S. 506, 511-14 (2002), or to "plead law or match facts to every element of a legal theory." *Krieger v. Fadely,* 211 F.3d 134, 136 (D.C. Cir. 2000).

Accordingly, "the accepted rule in every type of case" is that a court should not dismiss a complaint for failure to state a claim unless the defendant can show beyond doubt that the

plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *Warren v. District of Columbia,* 353 F.3d 36, 37 (D.C. Cir. 2004); *Kingman Park,* 348 F.3d at 1040. Here, as the attached Declaration of Bruce Tefft demonstrates, there is ample support for the proposition that Libya was put on the terrorism list because of its involvement in the Lod Airport massacre, and therefore that plaintiffs meet the requirements for subject matter jurisdiction over Libya even under defendant's narrow reading of that requirement.

If, contrary to our argument, the Court nonetheless believes a more specific allegation in the Amended Complaint is required, plaintiffs respectfully request leave to amend their Complaint to make such an allegation. E.g., *Owens v. Republic of Sudan*, 374 F. Supp.2d 1 at 23-24 (D.D.C. 2005)(allegations of Complaint too conclusory but plaintiffs given leave to amend).

**B.     The Recently Enacted Defense Authorization Act Independently Confers Subject Matter Jurisdiction over Plaintiffs' Amended Complaint against Libya.**

Section 1605A of the Foreign Sovereign Immunities Act was created by Section 1083 of the National Defense Authorization Act of 2008, Pub. L. No. 110-81 ("Defense Authorization Act"). (A copy of this legislation is attached hereto for the Court's convenience). This provision amended the FSIA in several important respects, expressly repealing former Sections 1605(a)(7) (under which this action was originally filed) and Section 1605(f), which provided the applicable limitations period of 10 years from the date of its enactment, April 24, 1996. Section 1605A provided a new federal cause of action against state sponsors of terrorism, provided for the possibility of punitive damage awards against them, and extended and/or waived applicable

statutes of limitations to allow plaintiffs such as those here to claim damages against state sponsors of terrorism.

By its express terms, Section 1605A provides that an action such as this can be maintained against a foreign state sponsor of terrorism when "the foreign state was designated as a state sponsor of terrorism at the time the act described in paragraph (1) occurred, or was so designated as a result of such act...." Section 1605A(a)(2)(A)(i)(I). As shown above, plaintiffs meet this requirement.

However, even if plaintiffs could not meet this requirement, Section 1605A provides in the alternative that the "court shall hear a claim under this section if–-....in the case of an action that is refiled under this section by reason of Section 1083(c)(2)(A) of the National Defense Authorization Act for Fiscal Year 2008 or is filed under this section by reason of section 1083 (c)(3) of that Act, the foreign state was designated as a state sponsor of terrorism when the original action or the related action under section 1605(a)(7)(as in effect before the enactment of this section)...was filed." Section 1605A(a)(2)(A)(i)(II). That is, so long as Libya was designated as a state sponsor of terrorism when the original Complaint in this case was filed, the Defense Authorization Act provides that it cannot escape the Court's subject matter jurisdiction in any action that is "re-filed under this Section by reason of Section 1083(c)(2)(A)" or any action that is "filed under section 1083(c)(3) of that Act...." In this case, there is no doubt that Libya was so designated at the time plaintiffs filed their original Complaint on April 21 2008.

Defendant Libya has argued that these provisions are inapplicable by relying on the tortured logic that, when plaintiffs filed their Amended Complaint on March 28, they did not "refile under this section by reason of Section 1083(c)(2)(A)" of the Act, and also did not "file[]

9

under this section by reason of Section 1083(c)(3) of that Act...." Apparently, Libya is relying on some hoped for distinction between "refiling" a claim on the one hand, and filing an amended complaint on the other hand (in the former instance), and a similarly non-existent distinction between commencing a new "related" action on the one hand and filing an amended complaint on the other hand (in the latter instance).[4] Neither of these attempts to narrow the plain language of the Defense Authorization Act has any merit.

