# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

Reverend JOSE MANUEL VEGA FRANQUI,  )
Individually and as Administrator of the  )
Estate of VASTHI ZILA MORALES DE VEGA,  )
et al.  )
        )    Case No. 1:06-cv-00734-RBW
       Plaintiffs,  )
        )
     v.  )
        )
GREAT SOCIALIST PEOPLE'S LIBYAN  )
ARAB JAMAHIRIYA, et al.  )
        )
       Defendants.  )

## DEFENDANT LIBYA'S REPLY TO PLAINTIFFS' OPPOSITION TO
## MOTION TO DISMISS THE AMENDED COMPLAINT

**ECKERT SEAMANS CHERIN
& MELLOTT, LLC**

1747 Pennsylvania Ave., N.W.
Suite 1200
Washington, DC  20006-4604
(202) 659-6600
Fax: (202) 659-6699

*Attorneys for Great Socialist People's
Libyan Arab Jamahiriya a/k/a Libya*

**TABLE OF CONTENTS**

**Page**

I.  INTRODUCTION…………………………………….………………………….………1

II.  ARGUMENT……....…………………………………………………………………...1

A.  This Court Lacks Subject Matter Jurisdiction…………………………………………………2

B.  Plaintiffs' Amended Complaint Does Not Meet The Requirements of 28 U.S.C.
    §1605A……………………………………………………………….……………………10

C.  Plaintiffs' Claims Are Time Barred……………………………………….…………...14

D.  The FSIA Does Not Provide Subject Matter Jurisdiction Over Claims Brought By
    Indirect Victims of Terrorism……………….………………………………………18

III.  CONCLUSION..……………………………………………………………………19

CERTIFICATE OF SERVICE……………………………………………….……21

**TABLE OF AUTHORITIES**

**FEDERAL CASES**

*Ali v. Fed. Bureau of Prisons,*
2008 U.S. LEXIS 1212 (U.S. Jan. 22, 2008)……………………………………………...4

*Argentine Republic v. Amerada Hess Shipping Corp.*,
488 U.S. 428 (1989)……………………………………………………………….…...….…5

*Baker v. Carr*,
369 U.S. 186 (1962)…………………………………………………………………9

*Blais v. Islamic Republic of Iran,*
459 F. Supp. 2d 40 (D.D.C. 2006)……………………………………………………18

*Chung v. Dep't of Justice,*
333 F.3d 273 (D.C. Cir. 2003)………………………………………………...........16

*Communications Vending Corp. of Ariz. v. F.C.C.,*
365 F.3d 1064 (D.C. Cir. 2004)………………………………………………………16

*Daubert v. Merrill Dow Pharmaceuticals, Inc.*,
509 U.S. 579 (1993)…………………………………………………………6, 7, 8

*Dole Food Co. v. Patrickson*,
538 U.S. 468 (2003)……………………………………………………………4, 5

*Estate of Buonocore v. Great Socialist People's Libyan Arab Jamahiriya*,
2007 WL 2007509 (D.D.C. July 9, 2007)……………………………….…………15, 16, 18

*Flatow v. Islamic Republic of Iran*,
999 F. Supp. 2d 1 (D.D.C. 1998)…………………………………………………...18

*Galvin v. Eli Lilly & Co.*,
488 F.3d 1026 (D.C. Cir. 2007)……………………………………………………...6

*General Electric Co. v. Joiner*,
522 U.S. 136 (1997)…………………………………………………………………7

*Higgins v. Islamic Republic of Iran*,
2000 WL 33674311 (D.D.C. 2000)………………………………………………...18

*Holland v. Islamic Republic of Iran*,
496 F. Supp. 2d 1 (D.D.C. 2005)…………………………………………………...18

*Japan Whaling Assn' v. American Catacean Soc'y*,
478 U.S. 221 (1986)………………………………………………………………...10

*Kumho Tire Co., Ltd. v. Carmichael Etc.*,
526 U.S. 137 (1999)……………………………………………………………....6, 7

*Landgraf v. USI Film Prods.*,
511 U.S. 244 (1994)……………………………………………..…………4, 10

*Levin v. Islamic Republic of Iran*,
529 F. Supp. 2d 1 (D.D.C. 2007)………………………………………………...19

*Phillips v. Heine*,
984 F.2d 489 (D.C. Cir. 1993)…………………………………………………15, 16

*Proctor v. State Farm Mut. Auto. Ins. Co.*,
675 F.2d 308 (D.C. Cir. 1982)………………………………………………………6

*Roeder v. Islamic Republic of Iran*,
195 F. Supp. 2d 140 (D.D.C. 2002)……………………….………………………..…….8, 9

*Schumann v. C.I.R.*,
857 F.2d 808 (D.C. Cir. 1988)……………………………..……………………………..4

*Simon v. Republic of Iraq*,
2008 WL 2497417 (D.C. Cir. June 24, 2008)……………………………….………...10, 16, 17

*Surette v. Islamic Republic of Iran*,
231 F. Supp. 2d 260 (D.D.C. 2002)……………………………….……………………18

*United States Catholic Conference v. Abortion Rights Mobilization, Inc.*,
487 U.S. 72 (1988)……………………………………………………………………12

*\*Vine v. Republic of Iraq*,
549 F. Supp. 2d 10 (D.D.C. 2006)…………………………………………………...15, 18

*Whitman v. American Trucking Assns.*,
531 U.S. 457 (2000)…………………………………………………………………...12