By its plain terms, Section 1083(c) provides, under the heading, "APPLICATION TO PENDING CASES," that "The amendments made by this section shall apply to any claim arising under Section 1605A of title 28, United States Code." Not even Libya disputes that plaintiffs' claims, whether they are deemed "refiled" or merely "filed" in their Amended Complaint, nonetheless "aris[e] under Section 1605A...." Similarly, not even Libya disputes that, if plaintiffs had filed a brand new "related" claim (instead of filing an amended Complaint in this case), then Section 1083(c)(3), applying to "RELATED ACTIONS," would properly trigger application of

---

[4] Libya also appears to argue that 1083(c)(2)(A) is inapplicable to trigger Section 1605A(2)(A)(i)(II) because, although plaintiffs concededly brought their action under Section 1605(a)(7) and the "Flatow Amendment," 28 U.S.C. § 1605 note, they either did not rely on those provisions as creating a cause of action or they were not adversely affected on the ground that the cited provisions did not by themselves create a federal cause of action. However, the original Complaint clearly attempted to ground its claims in both Section 1605(a)(7) and the "Flatow Amendment," both of which it cited several times, Complaint at ¶¶ 17-26. Moreover, plaintiffs plainly were adversely affected by earlier holdings of the D.C. Circuit that those provisions did not by themselves create a federal cause of action, because, although they sought to ground their claims on those provisions of federal law, they were unable to and were forced to rely primarily on state substantive law. Complaint at 18-42.

In any event, even if, contrary to our argument, section 1083(c)(2)(A)("PRIOR ACTIONS") were held inapplicable to trigger Section 1605A(2)(A)(i)(II) on this ground, section 1083(c)(3) ("RELATED ACTIONS") would still be independently sufficient to support the plain meaning and intent of Congress in enacting Section 1605A(2)(A)(i)(II) and triggering its applicability here.

Section 1605A(2)(A)(i)(II), providing for jurisdiction over claims where the "foreign state was designated a state sponsor of terrorism when the original action or the related action under Section 1605(a)(7)...was filed....." Thus, Libya's argument in this regard rests solely upon attempting to create a non-existent distinction (or a distinction without a difference) between filing a new Complaint in a new identical case (which under the Court's rules would have been consolidated with the older case as a "related case" anyway) or filing an amended complaint, as plaintiffs did here. Considerations of judicial economy clearly favor reading the filing of amended complaint in an existing case as tantamount to filing a new complaint in a related case, and Libya has suggested no reason why such an artificial distinction should be elevated to dispositive importance.

        **C.**    **Libya's Argument that the Court Lacks Subject Matter Jurisdiction over "Indirect Claims" of Family Members Is Contradicted by Over Forty Cases Decided by this Court Awarding Damages to Such Family Members, as well as by the Plain Language of Section 1605A.**

Libya also argues that the Court lacks subject matter jurisdiction over the claims of family members, or so-called "indirect victims of terrorism." Memo. in Support of Motion to Dismiss at 24-28. Astonishingly, Libya does not mention or cite even one of the over forty cases decided by this Court in the last ten years that have held to the contrary, and in fact awarded billions of dollars in damages to such so-called "indirect victims of terrorism." Just a few of those cases include *Flatow v. Islamic Republic of Iran*, 999 F. Supp. 2d 1 (D.D.C. 1998)(over $22 million awarded to family members of victim); *Higgins v. Islamic Republic of Iran*, 2000 WL 33674311 (D.D.C. 2000) (over $55 million awarded to widow of terrorist victim); *Holland v. Islamic Republic of Iran*, 496 F. Supp. 2d 1 (D.D.C. 2005)(over $24 million awarded to family members

of victim); *Blais v. Islamic Republic of Iran*, 459 F. Supp. 2d 40 (D.D.C. 2006) (over $24 million total awarded to family members as well as to surviving direct victim); *Surette v. Islamic Republic of Iran*, 231 F. Supp 2d 260 (D.D.C. 2002)(domestic partner of victim awarded substantial damages).

Libya relies heavily on some oblique references in the legislative history of the 1996 FSIA amendments (now superseded by the 2008 Defense Authorization Act) but ignores the plain language of Section 1605A, which expressly authorizes either the "claimant or the victim" to bring such an action, and which expressly also authorizes damages to be paid for "solatium,"[5] which is compensation that is available <u>only</u> to a close family member or survivor of a victim of terrorism–that is, to a so called "indirect victim." Libya's failure to mention the scores of cases to the contrary, and its failure to address the plain language of the Act in promoting its argument on this point, should be noted by the Court.