*Williams v. Taylor*,
529 U.S. 420 (2000)…………………………………………………………………….4

## FEDERAL RULES, STATUTES, AND REGULATIONS

28 U.S.C. § 1605(a)(7) (repealed 2008)…………………………………………………*passim*

28 U.S.C. § 1605(f)………………………………………………………………..…16, 17

28 U.S.C. § 1605A………………………………………………………………..*passim*

28 U.S.C. § 1605A(a)(1)………………………………………………………………19

28 U.S.C. § 1605A(b)………………………………………………………………..…16, 17

28 U.S.C. § 1605A(c)…………………………………………………………………19

28 U.S.C. § 1605A(2)…………………………………………………………………11

28 U.S.C. § 1605A(a)(2)(A)(i)(I)………………………………………………………2, 3, 8, 11

28 U.S.C. § 1605A(a)(2)(A)(i)(II)……………………………………………………11

"The Foreign Sovereign Immunities Act", 28 U.S.C. §1601, *et. seq*..…………………….*passim*

The National Defense Authorization Act §1083, Pub. L. No. 110-181 (2008)…………......*passim*

The Foreign Operations, Export Financing, and
Related Programs Appropriations Act of 1997 §589…………………………………………...11, 13

**LEGISLATIVE MATERIALS**

H.R. 934 H. Rep. 103-172, 103rd Congress, August 16, 1994…………………………………...19

*Comprehensive Antiterrorism Act of 1995: Report of the Comm. on the Judiciary,* H.R. Rep.
No. 104-383 (1995)…………………………………………………………………..…..…..19

**OTHER AUTHORITIES**

Dick K. Nanto, Congressional Research Service, *North Korea: Chronology of Provocations*…..5

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| Reverend JOSE MANUEL VEGA FRANQUI, | ) | |
| Individually and as Administrator of the | ) | |
| Estate of VASTHI ZILA MORALES DE VEGA, | ) | |
| et al. | ) | |
| | ) | Case No. 1:06-cv-00734-RBW |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| GREAT SOCIALIST PEOPLE'S LIBYAN | ) | |
| ARAB JAMAHIRIYA, et al. | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANT LIBYA'S REPLY TO PLAINTIFFS' OPPOSITION TO
MOTION TO DISMISS THE AMENDED COMPLAINT**

Defendant, Great Socialist People's Libyan Arab Jamahiriya a/k/a Libya ("Libya"), by

undersigned counsel, respectfully submits the following Reply to Plaintiffs' Opposition to

Defendants' Motion to Dismiss the Amended Complaint and states as follows:

**I.    INTRODUCTION**

Libya's Motion to Dismiss the Amended Complaint demonstrates that no exception to

sovereign immunity applies to plaintiffs' claims, and therefore, Libya is immune from suit.  In

their Opposition to Libya's Motion to Dismiss the Amended Complaint, plaintiffs fail to

establish that this Court has jurisdiction over their claims.  Therefore, the Amended Complaint

must be dismissed in its entirety.

**II.    ARGUMENT**

In their Opposition, plaintiffs provide no legal authority which supports their construction

of the state sponsor of terrorism exception to foreign sovereign immunity.  Instead, plaintiffs rely

upon the Declaration of a self-proclaimed expert, Dr. Bruce Tefft, to establish that Libya was

placed on the list of state sponsors of terrorism as a result of the May 30, 1972 Lod Airport

attack.  However, as shown by his Declaration, Dr. Tefft has no personal knowledge regarding

the specific reasons for which Libya was placed on the list of state sponsors of terrorism in 1979.

Moreover, the reasons for Libya's inclusion on the list cannot be established by expert opinion

testimony—congressional or executive intent alone is controlling.  The litany of quotes in Dr.

Tefft's Declaration regarding the tracking of terrorist activity does not establish that the state

sponsor of terrorism exception, or any other exception, to sovereign immunity applies to the

claims against Libya in this case.  This Court simply does not have jurisdiction.

## A.      This Court Lacks Subject Matter Jurisdiction.

Only one issue related to Libya's sovereign immunity needs to be decided by this Court:

whether the allegations of Libya's later designation in 1979 as a state sponsor of terrorism for

alleged general support of terrorism satisfies the requirements of § 1605A.  Because such a

conclusion would conflict with the plain language of the statute, plaintiffs' Amended Complaint

should be dismissed.

For this Court to exercise jurisdiction pursuant to § 1605A, the statute expressly requires

that the plaintiffs demonstrate that Libya was designated as a the state sponsor of terrorism "as a

result of such act" for which the plaintiffs seek recovery.  28 U.S.C. § 1605A(a)(2)(A)(i)(I).

Plaintiffs ignore the plain language of the statute and argue that Libya's 1979 designation as a

state sponsor of terrorism for its alleged general support of terrorism is sufficient for the

exception to apply to their claims, which arose in 1972.  Plaintiffs' arguments are wholly without

merit.

In their Opposition, plaintiffs cannot identify a single legislative source that states that

Libya was added to the state sponsor of terrorism list as a result of the attack at Lod Airport.

Faced with this reality, the plaintiffs argue that Libya's alleged general support of terrorism

satisfies § 1605A.   However, the express language of the statute does not permit broad

application to provide jurisdiction for acts of terrorism that occurred during time periods when

Libya was not designated as a state sponsor of terrorism.

Section 1605A expressly states in relevant part:

> (2)     CLAIM HEARD.–The court shall hear a claim under this
> section if–
>> (A)(i)(I) *the foreign state was designated as a state*
>> *sponsor of terrorism at the time the act described*
>> *in paragraph (1) occurred, or was so designated as*
>> *a result of such act* . . .