## II.   THIS COURT HAS PERSONAL JURISDICTION OVER LIBYA.

Libya argues that the Court has no personal jurisdiction over Libya because Libya lacks the "minimum contacts" required by the Fifth Amendment. Although plaintiffs dispute that Libya lacks the requisite minimum contacts, this is an argument we need not engage. That is because, as Libya concedes, the D.C. Circuit has held, in another case in which Libya was a defendant and made the same argument, that "foreign states are not 'persons' protected by the Fifth Amendment." *Price v. Socialist People's Libyan Arab Jamahiriya*, 294 F. 3d 82, 90 (D.C. Cir. 2002). "Thus, § 1605 (a)(7) ... allows personal jurisdiction to be maintained over defendants

---

[5] Section 1605A(c)(4) provides as follows: "In any such action, damages may include economic damages, solatium, pain and suffering, and punitive damages."

in circumstances that do not appear to satisfy the 'minimum contacts' requirement of the Due Process Clause." Id. Citations omitted. Accord, *TMR Energy Ltd. v. State Property Fund of Ukraine*, 411 F. 3d 296, 300 (D.C. Cir. 2005). As Libya concedes, *Price* and *TMR Energy* are controlling authority here.

### III. PLAINTIFFS' CLAIMS ARE NOT TIME-BARRED.

Plaintiffs claims were not time barred when they were brought within the 10-year window provided by enactment of the Foreign Sovereign Immunities Act Amendments on April 24, 1996. See Antiterrorism and Effective Death Penalty Act, Pub. L. No. 104-132, § 221 (a), 100 Stat. 1214 (April 24, 1996) previously codified at 28 U.S.C. § 1605(a)(7). On that date, for the first time, the FSIA was amended to lift the sovereign immunity of foreign states which sponsored terrorism. Those amendments provided for a ten-year limitation period and expressly provided for application of the principle of equitable tolling during the period when the foreign sovereign was immune from suit:

> No action shall be maintained under subsection (a)(7) unless the action is commenced not later than 10 years after the date on which the cause of action arose. All principles of equitable tolling including the period during which the foreign state was immune from suit, shall apply in calculating this limitation period.

28 U.S.C. § 1605(f). The plain language of the statute expressly instructs application of equitable tolling "including the period during which the foreign state was immune from suit...."

Until enactment of those provisions, plaintiffs could not bring any action against Libya because, even though it had been on the terrorism list since 1979, it was immune from suit. Accordingly, the ten-year limitations period for plaintiffs was tolled, and did not begin to run,

13

until April 24, 1996, the date Libya's immunity was first lifted.[6]  Plaintiffs complied with the ten-year limitations period by filing their Complaint on April 21, 2006.  This interpretation of Section 1605(f) was expressly re-affirmed in the recent Defense Authorization Act.

However, even if–contrary to our arguments–plaintiffs' claims were time barred under former Section 1605(a)(7), they are manifestly not time-barred under new Section 1605A as enacted in the recent Defense Authorization Act.

> A.      **Plaintiffs' Original Complaint Was Filed Within the Ten-Year Limitations Period, and Was Not Time Barred.**

This Court has repeatedly held that, under the 1996 FSIA provisions recited above, plaintiffs have ten years from the date the foreign state's immunity was first lifted on April 24, 1996, to bring their claims.  E.g., *Collett v. Socialist People's Libyan Arab Jamahiriya*, 362 F. Supp. 2d 230, 242 (.D.D.C. 2005)(Uribina, J.)(denying Libya's motion to dismiss on limitations grounds, *inter alia*, and holding that "the statute of limitations for the plaintiffs claims must be tolled to begin when the defendants were stripped of their immunity with the 1996 enactment of 28 U.S.C. § 1605(a)(7)...."); *Flatow v. Islamic Republic of Iran*, 999 F. Supp. 1, 23 (D.D.C. 1998)(Lamberth, J.)("as a matter of law, ... the earliest date for the statute of limitations to expire for any action brought pursuant to 28 U.S.C. 1605(a)(7) and 28 U.S.C. 1605 note will be April 24, 2006); *Ciccippio v. Islamic Republic of Iran*, 18 F. Supp. 2d 62, 69 (D.D.C. 1998)(Jackson, J.)([T]he ten year statute of limitations ... does not bar the claims in this case because, once again,

---

[6] Libya's suggestion that plaintiffs could have sued it after 1972 but prior to enactment of the FSIA in 1976 (Memo. in Support at 23) is disingenuous at best.  Libya's counsel well knows that the FSIA, when first enacted, essentially codified existing law protecting sovereigns from suit in all but the most limited circumstances, and that no sovereign state could ever be sued for sponsorship of terrorism until passage of the FSIA amendments in 1996.