28 U.S.C. § 1605A(a)(2)(A)(i)(I) (emphasis added).   Thus, the language of § 1605A is clear and

limits jurisdiction to claims for acts of terrorism that occurred when the foreign sovereign was on

the state sponsor of terrorism list *or* if the sovereign was later so designated as a result of the act

of terrorism that is the subject of the plaintiffs' claims.   Plaintiffs argue that this Court should

ignore the plain language of the statute and determine that Libya is subject to this Court's

jurisdiction because of Libya's alleged "pattern of supporting terrorism" from 1968 through its

removal from the state sponsor of terrorism list in 2006.   (*See generally*, plaintiffs' Opposition).

Specifically, plaintiffs misconstrue the requirements of § 1605A(a)(2)(A)(i)(I) by arguing that

they have properly alleged that "Defendants have been designated foreign state sponsors of

terrorism . . ." Opp. Mem. at 5 (citing Am. Comp. at 5, n. 2).   The plaintiffs' interpretation of the

statute ignores its plain language as well as case law applying former § 1605(a)(7).   Plaintiffs do

not argue that the statute is ambiguous.   Indeed, they cannot.   Yet, the plaintiffs request that this

Court rewrite the statute or ignore certain terms contained in the statute.   Plaintiffs ask this Court

to construe § 1605A(a)(2)(A)(i)(I) to mean that the clause "as a result of such act" should be

removed or ignored and the statute should be construed to mean that "if the foreign state was not

designated as a state sponsor of terrorism . . . at the time the act occurred unless later so

designated." This, however, is not what Congress wrote and is not a reasonable interpretation of the statute as written. Such construction should be rejected by this Court. *See Dole Food Co. v. Patrickson,* 538 U.S. 468, 476-77 (2003).

Plaintiffs concede that Libya was not on the list of state sponsors of terrorism at the time of the 1972 attack because Congress did not create the list until 1979, 7 years later. Opp. Mem. at 2.

Moreover, plaintiffs assert without any support that "[a] statutory requirement that a state sponsor of terrorism be on a particular list cannot bar an action based on events that occurred even before the list existed." Opp. Mem. at 6. Plaintiffs' far reaching view of the retroactive application of the 1996 Amendments of the FSIA to pre-1979 claims is wholly without merit and contrary to the express provisions of both former § 1605(a)(7) and § 1605A. *See* Motion to Dismiss at 11 (citing *Landgraf v. USI Film Prods.*, 511 U.S. 244, 260 (1994). If Congress intended to allow claims from acts prior to 1979, it could have easily specified those acts in either the 1996 Amendment to the FSIA or the National Defense Authorization Act of 2008. Congress did not do so, and consequently, this Court does not have jurisdiction over Libya for the plaintiffs' claims. *See Schumann v. C.I.R.*, 857 F.2d 808, 811 (D.C. Cir. 1988) (stating that "under the maxim *expressio unius exclusio alterius*, Congress' specific enumeration of certain exceptions indicates that no other exceptions were intended.")); *Williams v. Taylor*, 529 U.S. 420, 431 (2000) (Words in a statute should have their "ordinary, contemporary, common meaning, absent an indication Congress intended them to bear some different import.") (internal quotation and citation omitted)). If Congress had intended the result sought by the plaintiffs, Congress could have easily written the statute to say so, a principle consistently invoked over the years by the U.S. Supreme Court. *Ali v. Fed. Bureau of Prisons*, 2008 U.S. LEXIS 1212, * 25

(U.S. Jan. 22, 2008). Congress did not do so, and consequently, this Court does not have jurisdiction over Libya for plaintiffs' claims.

When evaluating the FSIA, normal rules of statutory construction apply. "Absent a statutory text or structure that requires us to depart from normal rules of construction, we should not construe the statute in a manner that is strained and, at the same time, would render a statutory term superfluous." *Dole Food*, 538 U.S. at 476-77. This is especially important when the issue is jurisdiction. It is settled "that the subject matter jurisdiction of the lower federal courts is determined by Congress in the exact degrees and character which to Congress may seem proper for the public good." *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 433 (1989) (internal quotations and citations omitted). Thus, the FSIA only has the jurisdictional reach provided by Congress. Congress specifically limited subject matter jurisdiction to claims which arose when the foreign defendant was on the list of state sponsors of terrorism (*e.g.*, in 1979 or later), and to when a specific act places a new country on the list, such as when North Korea was placed on the list in response to the bombing of Korean Air Flight 858. *See* Dick K. Nanto, Congressional Research Service, *North Korea: Chronology of Provocations*. In any event, nothing in the legislative history of the 1979 Act placing Libya on the list of state sponsors of terrorism indicates that the 1972 Lod Airport attack was the reason Libya was placed on the list.

Plaintiffs rely primarily upon the Declaration of Dr. Bruce D. Tefft, a purported expert in the field of terrorism, to establish that Libya was placed on the list of state sponsors of terrorism as a result of the 1972 Lod Airport attacks. However, this Court should not consider Dr. Tefft's Declaration or the opinions contained therein. First, it is apparent on the face of Dr. Tefft's Declaration that he has no personal knowledge concerning the reasons why Libya was added to

the list of state sponsors of terrorism.  Dr. Tefft's conclusions are merely based upon a "general knowledge of terrorist operations" and "recently reviewed material" from secondary sources. Tefft Decl., ¶¶ 5, 19.  Dr. Tefft's Declaration fails to establish that he has personal knowledge of any "facts" contained in his Declaration.  Therefore, this Court should not consider Dr. Tefft's Declaration in deciding defendant's Motion to Dismiss.  *See Galvin v. Eli Lilly & Co.,* 488 F.3d 1026, 1033 (D.C. Cir. 2007) (affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein); *see also Proctor v. State Farm Mut. Auto. Ins. Co.,* 675 F.2d 308, 333-34 (D.C. Cir. 1982) (affidavits which merely repeat in conclusory fashion a plaintiff's basic claim are insufficient).