Congress has provided that victims of terrorism be given the benefit of "all principles of equitable tolling, including the period during which the foreign state was immune from suit..." Iran was immune from suit...until the enactment of § 1605(a)(7) in 1996."); *Wyatt v. Syrian Arab Republic*, 298 F. Supp. 131, 145 (D.D.C. 2005)("claims brought under § 1605(a)(7) are tolled up to April 24, 1996, the date of passage of § 1605(a)(7) and the first date that any foreign state's immunity was waived."). These cases properly interpreted the plain language of Section 1605(f), expressing the will of Congress to apply a ten year limitations period and to apply equitable tolling principles during the period before April 1996 when plaintiffs could not have brought suit.

Libya largely ignores these cases, even though it was a party to one of them, and instead places all its emphasis on two decisions by Judges Kennedy and Kessler. *Vine v. Republic of Iraq*, 459 F. Supp. 2d 10 (D.D.C. 2006)(Kennedy, J.); *Estate of Buonocore v. Great Socialist Arab Jamahiriya*, 2007 WL 2007509 (D.D.C. 2007)(Kessler, J.). The *Vine* case involved plaintiffs who were held as hostages in Iraq in 1990-91. Judge Kennedy held that they should have brought their claims by 2001. He drew a distinction between when a claim "arises" and when it "accrues." He refused to apply the equitable tolling prescribed by Congress in the way all the other judges of this Court had done so previously. Judge Kessler reached the same conclusion in *Buonocore*, essentially adopting and following Judge Kennedy's reasoning to bar claims stemming from a 1985 bombing that were filed on April 21, 2006.

Plaintiffs submit that *Vine* and *Buonocore* were incorrectly decided because they ignored the Congressional intent found in the plain language of former Section 1605(f). Both cases rely almost exclusively on one D.C. Circuit decision, *Phillips v. Heine*, 984 F.2d 489 (D.C. Cir.

15

1993). However, that case is distinguishable on a number of grounds. *Philips* involved the statute of limitations of the Death on the High Seas Act, which, unlike the FSIA, did not expressly codify equitable tolling into the statute as a congressional mandate. Moreover, the *Philips* court relied heavily on the unique legislative history of that statute. The *Philips* court reasoned that, when Congress amended the statute and deleted any reference to tolling, it could not have intended to grant plaintiffs more than 90 days from the end of the tolling event. Thus the *Philips* court concluded, in light of that history, that plaintiffs were entitled to only 90 days after the tolling period ended instead of the full limitations period after the tolling period ended. The FSIA, by contrast, had no such legislative history, and, unlike the Death on the High Seas Act, did have express language instructing the courts to apply principles of equitable tolling during the period when foreign states were immune from suit.

Moreover, there is strong doubt whether even the D.C. Circuit would follow the *Philips* precedent today, in light of its more recent decision in *United States v. Saro*, 252 F.3d 449, 453-55 (D.C. Cir. 2001). In that case, the court did not apply the *Philips* "reasonable period after tolling period ends" analysis, but instead held that equitable tolling, as a matter of law, completely suspends the statute of limitations during the full tolling period. Id. at 454 and 454, n.6.

*Saro* is much more in line with Supreme Court precedent and most interpretations of federal common law than *Philips*. In *Burnett v. New York Cent. R.R. Co.*, 380 U.S. 424, 434-35 (1965), the Supreme Court expressly rejected the "reasonable time" approach proposed by Libya and applied by the *Vine* and *Buonocore* courts. The Supreme Court held that the "reasonable time" approach "would create uncertainty as to exactly when the limitation period begins to run."

16

Id. at 435.  The Court explained that "a uniform rule tolling the federal statute for the period of the pendency of the state court action and until the state court dismissal order becomes final is fair to both plaintiff and defendant...and best serves the policies of uniformity and certainty...." Id. at 435-36.

      Accordingly, the great weight of authority sides with the numerous applicable precedents of this Court that have held that plaintiffs in terrorism cases have ten years from the date of enactment of the FSIA amendments on April 24, 1996, to bring claims against state sponsors of terrorism.