In addition, Dr. Tefft does not qualify as an expert on the issue of the basis for Libya's inclusion on the list of state sponsors of terrorism.  In *Daubert v. Merrill Dow  Pharmaceuticals, Inc.*, the Supreme Court noted the importance of ensuring the reliability of expert testimony given the weight it holds in front of a jury.  509 U.S. 579, 593 (1993).  In overturning the exclusion of a scientific expert, the *Daubert* Court set forth various factors that a Court should consider in determining whether the testimony is reliable.  These factors include:  whether a theory or technique can be (and has been) tested; whether it has been subjected to peer review and publication; whether, in respect to a particular technique, there is a high known or potential rate of error and whether there are standards controlling the technique's operation; and whether the theory or technique enjoys general acceptance within a relevant scientific community. *Kumho Tire Co., Ltd. v. Carmichael Etc.*, 526 U.S. 137, 149 (1999) (citing *Daubert,* 509 U.S. at 592-594).

The *Daubert* Rule, as it has become known, focuses solely on the expert's technique and methodology, and not on the conclusions that he or she generates. *Daubert* at 593; *General Electric Co. v. Joiner*, 522 U.S. 136, 146 (1997) (citations omitted). Further, "Daubert's general holding-setting forth the trial judge's general 'gate keeping' obligation- applies not only to testimony based on 'scientific knowledge', but also to testimony based on 'technical' and otherwise 'specialized' knowledge." *Kumho Tire Co.,* 526 U.S. at 141-142. Thus, it applies to the instant case.

In *General Electric Co. v. Joiner*, the Court heard argument on whether the opinions of a scientific expert included in a Declaration attached to Plaintiff's Opposition to Defendant's Motion for Summary Judgment was proper expert testimony or "mere subjective belief and or unsupported speculation" and thus inadmissible. 522 U.S. 136, 140 (1997). In affirming the trial court's determination, the Court held that an expert who based his opinions on studies which were not sufficient, whether individually or in combination, to support their conclusions was inherently unreliable and thus not proper expert testimony. The Court held that "nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence which is connected to existing data only by the *ipse dixit* of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." *Id*. at 146-147.

In the present case, Dr. Tefft lists numerous sources for his opinion that "Libya was placed on the list of state sponsors of terrorism by the U.S. government in 1979, in large measure as a direct result of its actions in sponsoring and supporting the PLO and its sub-group the PFLP and JRA in the Lod Airport attacks as well as in numerous other acts of terrorism." Tefft Decl. at ¶ 6. Yet, as was the case with the expert in *Joiner*, the sum of Dr. Tefft's opinions

do not equal its parts.  Dr. Tefft's Declaration fails to establish any degree of specialized knowledge concerning the decision by Congress to include Libya on the list of state sponsors of terrorism.  This Court should not consider Dr. Tefft's opinions, as his proffered testimony clearly does not meet the high standards set by the *Daubert* Rule as the proffered Declaration does not even suggest a methodology for this Court to analyze.  Further, any analysis or expertise he brings to the Court on the issue of Libya's inclusion on the list of state sponsors of terrorism is dubious as his proffered testimony is merely a recitation of secondary sources followed by a one paragraph repetition of the plaintiffs' basic claim.  The Court should not consider the Declaration of Dr. Tefft.

Even if the Court considered Dr. Tefft's Declaration, plaintiffs' argument fails as Dr. Tefft's Declaration does not definitively state that Libya was placed on the list of state sponsors of terrorism as result of the 1972 Lod Airport attack as required by § 1605A(a)(2)(A)(i)(I).  Dr. Tefft's conclusion is that "Libya was placed on the list of state sponsors of terrorism by the U.S. government in 1979, in large measure as a direct result of its actions in sponsoring and supporting the PLO and its sub-group the PFLP and JRA in the Lod Airport attacks ***as well as in numerous other acts of terrorism***." Tefft Decl. at ¶ 6 (emphasis added).  The qualification makes Dr. Tefft's "opinion" inconclusive, at best, as to the issue of whether this specific incident is the basis for Libya's inclusion on the list of state sponsors of terror.

Moreover, the general allegations that Libya was a state sponsor of terror contained in Dr. Tefft's Declaration are insufficient to establish a waiver of immunity pursuant to case law.  As shown in Libya's Motion to Dismiss, the D.C. Circuit held in *Roeder v. Islamic Rep. of Iran* that general allegations that a sovereign was later designated as a state sponsor of terrorism because of support for terrorism do not satisfy state sponsor of terrorism exception.  195 F. Supp. 2d 140,

161 (D.D.C. 2002). Plaintiffs tellingly do not address the *Roeder* decision in their Opposition. This is because the analysis in *Roeder* regarding the effect of the language of § 1605(a)(7) is directly applicable to plaintiffs' § 1605A claims here and should be followed by this Court. District courts do not have jurisdiction over claims brought pursuant to § 1605A if the defendant was not designated as a state sponsor of terrorism at the time of the act giving rise to the claims or was later so designated as a result of the act giving rise to the claims. General allegations of a sovereign's support for terrorism do not establish an exception to immunity.

Plaintiffs admit that Libya was not designated as a state sponsor of terrorism in 1972 and plaintiffs have alleged no facts to support that Libya was later designated as a result of the attack at Lod Airport. Plaintiffs allege simply that Libya was designated as a state of sponsor terrorism because Libya provided "material support and resources to international terrorist organizations." (Am. Complaint, ¶ 17). The Court should deny plaintiff's request for leave to amend their claims yet again, as there is no evidence that Libya was placed on the list state of sponsors of terrorism as a result of the Lod Airport attack. Therefore, plaintiffs have failed to establish that this Court has subject matter jurisdiction over their § 1605A claims.