      In the section below plaintiffs show that, under the recently enacted Defense Authorization Act, there is no question that Libya's limitations defense is without merit, because it is expressly addressed by the terms of the Act.  However, that Act also provides a strong indication of Congressional intent with respect to how the 1996 limitations provisions should be read.  When Congress enacted the recent Defense Authorization Act, it essentially re-affirmed its prior intention to provide a 10-year window from April 24, 1996 to April 24, 2006, to bring such claims even under former Section 1605(a)(7) and Section 1605(f).  The Act provides, under "TIME LIMITATIONS"--

> A motion may be made or an action may be refiled under subparagraph (A) only--
>     (i) if the original action was commenced not later that the latter of--
>     (I) 10 years after April 24, 1996; or
>     (II) 10 years after the cause of action arose; and
>     (ii) within the 60-day period beginning on the date of the enactment of this Act.

Section 1083 (c)(2)(C) of the Defense Authorization Act.  Clearly, Congress considered any prior action that had been filed within "10 years after April 24, 1996" to have been timely filed.  Even aside from the direct applicability of the language cited to this case, it is a powerful expression of

Congressional understanding of the operation of former Section 1605(a)(7) and former Section 1605(f).

      **B.    New Section 1605A Expressly Provides that Plaintiffs Had Ten Years from April 24, 1996 to Bring This Action.**

In January of this year, Congress expressly legislated that, notwithstanding any confusion caused by the *Vine* and *Buonocore* cases, plaintiffs who bring Section 1605A actions, as did plaintiffs here in their Amended Complaint, are within the statute of limitations so long as their claims were originally brought within ten years after April 24, 2005. Section 1605A(b) expressly provides as follows:

> LIMITATIONS.–An action may be brought or maintained under this section if the action is commenced, or a related action was commenced under section 1605(a)(7) (before the date of enactment of this section)... not later than the latter of --
>     (1) 10 years after April 24, 1996; or
>     (2) 10 years after the date on which the cause of action arose.

This plain language governs the facts here. Plaintiffs' amended complaint states claims under Section 1605A. Their original Complaint in this action was filed within "10 years after April 24, 1996." Thus their action was both "brought" and "maintained" within the requisite ten years from that date. Even if their original Complaint is deemed a "related action commenced under section 1605(a)(7)," it still meets the time limit.

Indeed, Congress' intent in affirming the rights of plaintiffs against state sponsors of terrorism was so strong, that it repeated its instruction about the statute of limitations in another part of the legislation, codified at Section 1605A Note (c)(2), labeled "PRIOR ACTIONS.–"

> (B) DEFENSES WAIVED.– The defenses of res judicata, collateral estoppel, and limitation period are waived--
>     (i)...

> (ii) in any action that was originally brought, before the date of enactment of this Act, under section 1605(a)(7) of title 28, United States Code..., and is refiled under Section 1605A(c) of title 28, United States Code, to the extent such defenses are based on the claim in the action.

Once again, only by arguing that filing an amended complaint under Section 1605A(c), as plaintiffs did here, is not the same as "refil[ing]" a complaint originally brought under Section 1605(a)(7), can Libya hope to escape the plain meaning of this provision. Libya has made no serious argument distinguishing between filing an amended complaint and "refiling" the same action in a new complaint, and cannot hope to do so. To the extent Libya rests any future argument on this meaningless distinction, it must try to explain what possible purpose would be served by requiring plaintiffs to file a new identical case rather than merely an amended complaint in order to avail themselves of this provision. The short answer is that no purpose would be served by reading the statute in that way.

Accordingly, even if there was any reasonable basis for confusion about whether the statute of limitations properly extended for 10 years after April 24, 1996, prior to enactment of the Defense Authorization Act of 2008 (and the vast majority of judges in this Court have held that it did), that confusion was swept away by not one but three express statutory references in the newly enacted National Defense Authorization Act.

## **CONCLUSION**

For all the reasons set out above, it is clear that this Court has subject matter jurisdiction over this action and personal jurisdiction of Libya, and that this action is not time-barred. Accordingly, the Court should deny Libya's Motion To Dismiss.

Respectfully submitted,


/s/_____
Paul G. Gaston
DC Bar # 290833
LAW OFFICES OF PAUL G. GASTON
1120 19th Street, NW
Suite 750
Washington, DC 20036
202-296-5856


_____
Joshua M. Ambush (Bar # MD 27025)
Law Offices of Joshua M. Ambush, LLC
1726 Reistertown Road
Suite 206
Baltimore, MD 21208
410-484-2070