Furthermore, in the absence of any explicit explanation by Congress as to why Libya was placed on the list of state sponsor of terrorism, the political question doctrine prevents the Court from evaluating Dr. Tefft's theoretical argument as to why Congress might have placed Libya on the state sponsor of terrorism list. Nowhere does Dr. Tefft provide evidence of Congress's intent. Instead, his brief analysis focuses on general allegations of Libya's wrongdoing.

This generalized speculation into the policy determinations of Congress violates the well-established political question doctrine. The Supreme Court in *Baker v. Carr*, 369 U.S. 186, 217 (1962), identified six characteristics of political question cases. These include (1) a textually

9

demonstrable constitutional commitment of the issue to a coordinate political department; (2) a

lack of judicially discoverable and manageable standards for resolving it; (3) the impossibility of

deciding without an initial policy determination of a kind clearly for nonjudicial discretion; (4)

the impossibility of a court's undertaking independent resolution without expressing lack of the

respect due coordinate branches of government; (5) an unusual need for unquestioning adherence

to a political decision already made; or (6) the potentiality of embarrassment from multifarious

pronouncements by various departments on one question.   All six of these factors would be

implicated by a court announcing, without limiting itself to the typical tools of statutory

interpretation, as to why Congress might, or should have placed Libya on the state sponsor of

terrorism list in 1979.  *See Japan Whaling Assn' v. American Catacean Soc'y*, 478 U.S. 221, 230

(1986) ("The political question doctrine excludes from judicial review those controversies which

revolve around policy choices and value determinations constitutionally committed for resolution

to the halls of Congress or the confines of the Executive Branch.  The Judiciary is particularly ill

suited to make such decisions, as 'courts are fundamentally underequipped to formulate national

policies or develop standards for matters not legal in nature.'") (citation omitted).

## B.    Plaintiffs' Amended Complaint Does not Meet the Requirements of 28 U.S.C. § 1605A.

Plaintiffs attempt to invoke 28 U.S.C. § 1605A as a basis for subject matter jurisdiction.

However, the D.C. Circuit's recent decision in *Simon v. Republic of Iraq*, No. 06-7175, 2008 WL

2497417 (D.C. Cir. June 24, 2008), makes clear that the 2008 Amendments to the FSIA "appl[y]

to a pending case only if the Congress clearly so provides."  *Id*. at *3 (citing *Landgraf v. USI*

*Film Prods.*, 511 U.S. 244, 280 (1994), for the proposition that "a statute that retroactively alters

the consequences of primary conduct . . . is presumptively non-retroactive").  As the court in

*Simon* stated, "[p]laintiffs with 'pending cases' may invoke new § 1605A in certain

circumstances" as described in Section 1083(c)(2). *Id.* at *5; *see also id.* at *4. However, such

circumstances do not exist in this case.

First, plaintiffs misconstrue the provisions of § 1605A(a)(2)(A)(i)(II). Plaintiffs argue

that the requirement that a foreign sovereign be on the list of state sponsors of terrorism at the

time of the act pursuant to § 1605A(a)(2)(A)(i)(I) is superseded by § 1605A(a)(2)(A)(i)(II) in

refiled actions pursuant to § 1083(c). Plaintiffs' interpretation of the statute is simply wrong.

Section 1605A(2) states in relevant part:

> (2) Claim heard—The court shall hear a claim under this section if
>
> (A)(i)(I) the foreign state was designated as a state sponsor of terrorism at the time the act described in paragraph (1) occurred, or was so designated as a result of such act, *and, subject to subclause (II)*, either remains so designated when the claim is filed under this section or was so designated within the 6-month period before the claim is filed under this section; or
>
> (II) in the case of an action that is refiled under this section by reason of section 1083(c)(2)(A) of the National Defense Authorization Act for Fiscal Year 2008 or is filed under this section by reason of section 1083(c)(3) of that Act, the foreign state was designated as a state sponsor of terrorism when the original action or the related action under section 1605(a)(7) (as in effect before the enactment of this section) or section 589 of the Foreign Operations, Export Financing, and Related Programs Appropriations Act, 1997 (as contained in section 101(c) of division A of Public Law 104-208) was filed;

28 U.S.C. 1605A(2) (emphasis added). Subclause II does not eliminate the requirement that the

need for the foreign state to be designated as a state sponsor of terrorism, or designated as a

result of such act, at the time of the incident. Rather, Subclause II merely states that, in the

limited circumstances where a case is either refiled or subsequently filed as a ***related*** action, the

foreign state need not remain on the list at the time the subsequent claim is filed, or be so

designated within the 6-month period before the filing of such a claim. Under Subclause II,

plaintiffs must still satisfy the criteria set forth in § 1605(a)(7), which includes the same requirements as Subclause I.  By its plain language, Subclause II only applies to cases "refiled under this section by reasons of section[s] 1083(c)(2)(A) [or] 1083(c)(3)" where the initial action was brought "under section 1605(a)(7)."

Section 1083(c)(2), requires that a plaintiff relied upon and was "adversely affected" by the lack of a cause of action in 1605(a)(7) and the Flatow Amendment, and thus applies only to cases where subject matter jurisdiction was proper under § 1605(a)(7).  Otherwise, the existence or lack thereof of a cause of action would be immaterial.  Likewise, § 1083(c)(3) also requires a valid action under § 1605(a)(7), as the original act must have "been timely commenced under [§ 1605(a)(7)]."   If the original action was outside the scope of the FSIA because it did not comply with § 1605(a)(7)'s requirements that the act in question occur while the foreign state was designated a state sponsor of terrorism, then the original action is a nullity.  *Cf.  United States Catholic Conference v. Abortion Rights Mobilization, Inc.*, 487 U.S. 72, 76 (1988) ("It follows that if a district court does not have subject matter jurisdiction over the underlying action, and the process was not issued in aid of determining that jurisdiction, then the process is void.") (referring to subpoenas).

Thus, subclause II requires that the original action under § 1605(a)(7) have valid subject matter jurisdiction.  Moreover, nothing in the statute's text or the legislative history indicates that the 2008 Amendments to the FSIA were intended to expand subject matter jurisdiction or take the unprecedented step of subjecting foreign states to liability for acts other than those performed during or immediately preceding their existence on the state sponsor of terrorism list.  *See Whitman v. American Trucking Assns.*, 531 U.S. 457, 468 (2000) (stating that Congress "does not . . . hide elephants in mouseholes") (citation omitted).

Regardless, plaintiffs fail to show that they meet the specific criteria of § 1083(c)(2)(A) of the "prior actions" provision. Contrary to plaintiffs' arguments, plaintiffs' original Complaint did not rely upon either 28 U.S.C. § 1605(a)(7) or section 589 of the Foreign Operations, Export Financing, and Related Programs Appropriations Act, 1997 (the "Flatow Amendment") ***as creating a cause of action against Libya***, as required by § 1083(c)(2)(A)(ii). Specifically, plaintiffs' contention that the original Complaint "attempted to ground its claims" in § 1605(a)(7) and the Flatow Amendment is disingenuous, at best. Paragraphs 17 thru 26 of the original Complaint merely assert jurisdictional allegations, not substantive causes of action. It is undisputed that plaintiffs' original Complaint asserts no substantive causes of action against Libya under either § 1605(a)(7) or the Flatow Amendment. Therefore, plaintiffs' original Complaint does not meet the requisite criteria set forth in § 1083(c)(2)(A)(ii) and does not qualify as a "prior action" as defined by § 1083(c).

Because plaintiffs did not rely upon 28 U.S.C. § 1605(a)(7) or the Flatow Amendment as creating a cause of action, their Complaint was not adversely impacted on the grounds that 28 U.S.C. § 1605(a)(7) or the Flatow Amendment failed to create a cause of action. *See* § 1083(c)(2)(A)(iii). Plaintiffs' contention that earlier holdings of the D.C. Circuit precluded plaintiffs from asserting such claims is irrelevant. Section 1083(c)(2)(A)(iii) specifically requires a showing that plaintiffs were adversely affected on the grounds that either § 1605(a)(7) or the Flatow Amendment failed to create a cause of action against Libya. Plaintiffs have failed to make any showing that they were adversely affected. Accordingly, § 1083(c)(2)(A)(iii) is inapplicable to the facts of this case. Because §§ 1083(c)(2)(A)(ii-iii) do not apply to plaintiffs' original Complaint in this matter, § 1083(c)(2)(A) is inapplicable in its entirety.

Plaintiffs also have failed to show that they meet the specific requirements of § 1083(c)(3) and that their Amended Complaint qualifies as a "related action." The Amended Complaint is not a "related action" - it is the *same action*. The Amended Complaint asserts the same claims, on behalf of the same plaintiffs, against the same defendants arising out of the same incident. The provisions of Section 1083(c)(3) do not permit plaintiffs in a pending action to file an Amended Complaint with identical claims arising out the same incident. Section 1083(c)(3) simply states that "any *other action* arising out of the same act or incident may be brought under section 1605A . . ." (emphasis added). Plaintiffs have not brought *another action* pursuant to Section 1083(c)(3), but rather have simply brought identical claims under § 1605A as those asserted in their original Complaint. Section 1083(c)(3) contemplates the filing of "related actions" only, not the refiling of identical claims.

Moreover, any original action filed arising from the 1972 Lod Airport attack must have been *timely* filed pursuant to § 1605(a)(7) in order for plaintiffs to be permitted to file a new Complaint as a "related action." *See* § 1083(c)(3). As shown in Libya's Motion Dismiss and in Section C below, plaintiffs' claims were not timely filed under § 1605(a)(7).

Based upon the foregoing, plaintiffs cannot simply re-file their Complaint by asserting new claims under § 1605A as a "related action" to their previous Complaint. Section 1083(c)(3) does not apply to the present matter and the Amended Complaint should be dismissed.

### C.    Plaintiffs' Claims Are Time-Barred.

As shown in defendant's Motion to Dismiss the Amended Complaint, plaintiffs' claims are time-barred pursuant to the express terms of § 1605(a)(7). Plaintiffs' Opposition fails to establish that the filing of their original Complaint on April 21, 2006 was timely. The personal injuries for which plaintiffs seek recovery occurred on May 30, 1972, nearly 34 years before their original Complaint was filed. Even under the most lengthy statute of limitations, plaintiffs'

claims are stale.  Plaintiffs' Opposition fails to establish that the doctrine of equitable tolling

applies to the facts of this case or that they can allege facts which would warrant their delay of

nearly ten years in filing suit after any impediment to filing suit was removed (*e.g.*, the

enactment of Section 1605(a)(7) on April 24, 1996).  Plaintiffs' claims are time-barred and the

Amended Complaint should be dismissed with prejudice.

      The 10-year statute of limitations period begins to run when the cause of action arose.

"Under the FSIA, the key question is when the claim 'arose,' that is, when the events in question

occurred."  *Estate of Buonocore*, 2007 WL 2007509 LEXIS 49031 at *2; *see also Vine v.

Republic of Iraq,* 459 F. Supp. 2d 10, 21 (D.D.C. 1996) ( "A claim 'arises' on the date that the

action in question occurred, yet does not 'accrue' until a prior disability to suit is removed.").

Therefore, plaintiffs' claims in the case before this Court arose on May 30, 1972, the date of the

alleged attack, and the 10-year statute of limitations began to run on that date, not on April 24,

1996 as plaintiffs contend.  In applying the doctrine of equitable tolling, a court should only

"extend the time for filing by a reasonable period after the tolling circumstance [is] mended."

*Phillips*, 984 F.2d at 492.  The doctrine of equitable tolling merely permits the plaintiffs to

commence suit within a reasonable period of time after Congress enacted the state sponsor of

terrorism exception 1996.  "Congress did not create an automatic extension of the statute of

limitations by the length of the tolling period."  *Estate of Buonocore,* 2007 WL 2007509 at *3

(citing *Phillips*, 984 F.2d at 492).

      In their Opposition to Libya's Motion to Dismiss the Amended Complaint, plaintiffs once

again argue that the decision in *Phillips* is distinguishable from the facts of this case because

*Phillips* analyzed equitable tolling under the Death on the High Seas Act ("DOSHA"), not the

FSIA.  Opp. Mem at 16.  As shown in Libya's Motion to Dismiss, this argument has previously

been raised and rejected by Judge Kessler of this court. *See* Motion to Dismiss at 21 (quoting *Estate of Buonocore*, 2007 WL 2007509 at *3). The scope of the decision in *Phillips* goes beyond DOSHA and applies to the doctrine of equitable tolling itself. The D.C. Circuit has repeatedly held that equitable tolling is to be allowed in extraordinary cases only, and that the doctrine does not suspend the statute of limitations. *See Communications Vending Corp. of Ariz. v. F.C.C.*, 365 F.3d 1064, 1075 (D.C. Cir. 2004); *see also Chung v. Dep't of Justice*, 333 F.3d 273, 279 (D.C. Cir. 2003) (stating that equitable tolling "merely ensures that the plaintiff is not, by dint of circumstances beyond his control, deprived of a reasonable time in which to file suit.") (internal citation omitted).

Since plaintiffs filed their Opposition, the D.C. Circuit issued its opinion in *Simon v. Iraq*, --- F.3d ----, No. 06-7175, 2008 WL 2497417 (D.C. Cir. June 24, 2008), a case involving § 1605A and former §§ 1605(a)(7) and 1605(f). However, the D.C. Circuit's recent decision in *Simon*, does not save plaintiffs' claims. As the D.C. Circuit stated, former § 1605(a)(7) required plaintiffs to commence their claims "not later than 10 years after the date on which the cause of action arose." *Simon*, 2008 WL 2497417, at *8; *see also* 28 U.S.C. § 1605(f). Section 1605(f), unlike new § 1605A(b), does *not* state that claims shall not expire until 10 years after the effective date of §§ 1605(a)(7) and 1605(f), *i.e.*, April 24, 1996.

Because *Simon* involved claims arising in 1990 and 1991, *see* 2008 WL 2497417, at *1 (alleging torture in 1990 and 1991), the ten-year statute of limitations provided for in § 1605(f) left plaintiffs with at least four years in which to bring their claims (*i.e.*, until 2000 and 2001, respectively). Therefore, equitable tolling principles properly applied to those claims, such that the *Simon* court "add[ed] 'the period during which [Iraq] was immune from suit'" to conclude that the plaintiffs' claims in that case remained ripe until 2006. *Id.* at *8 (quoting 28 U.S.C.

16

§ 1605(f)).  Since the plaintiffs in *Simon* brought suit in 2003, the court concluded their claims were timely.

In stark contrast to *Simon*, the plaintiffs' claims in the case before this Court arose on May 30, 1972, at the time of the Lod Airport attack.  Thus, the 10-year statute of limitation had already expired at the latest on  May 30, 1982, such that these plaintiffs' claims were already extinguished at the time Congress enacted § 1605(a)(7) in 1996.  In other words, unlike in *Simon*, by April 1996, the plaintiffs herein had no claim left for a court to extend by equitable tolling or otherwise.  Therefore, the Court should dismiss the plaintiffs' claims as untimely.

Similarly, the limitations period in § 1605A(b) does not apply retroactively to the filing of plaintiffs' original Complaint, as plaintiffs would have this Court believe.  The limitations period in § 1605A(b) applies prospectively only.  As shown in Defendants' Motion to Dismiss, the relevant limitations for prior and related actions are contained in § 1083(c).  There is absolutely no support for plaintiffs' statement that "Congress considered any prior action that had been filed within '10 years after April 24, 1996' to have been timely filed."  Opp. Mem. at 17.  To the contrary, § 1083(c)(3) requires that, where a related action is filed, the underlying case must have been timely filed pursuant to § 1605(a)(7).  Moreover, if plaintiffs' position was correct, there would be no need for Congress to set forth those limitations contained in § 1083(c) related to prior and related actions.  Plaintiffs' argument in this regard is contrary to the express provisions of the statute.[1]

---

[1]  Plaintiffs contend that "Libya has made no serious argument distinguishing between filing an amended complaint and 'refiling' the same action in a new complaint, and cannot hope to do so."  Opp. Mem. at 19.  Once again, plaintiffs have misconstrued the provisions of § 1083(c)(3).  Section 1083(c)(3) does not allow for the refiling of identical claims by identical parties in a new complaint.  It merely allows the filing of a "related action."

**D.    Section 1605A Does Not Provide Courts With Subject Matter Jurisdiction Over Claims Brought By Indirect Victims Of Terrorism.**

In their Opposition, plaintiffs argue that "over forty cases decided by this Court" have held that courts have subject matter jurisdiction over claims of indirect victims of terrorism. Opp. Mem. at 11. However, the cases cited by plaintiffs in their Opposition involved default judgments where the defense of lack of subject matter jurisdiction for claims of indirect victims of terrorism under § 1605(a)(7) was neither raised nor considered by the court.[2] None of the cases cited by plaintiffs' specifically address the question of whether courts have subject matter jurisdiction over claims of indirect victims of terrorism. Each court implicitly assumes, without briefing from the parties or its own analysis, that such claims fell within the scope of § 1605(a)(7). Therefore, the cases cited by plaintiffs are of no precedential value with respect to the limited issue of subject matter jurisdiction of indirect victims of terrorism and the Court should not consider those cases cited by plaintiffs on this issue. *See Estate of Buonocore v. Great Socialist People's Libyan Arab Jamahiriya,* 2007 WL 2007509 at *8 (D.D.C. July 9, 2007) (declining to follow holdings of district court decisions in default cases where statute of limitations defense was neither raised, nor considered by court); *see also Vine v. Republic of Iraq*, 459 F. Supp. 2d 10, 21 n. 9 (D.D.C. 2006) (same).

Plaintiffs further contend without support that Libya's reliance upon "oblique references" to the legislative history of the 1996 FSIA amendments is misplaced. Opp. Mem. at 12. However, as shown in defendant's Motion to Dismiss (Motion to Dismiss at 26-27), the legislative history makes clear that Congress did not intend to expand the subject matter jurisdiction of the courts to hear claims of indirect victims of terrorism. Plaintiffs provide no

---

[2] *See e.g., Flatow v. Islamic Republic of Iran*, 999 F. Supp. 2d 1 (D.D.C. 1998); *Higgins v. Islamic Republic of Iran*, 2000 WL 33674311 (D.D.C. 2000); *Holland v. Islamic Republic of Iran*, 496 F. Supp. 2d 1 (D.D.C. 2005); *Blais v. Islamic Republic of Iran*, 459 F. Supp. 2d 40 (D.D.C. 2006); *Surette v. Islamic Republic of Iran*, 231 F. Supp 2d 260 (D.D.C. 2002). Opp. Mem. at 11-12.

authority, nor do they provide any legislative history which supports their position that Congress intended for such a broad interpretation of subject matter jurisdiction under the FSIA.

The statute's inclusion of "solatium" damages likewise does not indicate a congressional intent to provide courts with jurisdiction over plaintiffs' emotional damages claims. *See* Opp. Mem. at 12. Victims of terrorist attacks themselves may receive "solatium" damages. *See Levin v. Islamic Republic of Iran*, 529 F. Supp. 2d 1, 21 (D.D.C. 2007) (awarding solatium damages to former hostage victim). Thus, the inclusion of "solatium" damages does not indicate any intention to broaden the class of authorized claimants. Indeed, the word "solatium" does not appear in § 1605A(a)(1), but as part of a list of damages in the private right of action provision. *See* 28 U.S.C. § 1605A(c). Plaintiffs simply cannot seize on a single word that appears in a damages list in § 1605A(c) to read a whole new category of claimants into § 1605A(a)(1), counter to congressional intent to limit the categories of plaintiffs. The inclusion of the term "claimant or the victim" does not expressly expand the subject matter jurisdiction of the Court to include claims of indirect victims of terrorism. *See* Motion to Dismiss at 26-27 (citing H.R. Rep. No. 103-702, at 3-5 and H.R. Rep. No. 104-383, at 105 (1995) ("It is expected that a lawsuit proceeding under this section will be brought either by the victim, himself or by his estate in the case of death or mental incapacity.")). Moreover, plaintiffs' contention that solatium damages are "available only to a close family member or survivor of a victim of terrorism" is simply incorrect. *See* Opp. Mem. at 12. For these reasons, the Court should dismiss for lack of subject matter jurisdiction the claims brought by the alleged indirect victims.

## III.    CONCLUSION

For the foregoing reasons, as well as those raised in defendant's Motion to Dismiss, the Amended Complaint should be dismissed in its entirety.

Respectfully submitted,

**ECKERT SEAMANS CHERIN
   & MELLOTT, LLC**

       */s/ Mark A. Johnston*
Thomas Whalen, Esq. (D.C. Bar #208512)
Mark Johnston, Esq. (D.C. Bar #455764)
1747 Pennsylvania Ave., N.W.
Suite 1200
Washington, DC 20006-4604
(202) 659-6600
Fax: (202) 659-6699
twhalen@eckertseamans.com
mjohnston@eckertseamans.com

Of counsel:

Wendy West Feinstein, Esq.
ECKERT SEAMANS CHERIN
   & MELLOTT LLC
600 Grant Street
44th Floor
Pittsburgh, PA 15219
(412) 566-6000
Fax: (412) 566-6099
wfeinstein@eckertseamans.com

*Attorneys for Great Socialist People's
Libyan Arab Jamahiriya a/k/a Libya*

Dated: July 17, 2008

20

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing **Reply to Plaintiffs' Opposition to Motion to Dismiss the Amended Complaint** was electronically filed and served, this 17th day of July, 2008, to:

> Joshua Ambush
> Terri Sneider
> The Law Offices of Joshua M. Ambush, LLC
> 1726 Reisterstown Road Suite 206
> Baltimore, MD 21208
>
> Paul G. Gaston
> LAW OFFICES OF PAUL G. GASTON
> 1120 19th Street, NW
> Suite 750
> Washington, DC 20036

> _/s/ Mark A. Johnston_
> Mark A. Johnston